UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALT PLATFORM, INC., as the General Partner of Alt Sports Card Fund, L.P., <br><br>    Plaintiff, <br><br> v. <br><br> BECKETT COLLECTIBLES, LLC, <br><br>    Defendant. | No. 3:22-cv-02867-N |

**BECKETT COLLECTIBLES, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

**Introduction**

Alt Platform, Inc., in its capacity as the general partner of Alt Sports Card Fund, L.P. ("Alt"), alleges a single count of negligent misrepresentation against Beckett Collectibles, LLC ("Beckett") under Texas law. This Court can resolve this motion by either: (1) judicially noticing that Alt was not formed until 2022 and could not have acted or relied upon a 2016 representation to make an October 2020 purchase, such that Alt either lacks constitutional standing or has failed to state a claim for relief; or (2) applying Texas's "limited group" requirement for a negligent misrepresentation claim to Alt's pleaded facts. Either way, Alt fails to state a claim for negligent misrepresentation, and this Court must dismiss its Complaint with prejudice because Alt cannot cure the defect.

**Summary of Alt's Pleaded Facts**

Alt brings a single claim against Beckett for negligent misrepresentation.[1] It alleges

---

[1] Compl., ECF 1, at ¶¶ 56-65.

that in October 2016, Beckett negligently certified a 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 card (the "Curry card") as authentic and unaltered,[2] and that Alt relied on that certification when it purportedly purchased the Curry card in October 2020.[3] Alt further alleges the Curry card had been trimmed and was short on the top when Beckett received it for grading in 2016 and that Alt would not have purchased the card if Beckett had identified it as trimmed or altered.[4]

Alt was not a party to the October 2016 transaction in which Beckett graded and certified the Curry card.[5] However, Alt alleges that Beckett's purpose in certifying the Curry card "was for third parties, like Alt, to be able to rely on those representations, including in later purchasing the card."[6] Alt seeks "in excess of $350,000."[7]

### Judicial Notice of Alt's Dates of Formation

At any stage of a proceeding, a court may judicially notice a fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2), (d); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Accordingly, a court can consider judicially noticed facts when ruling on a 12(b)(6) motion, including facts in public governmental filings. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020).

Attached as **Exhibits A** and **B** are certified copies of the following public

---

[2] *Id.* ¶¶ 35-40.
[3] *Id.* ¶¶ 41-42.
[4] *Id.* ¶¶ 36, 42.
[5] *Id.* ¶ 57.
[6] *Id.* ¶ 59.
[7] *Id.* ¶ 64 and Prayer.

documents filed in the office of the Delaware Secretary of State showing the dates of

formation of Alt Sports Card Fund, L.P., and Alt Platform, Inc.:

> **Exhibit A**:    Certificate of Limited Partnership of Alt Sports Card Fund, L.P.
> **Exhibit B**:    Certificate of Incorporation of Alt Platform, Inc.

Alt Platform, Inc. was formed in Delaware on <u>May 26, 2020</u>,[8] and it is the general

partner of Alt Sports Card Fund, L.P., on whose behalf Alt Platform, Inc. filed this

lawsuit.[9] In Delaware, a limited partnership is formed "at the time of the filing of the

initial certificate of limited partnership in the Office of the Secretary of State or at any

later date or time specified in the certificate[.]" DEL. CODE. ANN. tit. 6, § 17-201. Alt Sports

Card Fund, L.P. was not formed until <u>June 30, 2022</u>.[10] This Court may judicially notice

and consider these dates of formation because they are contained within the attached

certified copies of publicly available governmental filings.

**Argument**

**I.    This Court lacks subject matter jurisdiction because Alt does not have standing.**

Alt lacks standing to sue. If this Court lacks subject matter jurisdiction over Alt's

suit, it must dismiss it. *See* FED. R. CIV. P. 12(b)(1). Standing is a component of subject

matter jurisdiction. *See Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). It is settled

law that constitutional standing requires: (1) a concrete and particularized injury in fact

that is not conjectural or hypothetical; (2) a causal connection between the injury and the

defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable

---

[8] *See* **Exhibit A**.
[9] Compl. ¶ 3.
[10] *See* **Exhibit B**.

decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is "an invasion of a legally protected interest." *Id.* Alt fails to plausibly allege an injury in fact.

Alt's claim for negligent misrepresentation is only viable if it bought the Curry card. But that cannot be so. Alt (Alt Sports Card Fund, L.P.) could not have purchased the Curry card in October 2020, nor could it have relied on any purported misrepresentation affecting an October 2020 purchase, because it was not formed until June 30, 2022. *See* DEL. CODE. ANN. tit. 6, § 17-201 (a Delaware limited partnership is formed "at the time of the filing of the initial certificate of limited partnership in the Office of the Secretary of State"); *see also D&T Ptrs., LLC v. Baymark Ptrs. LP*, 3:21-CV-1171-B, 2022 WL 1778393, at *3 (N.D. Tex. June 1, 2022).[11]  It follows that Alt Platform, Inc.—which brought this suit in its capacity as Alt's general partner—could not have been a general partner of Alt until at least June 30, 2022. On these facts alone, Alt cannot sustain a negligent misrepresentation claim grounded in an October 2020 purchase of the Curry card occurring before Alt existed and could thus act in reliance through a general partner or agent. For the same reason, Alt could not have been injured from that transaction.

While Alt is correct that Alt Platform, Inc. "has standing" to sue on the limited partnership's behalf,[12] it does not have standing to bring this suit because it lacks constitutional standing. To have constitutional standing, Alt (the limited partnership) must have suffered an injury in fact—and because it was formed after the Curry card was purchased, that cannot be so. On its face, then, the Complaint does not make sense. Alt

---

[11] *See also* **Exhibit A**.
[12] *See* Compl. ¶ 3.

could not have bought the Curry card in October 2020.[13] One cannot plausibly infer from the Complaint *who* purchased the card given that Alt did not. Moreover, the Complaint does not set forth any facts about the Curry card's chain of title. Because Alt fails to allege a plausible cognizable injury, the Court must dismiss the Complaint for lack of standing.

## II.    This Court should dismiss Alt's negligent misrepresentation claim because Alt is not within the limited class of potential plaintiffs to which Beckett can be held liable for its purported misrepresentations about the Curry card.

Even if Alt has standing, it nevertheless fails to state a plausible claim for relief.

### A.    This Court must dismiss Alt's Complaint if it fails to state a claim upon which relief can be granted.

Alt's Complaint must be dismissed if the Court cannot grant relief upon Alt's sole claim for negligent misrepresentation. *See* FED. R. CIV. P. 12(b)(6). A district court must dismiss a claim if a plaintiff cannot prove any set of facts entitling it to relief. *See, e.g.*, *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). A claim is facially plausible if the plaintiff pleads facts allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See, e.g.*, *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As explained below, Alt has not pleaded facts—and cannot plead any set of facts— entitling it to relief against Beckett for Beckett's 2016 certification of the Curry card.

### B.    Under Texas law, Alt does not fall within the limited class of potential plaintiffs because Alt was not known to Beckett in 2016 when Beckett certified the Curry card—in fact, Alt did not even exist in 2016.

To prove negligent misrepresentation in Texas, a plaintiff must show: "(1) a

---

[13] *See* Compl. ¶¶ 42, 50.

representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653-54 (Tex. 2018).

Texas has adopted the tort of negligent misrepresentation as described in the Restatement (Second) of Torts § 552, which narrows the class of potential plaintiffs who can bring a negligent misrepresentation claim. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 791-94 (Tex. 1999). Here, Alt is not a member of the limited class of potential plaintiffs to which Beckett can be held liable because Alt did not exist in 2016 when Beckett made the purported misrepresentations about the Curry card, nor did it exist in 2020 when it purportedly purchased the Curry card.

### 1.    Because Alt was not formed until 2022, it could not have acted in reliance on Beckett's 2016 certification to purchase the Curry card in October 2020.

As explained in **Section** I, Alt (Alt Sports Card Fund, L.P.) could not have purchased the Curry card in October 2020, nor could it have relied on any purported misrepresentation affecting an October 2020 purchase, because it was not formed until June 30, 2022. *See* DEL. CODE. ANN. tit. 6, § 17-201; *see also D&T Ptrs., LLC v. Baymark Ptrs. LP*, 3:21-CV-1171-B, 2022 WL 1778393, at *3 (N.D. Tex. June 1, 2022).[14] Therefore, Alt's Complaint fails to state a plausible claim for relief, and the Court should dismiss it.

---

[14] *See also* **Exhibit A**.

2.    **Alt cannot plead any set of facts distinguishing itself from the unlimited generic group of third parties who might someday purchase the Curry card in reliance on Beckett's alleged 2016 misrepresentation.**

Even if Alt somehow purchased the Curry card in October 2020, Texas law restricts a defendant's scope of liability for negligent misrepresentation to a limited class of potential plaintiffs (1) whom the defendant intended to benefit or (2) who the defendant knew would receive the information. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010); *see also McCamish*, 991 S.W.2d at 794, and Restatement (Second) of Torts § 552(2). That limited class is "distinct from the much larger group or class of persons who might reasonably be expected sooner or later to have access to [the information] and foreseeably take action in reliance upon it." *In re Enron Corp. Secs., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 977-79 (S.D. Tex. 2010).

Texas does not follow a broader foreseeability approach to liability for negligent misrepresentation, which would conflict with the Restatement's intentionally narrower approach. *See Grant Thornton LLP*, 314 S.W.3d at 920-21; *see also In re Soporex, Inc.*, 446 B.R. 750, at n.24 (Bankr. N.D. Tex. 2011) (Texas has "rejected a foreseeability standard in favor of the Torts Restatement approach"). "It is not enough that the maker knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Restatement (Second) of Torts § 552, cmt. h; *see also In re Enron Corp. Secs.*, 762 F. Supp. at 977-79.

Therefore, it is not sufficient to allege a defendant knew when it made a purported misrepresentation that "third parties" would rely on that representation in the future. *See, e.g., Grant Thornton LLP*, 314 S.W.3d at 920-21. For example, in *Grant Thornton*, an

investor argued it fell within the limited class of persons who could sue for negligent misrepresentations Grant Thornton made in an April 2000 audit report. *Id.* at 921. The investor allegedly relied on the audit report in December 2000 when it chose to buy bonds sold by an entity called Epic. *Id.* at 920-21. The court held the investor was outside Grant Thornton's scope of liability, reasoning that "to interpret the 'limited group' requirement as including all potential investors would render that requirement meaningless." *Id.* at 921 (quoting *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 613 (5th Cir. 1996)). Because the investor did not have a relationship with Grant Thornton or Epic when the audit report was issued, and because the investor had not previously bought Epic bonds, it was not within the limited group of already-existing investors to whom Grant Thornton could be liable. *Id.*

Alt alleges Beckett certified the Curry card in 2016 "for third parties, like Alt, to be able to rely on those representations, including in later purchasing the Card."[15] But as illustrated by the court's analysis in *Grant Thornton*, Beckett's scope of liability does not extend to all third parties who might ever purchase the Curry card, as that would render the "limited group" requirement meaningless. *Grant Thornton LLP*, 314 S.W.3d at 921. To the contrary, Beckett's liability is limited to potential plaintiffs Beckett intended to benefit from the certification or knew would receive the information. *See id.* at 920. Texas's restriction of liability to a limited group "prevents against unlimited liability and narrows the scope of liability to situations where the information supplier is aware of the third

---

[15] Compl. ¶ 59.

party and intends that the third party rely on the information." *Tara Capital Ptrs. I, L.P. v. Deloitte & Touche, L.L.P.*, No. 05-03-00746-CV, 2004 WL 1119947 (Tex. App.—Dallas May 20, 2004, pet. denied). There is no plausible set of facts under which this Court could reasonably infer that Beckett was aware of Alt in 2016 when it certified the Curry card or that it intended for Alt to benefit from the certification—because there was no Alt in 2016.

In 2016, Beckett had no direct or indirect relationship with Alt because Alt did not exist.[16] To that end, Alt admits it was not a party to the transaction involving the submission of the Curry card to Beckett for grading in October 2016.[17] Alt did not purportedly purchase the Curry card until 2020, and it has not pleaded any facts indicating Beckett could have discerned Alt as a potential plaintiff in 2016 when it certified the card.[18] To state a claim, Alt must allege facts plausibly placing itself within a limited group of potential plaintiffs that is narrower than the unbounded universe of "third parties" who might have someday purchased the Curry card after the 2016 certification. *See Grant Thornton LLP*, 314 S.W.3d at 920-21. Alt cannot plausibly do so.

The notion that Alt—which did not exist in 2016 when the Curry card was certified—falls within the limited group of potential plaintiffs resulting from that certification turns Texas's limited group requirement on its head. Such a generic and unlimited group—"third parties, like Alt"[19]—is still indeterminable and unbounded today in 2023 because it includes all third parties "who might reasonably be expected

---

[16] *See* **Exhibit A**.
[17] Compl. ¶ 57.
[18] *Id.* ¶ 42.
[19] *Id.* ¶ 59.

sooner or later to have access to [the 2016 certification] and foreseeably take action in reliance upon it" by purchasing the Curry card. *See In re Enron Corp. Secs.*, 762 F. Supp. 2d 942, 977-79. That generic group includes persons like Alt who did not exist or have a relationship with Beckett in 2016, and it includes persons who still do not exist but might someday come into being and purchase the Curry card. That is the antithesis of the Restatement's (and thus, Texas's) approach to negligent misrepresentation, which guards against unbounded liability and rejects a broader foreseeability standard.

### Conclusion

This Court must dismiss the Complaint because Alt lacks constitutional standing to bring it. Alternatively, Alt is not a member of the limited group of potential plaintiffs who can bring a negligent misrepresentation claim under Texas law arising from the certification of the Curry card. Under either theory, the Court should dismiss Alt's Complaint with prejudice because it fails to state a plausible claim for relief, which Alt cannot cure by repleading.

Dated: February 20, 2023

Respectfully submitted,

CONDON TOBIN SLADEK THORNTON NERENBERG PLLC

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin
Texas State Bar No. 24028045
Taryn E. Ourso
Texas State Bar No. 24103715
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com

tourso@condontobin.com

*Attorneys for Defendant*
*Beckett Collectibles, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2023, the foregoing was electronically submitted to the clerk of court for the United States District Court for the Northern District of Texas using the Court's electronic filing system and that all counsel of record have been served electronically or as authorized by the Federal Rules of Civil Procedure.

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin