# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| ALT PLATFORM, INC., as the General Partner of Alt Sports Card Fund, L.P.,<br><br>  Plaintiff,<br><br>v.<br><br>BECKETT COLLECTIBLES, LLC,<br><br>  Defendant. | No. 3:22-cv-02867-N |

## APPENDIX IN SUPPORT OF BECKETT COLLECTIBLES, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS

| Exhibit No. | Document | Appendix Range |
|---|---|---|
| Exhibit A | Certificate of Limited Partnership of Alt Sports Card Fund, L.P. | 1-3 |
| Exhibit B | Certification of Incorporation of Alt Platform Inc. | 4-15 |

Dated: February 20, 2023

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin
Texas State Bar No. 24028045
Taryn E. Ourso
Texas State Bar No. 24103715
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
tourso@condontobin.com

*Attorneys for Defendant Beckett Collectibles, LLC*

# EXHIBIT A

# Delaware
## The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF LIMITED PARTNERSHIP OF "ALT SPORTS CARD FUND, L.P.", FILED IN THIS OFFICE ON THE THIRTIETH DAY OF JUNE, A.D. 2022, AT 5:36 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

6891048  8100
SR# 20230516105

Authentication: 202721689
Date: 02-15-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

**2**

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:36 PM 06/30/2022
FILED 05:36 PM 06/30/2022
SR 20222882148 - File Number 6891048

# CERTIFICATE OF LIMITED PARTNERSHIP

## OF

## ALT SPORTS CARD FUND, L.P

June 30, 2022

The undersigned, as sole general partner and for the purpose of forming a limited partnership under the Delaware Revised Uniform Limited Partnership Act (6 *Del. C.* § 17-101, *et seq.*), hereby certifies as follows:

1. *Name.* The name of the limited partnership formed hereby is Alt Sports Card Fund, L.P.

2. *Registered Office.* The address of the registered office of the limited partnership is: c/o Corporation Service Company, 251 Little Falls Drive, City of Wilmington, New Castle County, Delaware 19808.

3. *Registered Agent.* The name and address of the registered agent for service of process on the limited partnership in the State of Delaware is: Corporation Service Company, 251 Little Falls Drive, City of Wilmington, New Castle County, Delaware 19808.

4. *General Partner.* The name and business address of the sole general partner of the limited partnership is Alt Sports Card Fund GP LLC, 2261 Market Street #4019, San Francisco, CA 94114.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Limited Partnership as of the date first above written.

                                                    Alt Sports Card Fund GP LLC,
                                                  sole general partner of the limited partnership

By: _____
        Carson Monson, Authorized Person

3

# EXHIBIT B

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "ALT PLATFORM INC.", FILED IN THIS OFFICE ON THE TWENTY-SIXTH DAY OF MAY, A.D. 2020, AT 12:11 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

7979546  8100
SR# 20230516203

Authentication: 202714400
Date: 02-14-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

5

State of Delaware
Secretary of State
Division of Corporations
Delivered 12:11 PM 05/26/2020
FILED 12:11 PM 05/26/2020
SR 20204590901 - File Number 7979546

# CERTIFICATE OF INCORPORATION
# OF
# ALT PLATFORM INC.

## ARTICLE I

The name of the Company is Alt Platform Inc. (the "**Company**").

## ARTICLE II

The address of the Company's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801. The name of the registered agent at such address is The Corporation Trust Company.

## ARTICLE III

The purpose of the Company is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware, as the same exists or as may hereafter be amended from time to time.

## ARTICLE IV

The name and mailing address of the incorporator are as follows:

Monica Devlin
c/o Goodwin Procter LLP
Three Embarcadero Center, 28th floor
San Francisco, CA 94111

## ARTICLE V

A. <u>Authorization of Stock</u>. This Company is authorized to issue one class of shares to be designated Common Stock. The total number of shares of Common Stock the Company has authority to issue is 19,000,000, par value of $0.00001 per share, of which 9,000,000 shares are designated "**Class B Common Stock**," and 10,000,000 are designated as "**Class A Common Stock**."

B. <u>Rights, Preferences and Restrictions of Common Stock</u>. The rights, preferences, privileges and restrictions granted to and imposed on the Common Stock are as set forth below in this Article V(B).

1. <u>Dividend Provisions</u>. All dividends or distributions shall be distributed among all holders of Common Stock on a pro rata basis in proportion to the number of shares of Class A Common Stock that would be held by each such holder if all shares of Class B Common Stock were converted to Class A Common Stock at the then effective conversion rate.

2. <u>Liquidation Proceeds</u>. In the event of any Liquidation Event, the assets of the Company shall be distributed pro rata among the holders of the Common Stock, where each holder of shares of Class B Common Stock shall be treated for this purpose as holding the greatest whole number of shares of Class A Common Stock then issuable upon conversion of all shares of Class B Common Stock held by such holder.

**6**

(a) For purposes of this Section 2, a "**Liquidation Event**" shall include (A) the closing of the sale, transfer or other disposition of all or substantially all of the Company's assets, (B) the consummation of the merger or consolidation of the Company with or into another entity (except a merger or consolidation in which the holders of capital stock of the Company immediately prior to such merger or consolidation continue to hold at least 50% of the voting power of the capital stock of the Company or the surviving or acquiring entity), (C) the closing of the transfer (whether by merger, consolidation or otherwise), in one transaction or a series of related transactions, to a person or group of affiliated persons (other than an underwriter of the Company's securities), of the Company's securities if, after such closing, such person or group of affiliated persons would hold 50% or more of the outstanding voting stock of the Company (or the surviving or acquiring entity) or (D) a liquidation, dissolution or winding up of the Company; provided, however, that a transaction shall not constitute a Liquidation Event if (i) its sole purpose is to change the state of the Company's incorporation or to create a holding company that will be owned in substantially the same proportions by the persons who held the Company's securities immediately prior to such transaction or (ii) it is the sale of the Company's equity securities in a bona fide financing transaction that is solely for capital-raising purposes.

(b) <u>Determination of Value if Proceeds Other than Cash</u>. In any Liquidation Event, if the proceeds received by the Company or its stockholders are other than cash, its value will be deemed its fair market value. Any securities shall be valued as follows:

(i) Securities not subject to investment letter or other similar restrictions on free marketability covered by (ii) below:

(A) If traded on a securities exchange, the value shall be deemed to be the average of the closing prices of the securities on such exchange over the twenty (20) trading-day period ending three (3) trading days prior to the closing of the Liquidation Event;

(B) If actively traded over-the-counter, the value shall be deemed to be the average of the closing bid or sale prices (whichever is applicable) over the twenty (20) trading-day period ending three (3) trading days prior to the closing of the Liquidation Event; and

(C) If there is no active public market, the value shall be the fair market value thereof, as determined in good faith by the Board of Directors of the Company.

(ii) The method of valuation of securities subject to investment letter or other restrictions on free marketability (other than restrictions arising solely by virtue of a stockholder's status as an affiliate or former affiliate) shall be to make an appropriate discount from the market value determined as above in (i)(A), (B) or (C) to reflect the approximate fair market value thereof, as determined by the Board of Directors of the Company.

3. <u>Redemption</u>. The Common Stock is not redeemable at the option of the holder thereof.

4. <u>Voting Rights</u>.

(a) <u>General Voting Rights</u>. Except as otherwise provided herein or by applicable law, the holders of the Class B Common Stock and the holders of the Class A Common Stock shall at all times vote together as one class on all matters (including the election of directors) submitted to a vote or for the consent of the stockholders of the Company. Each holder of shares of Class B Common Stock shall be entitled to twenty (20) votes for each share of Class B Common Stock held as of the applicable date on any matter that is submitted to a vote or for the consent of the stockholders of the

**7**

Company. Each holder of shares of Class A Common Stock shall be entitled to one (1) vote for each share of Class A Common Stock held as of the applicable date on any matter that is submitted to a vote or for the consent of the stockholders of the Company.

(b) Voting for Election of Directors. As long as any shares of Class B Common Stock remain outstanding, the holders of Class B Common Stock, voting as a separate class, shall be entitled to elect one (1) director (the "**Class B Common Director**") at any election of directors.

Notwithstanding the provisions of Section 223(a)(1) and 223(a)(2) of the General Corporation Law, any vacancy, including newly created directorships resulting from any increase in the authorized number of directors or amendment of this Certificate of Incorporation, and vacancies created by removal or resignation of a director, may be filled by a majority of the directors then in office, though less than a quorum, or by a sole remaining director, and the directors so chosen shall hold office until the next annual election and until their successors are duly elected and shall qualify, unless sooner displaced; provided, however, that where such vacancy occurs among the directors elected by the holders of a class or series of stock, the holders of shares of such class or series may override the action of the Board of Directors of the Company to fill such vacancy by (i) voting for their own designee to fill such vacancy at a meeting of this Company's stockholders or (ii) written consent, if the consenting stockholders hold a sufficient number of shares to elect their designee at a meeting of the stockholders. Any director may be removed during his or her term of office, either with or without cause, by, and only by, the affirmative vote of the holders of the shares of the class or series of stock entitled to elect such director or directors, given either at a special meeting of such stockholders duly called for that purpose or pursuant to a written consent of stockholders, and any vacancy thereby created may only be filled by the holders of that class or series of stock represented at the meeting or pursuant to written consent.

5. Class B Protective Provisions. So long as any shares of Class B Common Stock shall be issued and outstanding, the Company shall not, without first obtaining the approval (by vote or written consent as provided by law) of the holders of a majority of the outstanding shares of Class B Common Stock voting as a single class:

(a) amend, alter or repeal any provision of the Certificate of Incorporation or Bylaws (including pursuant to a merger) if such action would adversely alter the rights, preferences, privileges or powers of, or restrictions provided for the benefit of, the Class B Common Stock;

(b) increase or decrease the authorized number of shares of Class A Common Stock or Class B Common Stock;

(c) authorize or create (by reclassification, merger or otherwise) or issue or obligate itself to issue any new class or series of equity security (including any security convertible into or exercisable for any equity security) having rights, preferences or privileges with respect to dividends or payments upon liquidation senior to or on a parity with the Common Stock or Preferred Stock or having voting rights more favorable than those granted to the Class A Common Stock, Class B Common Stock or Preferred Stock generally;

(d) consummate a Liquidation Event;

(e) change the size of the Board of Directors;

(f) declare or pay any dividend or other distribution to the stockholders of the Company; or

(g) amend this Section 5.

6. Subdivision or Combinations. If the Company in any manner subdivides or combines the outstanding shares of one class of Common Stock, then the outstanding shares of the other class of Common Stock shall be subdivided or combined in the same manner.

7. Mergers, Consolidation or Other Combination Transactions. In the event that the Company shall enter into any Liquidation Event or other transaction or series of related transactions in which shares of Common Stock are exchanged for or converted into other stock or securities, or the right to receive cash or any other property, then, and in such event, the shares of Class B Common Stock and Class A Common Stock shall be entitled to be exchanged for or converted into the same kind and amount of stock, securities, cash or any other property, as the case may be, into which or for which each share of the other class of Common Stock is exchanged or converted; provided, however, that if the stock or securities of the resulting entity issued upon such exchange or conversion of the shares of Common Stock outstanding immediately prior to such Liquidation Event or other transaction would represent at least a majority of the voting power of such resulting entity (without giving effect to any differences in the voting rights of the stock or securities of the resulting entity to be received by the holders of shares of Class B Common Stock and the holders of Class A Common Stock), then the holders of shares of Class B Common Stock and the holders of shares of Class A Common Stock shall be entitled to receive stock or securities of the resulting entity issuable upon such exchange or conversion that differ with respect to voting rights in a similar manner to which the shares of Class B Common Stock and Class A Common Stock differ under this Certificate of Incorporation as provided under Section 4 of this Article V(B).

8. Equal Status. Except as expressly provided in this Article V, Class B Common Stock and Class A Common Stock shall have the same rights and privileges and rank equally, share ratably and be identical in all respects as to all matters.

9. Conversion.

(a) Certain Definitions. As used in this Section 9, the following terms shall have the following meanings:

(i) "**Affiliate**" means with respect to any specified person, any other person who or which, directly or indirectly, controls, is controlled by, or is under common control with such specified person, including, without limitation, any general partner, managing member, officer, director or manager of such person and any venture capital, private equity, investment advisor or other investment fund now or hereafter existing that is controlled by one or more general partners or managing members of, or is under common investment management (or shares the same management, advisory company or investment advisor) with, such person.

(ii) "**Class B Common Stockholder**" shall mean any individual that is issued Class B Common Stock by the Company.

(iii) "**Permitted Entity**" shall mean, with respect to any Class B Common Stockholder, any trust, account, plan, corporation, partnership, or limited liability company specified in Section 9(c) established by or for such Class B Common Stockholder, so long as such entity meets the requirements set forth in Section 9(c).

(iv) "**Transfer**" shall mean, with respect to a share of Class B Common Stock, any sale, assignment, transfer, conveyance, hypothecation or other transfer or disposition

9

of such share or any legal or beneficial interest in such share, whether or not for value and whether voluntary or involuntary or by operation of law.

(v) **"Voting Control"** shall mean, with respect to a share of Class B Common Stock, the power (whether exclusive or shared) to vote or direct the voting of such share of Class B Common Stock by proxy, voting agreement or otherwise.

(b) Optional Conversion. Each share of Class B Common Stock shall be convertible into one (1) fully paid and nonassessable share of Class A Common Stock at the option of the holder thereof at any time upon written notice to the transfer agent of the Company.

(c) Automatic Conversion upon Transfer. Each share of Class B Common Stock shall automatically, without any further action, convert into one (1) fully paid and nonassessable share of Class A Common Stock upon the Transfer of such share; provided, however, that a Transfer of Class B Common Stock by a Class B Common Stockholder or such Class B Common Stockholder's Permitted Entities that has received the prior approval of the Board of Directors of the Company shall not trigger such automatic conversion; provided further, however, that a Transfer of Class B Common Stock by a Class B Common Stockholder or such Class B Common Stockholder's Permitted Entities to another Class B Common Stockholder's Permitted Entities (or, in the case of a Class B Common Stockholder's Permitted Entity, to the Class B Common Stockholder) shall not trigger such automatic conversion; provided further, however, that a Transfer by a Class B Common Stockholder to any of the following Permitted Entities, and from any of the following Permitted Entities back to such Class B Common Stockholder and/or any other Permitted Entity by or for such Class B Common Stockholder shall not trigger such automatic conversion:

(i) a trust for the benefit of such Class B Common Stockholder and for the benefit of no other person, provided such Transfer does not involve any payment of cash, securities, property or other consideration (other than an interest in such trust) to the Class B Common Stockholder and, provided, further, that in the event such Class B Common Stockholder is no longer the exclusive beneficiary of such trust, each share of Class B Common Stock then held by such trust shall automatically convert into one (1) fully paid and nonassessable share of Class A Common Stock;

(ii) a trust for the benefit of persons other than the Class B Common Stockholder, so long as the Class B Common Stockholder has dispositive power (whether exclusive or shared) and Voting Control with respect to the shares of Class B Common Stock held by such trust, provided such Transfer does not involve any payment of cash, securities, property or other consideration (other than an interest in such trust) to the Class B Common Stockholder, and, provided, further, that in the event the Class B Common Stockholder no longer has dispositive power and Voting Control, as set forth above, with respect to the shares of Class B Common Stock held by such trust, each share of Class B Common Stock then held by such trust shall automatically convert into one (1) fully paid and nonassessable share of Class A Common Stock;

(iii) a trust under the terms of which such Class B Common Stockholder has retained a "qualified interest" within the meaning of §2702(b)(1) of the Internal Revenue Code (the "**Code**") and/or a reversionary interest so long as the Class B Common Stockholder has sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock held by such trust; provided, however, that in the event the Class B Common Stockholder no longer has sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock held by such trust, each share of Class B Common Stock then held by such trust shall automatically convert into one (1) fully paid and nonassessable share of Class A Common Stock;

(iv) an Individual Retirement Account, as defined in Section 408(a) of the Code, or a pension, profit sharing, stock bonus or other type of plan or trust of which such Class B Common Stockholder is a participant or beneficiary and which satisfies the requirements for qualification under Section 401 of the Code; *provided* that in each case such Class B Common Stockholder has sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock held in such account, plan or trust, and *provided, further*, that in the event the Class B Common Stockholder no longer has sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock held by such account, plan or trust, each share of Class B Common Stock then held by such trust shall automatically convert into one (1) fully paid and nonassessable share of Class A Common Stock;

(v) a family member of such Class B Common Stockholder, which shall include with respect to an natural person who is a Class B Common Stockholder, the spouse, domestic partner, parents, grandparents, lineal descendants, siblings and lineal descendants of siblings of such Class B Common Stockholder; and *provided, further*, that lineal descendants shall include adopted persons, but only so long as they are adopted while a minor;

(vi) a corporation, partnership, or limited liability company in which such Class B Common Stockholder and/or family members of such Class B Common Stockholder directly, or indirectly through one or more Permitted Entities, own shares, partnership interests or membership interests, as applicable, with sufficient Voting Control in the corporation, partnership or limited liability company, as applicable, or otherwise have legally enforceable rights, such that the Class B Common Stockholder and/or family members of such Class B Common Stockholder retain sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock held by such corporation, partnership or limited liability company; provided, however, that in the event the Class B Common Stockholder and/or family members of such Class B Common Stockholder no longer own sufficient shares, partnership interests or membership interests, as applicable, or no longer has sufficient legally enforceable rights to ensure the Class B Common Stockholder and/or family members of such Class B Common Stockholder retain sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock held by such corporation, partnership or limited liability company, as applicable, each share of Class B Common Stock then held by such corporation, partnership or limited liability company, as applicable, shall automatically convert into one (1) fully paid and nonassessable share of Class A Common Stock;

(vii) any transfer or transfers by a Class B Common Stockholder to another Class B Common Stockholder; or

(viii) an Affiliate of a Class B Common Stockholder, provided that the person or entity holding sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock being Transferred (the "**Controlling Person**") retains, directly or indirectly, sole dispositive power and exclusive Voting Control with respect to the shares following such Transfer; *provided* that in the event the Controlling Person no longer has sole dispositive power and exclusive Voting Control with respect to the shares of Class B Common Stock Transferred to such Affiliate, each such share of Class B Common Stock Transferred to such Affiliate shall automatically convert into one (1) fully paid and nonassessable share of Class A Common Stock unless such transaction is otherwise approved by the Company.

(d) Effect of Conversion. In the event of a conversion of shares of Class B Common Stock to shares of Class A Common Stock pursuant to this Section 9, such conversion shall be deemed to have been made at the time that the Company's transfer agent receives the written notice required pursuant to Section 9(b), the time that the Transfer of such shares occurred or the death of the Class B Common Stockholder, as applicable. Upon any conversion of Class B Common Stock to Class A Common

Stock, all rights of the holder of such shares of Class B Common Stock shall cease and the person or persons in whose names or names the certificate or certificates representing the shares of Class B Common Stock are to be issued, if any, shall be treated for all purposes as having become the record holder or holders of such number of shares of Class A Common Stock into which such Class B Common Stock were convertible. Shares of Class B Common Stock that are converted into shares of Class A Common Stock as provided in this Section 9 shall be retired and shall not be reissued.

(e) Reservation of Stock. The Company shall at all times reserve and keep available out of its authorized but unissued shares of Class A Common Stock, solely for the purpose of effecting the conversion of the shares of Class B Common Stock, such number of its shares of Class A Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of Class B Common Stock into shares of Class A Common Stock.

10. Adjustment in Authorized Class A Common Stock. The number of authorized shares of Class A Common Stock may be increased or decreased (but not below the number of shares of Class A Common Stock then outstanding) by an affirmative vote of the holders of a majority of the voting power of the Company, irrespective of the provisions of Section 242(b)(2) of the General Corporation Law.

11. Administration. The Company may, from time to time, establish such policies and procedures relating to the conversion of the Class B Common Stock to Class A Common Stock and the general administration of this dual class Common Stock structure, including the issuance of stock certificates with respect thereto, as it may deem necessary or advisable, and may request that holders of shares of Class B Common Stock furnish affidavits or other proof to the Company as it deems necessary to verify the ownership of Class B Common Stock and to confirm that a conversion to Class A Common Stock has not occurred.

## ARTICLE VI

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Company is expressly authorized to make, alter, amend or repeal the bylaws of the Company.

## ARTICLE VII

Elections of directors need not be by written ballot unless otherwise provided in the bylaws of the Company.

## ARTICLE VIII

Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws of the Corporation may provide. The books of the Corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at such place or places as may be designated from time to time by the Board or in the Bylaws of the Corporation.

## ARTICLE IX

To the fullest extent permitted by the General Corporation Law of the State of Delaware, as the same exists or as may hereafter be amended from time to time, a director of the Company shall not be personally liable to the Company or its stockholders for monetary damages for breach of fiduciary duty as a director. If the General Corporation Law of the State of Delaware is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the

Company shall be eliminated or limited to the fullest extent permitted by the General Corporation Law of the State of Delaware, as so amended.

The Company shall indemnify, to the fullest extent permitted by applicable law, any director or officer of the Company who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "**Proceeding**") by reason of the fact that he or she is or was a director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with any such Proceeding. The Company shall be required to indemnify a person in connection with a Proceeding initiated by such person only if the Proceeding was authorized by the Board of Directors of the Company.

The Company shall have the power to indemnify, to the extent permitted by the General Corporation Law of the State of Delaware, as it presently exists or may hereafter be amended from time to time, any employee or agent of the Company who was or is a party or is threatened to be made a party to any Proceeding by reason of the fact that he or she is or was a director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with any such Proceeding.

Neither any amendment nor repeal of this Article, nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article, shall eliminate or reduce the effect of this Article in respect of any matter occurring, or any cause of action, suit or claim accruing or arising or that, but for this Article, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

## ARTICLE X

Except as provided in Article IX, the Company reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

## ARTICLE XI

Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery in the State of Delaware shall be the sole and exclusive forum for any stockholder (including a beneficial owner) to bring (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation, its directors, officers or employees arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's certificate of incorporation or bylaws or (iv) any action asserting a claim against the Corporation, its directors, officers or employees governed by the internal affairs doctrine, except for, as to each of (i) through (iv) above, any claim as to which the Court of Chancery determines that there is an indispensable party not subject to the jurisdiction of the Court of Chancery (and the indispensable party does not consent to the personal jurisdiction of the Court of Chancery within ten days following such determination), which is vested in the exclusive jurisdiction of a court or forum other than the Court of Chancery, or for which the Court of Chancery does not have subject matter jurisdiction. If any provision or provisions of this Article XI shall be held to be invalid, illegal or unenforceable as applied to any person or entity or circumstance for any reason

whatsoever, then, to the fullest extent permitted by law, the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of this Article XI (including, without limitation, each portion of any sentence of this Article XI containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) and the application of such provision to other persons or entities and circumstances shall not in any way be affected or impaired thereby.

IN WITNESS WHEREOF, the undersigned, being the incorporator herein before named, has executed, signed, and acknowledged this Certificate of Incorporation this 26th day of May, 2020.

/s/ *Monica Devlin*
Name: Monica Devlin
Title: Sole Incorporator