UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>BECKETT COLLECTIBLES, LLC,<br><br>    Defendant. | No. 3:22-cv-02867-N |

## BECKETT COLLECTIBLES, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

### Introduction

Alt Sports Card Fund GP LLC, in its capacity as the general partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. (together, "Alt") allege a single count of negligent misrepresentation against Beckett Collectibles, LLC ("Beckett") under Texas law. This Court can resolve this motion by applying Texas's "limited group" requirement for a negligent misrepresentation claim to Alt's pleaded facts (and by taking judicial notice of certain of Alt's entities' dates of formation). Alt does not fall within the limited group of plaintiffs who can bring a negligent misrepresentation claim under the facts of this case. Therefore, Alt fails to state a claim for negligent misrepresentation, and the Court must dismiss the Amended Complaint with prejudice because Alt cannot cure the defect.

## Summary of Alt's Pleaded Facts

Alt brings a single claim against Beckett for negligent misrepresentation.[1] It alleges that in October 2016, Beckett negligently certified a 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 card (the "Curry card") as authentic and unaltered,[2] and that Alt relied on that certification when it purportedly purchased the Curry card in October 2020.[3] Alt further alleges the Curry card had been trimmed and was short on the top when Beckett received it for grading in 2016 and that Alt would not have purchased the card if Beckett had identified it as trimmed or altered.[4]

Alt was not a party to the October 2016 transaction in which Beckett graded and certified the Curry card.[5] However, Alt alleges that Beckett's purpose in certifying the Curry card "was for subsequent purchasers, like Alt, to be able to rely on those representations, including in later purchasing the card."[6] Alt seeks "in excess of $350,000."[7]

## The Alt Entities' Dates of Formation

At any stage of a proceeding, a court may judicially notice a fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2), (d); *Funk v.*

---

[1] Am. Compl., ECF 14, at ¶¶ 68-76.
[2] *Id.* ¶¶ 47-52.
[3] *Id.* ¶¶ 53-56.
[4] *Id.* ¶¶ 48, 54.
[5] *Id.* ¶ 69.
[6] *Id.* ¶ 71.
[7] *Id.* ¶ 76 and Prayer.

*Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Accordingly, a court can consider judicially noticed facts when ruling on a 12(b)(6) motion, including facts in public governmental filings. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020).

Attached as **Exhibits A** and **B** are certified copies of the following public documents filed in the office of the Delaware Secretary of State showing the dates of formation of Alt Sports Card Fund, L.P., and Alt Platform, Inc.:

**Exhibit A**:  Certificate of Limited Partnership of Alt Sports Card Fund, L.P.
**Exhibit B**:  Certificate of Incorporation of Alt Platform, Inc.

Four Alt entities are relevant to this lawsuit:

(1)   Alt Sports Card Fund, L.P. (formed in 2022); [8]

(2)   Alt Fund I, LP (formed in 2020); [9]

(3)   Alt Sports Card Fund GP, LLC (which brought this lawsuit as "the general partner of Alt Sports Card Fund, L.P."); [10] and

(4)   Alt Platform, Inc. (formed in 2020). [11]

In Delaware, a limited partnership is formed "at the time of the filing of the initial certificate of limited partnership in the Office of the Secretary of State or at any later date or time specified in the certificate[.]" DEL. CODE. ANN. tit. 6, § 17-201. Alt Sports Card Fund, L.P. was formed on <u>June 30, 2022</u>,[12] and Alt Fund I, LP was formed in <u>2020</u>.[13]

---

[8] *See* **Exhibit A.**
[9] *See* Am. Compl. ¶ 4.
[10] *See id.* ¶¶ 1, 6; Beckett notes that Alt previously asserted in its original Complaint that *Alt Platform, Inc.* "is the general partner of Alt Sports Card Fund, L.P." *See* Compl., ECF 1, at ¶ 3.
[11] *See* **Exhibit B**.
[12] *See* **Exhibit A**.
[13] *See* Am. Compl. ¶ 4.

Alt Sports Card Fund GP, LLC brought this lawsuit on behalf of Alt Sports Card Fund, L.P., "the successor to Alt Fund I, LP's rights and assets, including the negligent misrepresentation claim pled against Beckett Collectibles, LLC in this lawsuit."[14]

Alt Platform, Inc. was formed in Delaware on May 26, 2020,[15] and it was previously the general partner of Alt Fund I, LP.[16]

This Court may judicially notice and consider the dates of formation of Alt Sports Card Fund, L.P. and Alt Platform, Inc. because they are contained within the attached certified copies of publicly available governmental filings.

## Argument

I. **This Court should dismiss Alt's negligent misrepresentation claim because Alt is not within the limited class of potential plaintiffs to which Beckett can be held liable for its purported misrepresentations about the Curry card.**

   A. **This Court must dismiss Alt's Amended Complaint if it fails to state a claim upon which relief can be granted.**

Alt's Amended Complaint must be dismissed if the Court cannot grant relief upon Alt's sole claim for negligent misrepresentation. *See* FED. R. CIV. P. 12(b)(6). A district court must dismiss a claim if a plaintiff cannot prove any set of facts entitling it to relief. *See, e.g., Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). A claim is facially plausible if the plaintiff pleads facts allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See, e.g., Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[14] *See id.* ¶¶ 5-6.
[15] *See* **Exhibit B**.
[16] Am. Compl. ¶ 4.

678 (2009)). As explained below, Alt has not pleaded facts—and cannot plead any set of facts—entitling it to relief against Beckett for Beckett's 2016 certification of the Curry card.

> **B. Under Texas law, Alt does not fall within the limited class of potential plaintiffs because Alt was not known to Beckett in 2016 when Beckett certified the Curry card—in fact, Alt did not even exist in 2016.**

To prove negligent misrepresentation in Texas, a plaintiff must show: "(1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653-54 (Tex. 2018).

Texas has adopted the tort of negligent misrepresentation as described in the Restatement (Second) of Torts § 552, which narrows the class of potential plaintiffs who can bring a negligent misrepresentation claim. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 791-94 (Tex. 1999). Here, Alt is not a member of the limited class of potential plaintiffs to which Beckett can be held liable because Alt did not exist in 2016 when Beckett made the purported misrepresentations about the Curry card.

> **1. Alt cannot plead any set of facts distinguishing itself from the unlimited generic group of subsequent purchasers who might someday purchase the Curry card in reliance on Beckett's alleged 2016 misrepresentation.**

Even if Alt purchased the Curry card in October 2020, Texas law restricts a defendant's scope of liability for negligent misrepresentation to a limited class of potential plaintiffs (1) whom the defendant intended to benefit or (2) who the defendant

knew would receive the information. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010); *see also McCamish*, 991 S.W.2d at 794, and Restatement (Second) of Torts § 552(2). That limited class is "distinct from the much larger group or class of persons who might reasonably be expected sooner or later to have access to [the information] and foreseeably take action in reliance upon it." *In re Enron Corp. Secs., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 977-79 (S.D. Tex. 2010).

Texas does not follow a broader foreseeability approach to liability for negligent misrepresentation, which would conflict with the Restatement's intentionally narrower approach. *See Grant Thornton LLP*, 314 S.W.3d at 920-21; *see also In re Soporex, Inc.*, 446 B.R. 750, at n.24 (Bankr. N.D. Tex. 2011) (Texas has "rejected a foreseeability standard in favor of the Torts Restatement approach"). "It is not enough that the maker knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Restatement (Second) of Torts § 552, cmt. h; *see also In re Enron Corp. Secs.*, 762 F. Supp. at 977-79.

Therefore, it is not sufficient to allege a defendant knew when it made a purported misrepresentation that subsequent purchasers would rely on that representation in the future. *See, e.g., Grant Thornton LLP*, 314 S.W.3d at 920-21. For example, in *Grant Thornton*, an investor argued it fell within the limited class of persons who could sue for negligent misrepresentations Grant Thornton made in an April 2000 audit report. *Id.* at 921. The investor allegedly relied on the audit report in December 2000 when it chose to buy bonds sold by an entity called Epic. *Id.* at 920-21. The court held the investor was outside Grant Thornton's scope of liability, reasoning that "to interpret the 'limited group' requirement

as including all potential investors would render that requirement meaningless." *Id.* at 921 (quoting *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 613 (5th Cir. 1996)). Because the investor did not have a relationship with Grant Thornton or Epic when the audit report was issued, and because the investor had not previously bought Epic bonds, it was not within the limited group of already-existing investors to whom Grant Thornton could be liable. *Id.*

Alt alleges Beckett certified the Curry card in 2016 "for subsequent purchasers, like Alt, to be able to rely on those representations."[17] But as illustrated by the court's analysis in *Grant Thornton*, Beckett's scope of liability does not extend to all third parties who might ever purchase the Curry card, as that would render the "limited group" requirement meaningless. *Grant Thornton LLP*, 314 S.W.3d at 921. To the contrary, Beckett's liability is limited to potential plaintiffs Beckett intended to benefit from the certification or knew would receive the information. *See id.* at 920. Texas's restriction of liability to a limited group "prevents against unlimited liability and narrows the scope of liability to situations where the information supplier is aware of the third party and intends that the third party rely on the information." *Tara Capital Ptrs. I, L.P. v. Deloitte & Touche, L.L.P.*, No. 05-03-00746-CV, 2004 WL 1119947 (Tex. App.—Dallas May 20, 2004, pet. denied). There is no plausible set of facts under which this Court could reasonably infer that Beckett was aware of Alt in 2016 when it certified the Curry card or that it intended for Alt to benefit from the certification—because there was no Alt in 2016.

---

[17] Am. Compl. ¶ 71.

**Beckett Collectibles, LLC's Brief in Support of**
**Motion to Dismiss Amended Complaint** Page 7

In 2016, Beckett had no direct or indirect relationship with Alt because Alt did not exist.[18] To that end, Alt admits it was not a party to the transaction involving the submission of the Curry card to Beckett for grading in October 2016.[19] Alt did not purportedly purchase the Curry card until 2020, and it has not pleaded any facts indicating Beckett could have discerned Alt as a potential plaintiff in 2016 when it certified the card.[20] To state a claim, Alt must allege facts plausibly placing itself within a limited group of potential plaintiffs that is narrower than the unbounded universe of "third parties" who might have someday purchased the Curry card after the 2016 certification. *See Grant Thornton LLP*, 314 S.W.3d at 920-21. Alt cannot plausibly do so.

The notion that Alt—which did not exist in 2016 when the Curry card was certified—falls within the limited group of potential plaintiffs resulting from that certification turns Texas's limited group requirement on its head. Such a generic and unlimited group—"subsequent purchasers, like Alt"[21]—is still indeterminable and unbounded today in 2023 because it includes all third parties "who might reasonably be expected sooner or later to have access to [the 2016 certification] and foreseeably take action in reliance upon it" by purchasing the Curry card. *See In re Enron Corp. Secs.*, 762 F. Supp. 2d 942, 977-79. That generic group includes persons like Alt who did not exist or have a relationship with Beckett in 2016, and it includes persons who still do not exist but might someday come into being and purchase the Curry card. That is the antithesis of the

---

[18] *See* **Exhibits A** and **B**, and Am. Compl. ¶ 4.
[19] Am. Compl. ¶ 69.
[20] *Id.* ¶ 54.
[21] *Id.* ¶ 71.

Restatement's (and thus, Texas's) approach to negligent misrepresentation, which guards against unbounded liability and rejects a broader foreseeability standard.

## Conclusion

This Court must dismiss the Amended Complaint because Alt is not a member of the limited group of plaintiffs who can bring a negligent misrepresentation claim under Texas law arising from the certification of the Curry card. The Court should dismiss the Amended Complaint with prejudice because Alt cannot cure this defect by repleading.

Dated: March 27, 2023

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin
Texas State Bar No. 24028045
Taryn E. Ourso
Texas State Bar No. 24103715
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
tourso@condontobin.com

*Attorneys for Defendant
Beckett Collectibles, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, the foregoing was electronically submitted to the clerk of court for the United States District Court for the Northern District of Texas using the Court's electronic filing system and that all counsel of record have been served electronically or as authorized by the Federal Rules of Civil Procedure.

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin