IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALT PLATFORM, INC, *et al.*, § § | |
| Plaintiffs, § § | |
| v.  § § | Civil Action No. 3:22-CV-2867-N |
| BECKETT COLLECTIBLES, LLC, § § | |
| Defendant. § | |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Beckett Collectibles, LLC's ("Beckett") motion to dismiss the amended complaint [17]. Because Plaintiffs Alt Sports Card Fund GP, LLC and Alt Platform, Inc. (collectively "Alt") have pleaded facts sufficient to state a claim, the Court denies the motion.[1]

### I. ORIGINS OF THE MOTION

This case arises from a dispute over the allegedly faulty grading of a Stephen Curry sports trading card ("the Card").[2] Beckett operates a professional sports trading card grading service. Am. Compl. ¶ 17 [14]. In October 2016, a third party approached Beckett to grade the Card. *Id.* ¶ 47. When the third party retained Beckett's services, the Card had already been trimmed at the top, reducing its value. *Id.* ¶ 48. However, instead of grading

---

[1] The Court did not consider new arguments made in Beckett's reply. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991). Accordingly, the Court denies Alt's motion for leave to file sur-reply [28] as moot.
[2] For purposes of this Order, the Court accepts the well-pleaded allegations of the complaint as true.

MEMORANDUM OPINION AND ORDER – PAGE 1

the Card as "Authentic-Altered," Beckett negligently mislabeled the Card as being in 9.5 "Gem-Mint" condition. *Id*. ¶¶ 48–52.

In October 2020, Alt purchased the Card through an online marketplace called Goldin Auctions for $168,000. *Id*. ¶¶ 53–54. Alt accessed a registry on Beckett's website that represented the Card was in 9.5 "Gem-Mint" condition. *Id*. ¶ 54. After receiving the Card, Alt stored it in a secure vault, still within the Beckett tamper-proof slab. *Id*. ¶¶ 55–56.

As a result of Curry's performance during the 2021–2022 NBA season, the value of the Card substantially increased and, if in the 9.5 "Gem-Mint" condition as certified by Beckett, would have been worth over $350,000 by August 2022. *Id*. ¶¶ 57–62. Alt decided to have the Card regraded by PSA, the leading grading service in the secondary sports card market, to increase its value. *Id*. ¶¶ 63–64. In September 2022, PSA determined that the card had been trimmed and certified the Card as "Authentic-Altered." *Id*. ¶ 65. Alt asked Beckett to grade the Card again, leading Beckett to admit that the Card was in fact altered. *Id*. Alt filed this suit against Beckett for negligent misrepresentation in grading the Card. Beckett now moves to dismiss Alt's claims under Federal Rule of Civil Procedure 12(b)(6).

## II. RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the

MEMORANDUM OPINION AND ORDER – PAGE 2

complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III.  THE COURT DENIES THE MOTION TO DISMISS

#### A.  *Legal Standard for Negligent Misrepresentation*

To prove the tort of negligent misrepresentation,[3] Alt must show: (1) a representation made by Beckett in the course of its business or in a transaction in which it had a pecuniary interest; (2) Beckett's representation conveyed false information for the guidance of others in their business; (3) Beckett did not exercise reasonable care or

---

[3] The parties agree that Texas law applies.

competence in obtaining or communicating the information; and (4) Alt suffered pecuniary loss by justifiably relying on Beckett's representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018). Texas law further restricts recovery for negligent misrepresentation to potential plaintiffs that the defendant intended to benefit or who the defendant knew would receive the information. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010); RESTATEMENT (SECOND) OF TORTS § 552(2). Beckett challenges only Alt's membership in the limited group of indirect recipients that Beckett intended to, or knew would, receive the grading of the Card. Def.'s Br. Supp. Mot. Dismiss 5 [18].

### B.  Alt has Pleaded Membership in the Potential Class of Plaintiffs

Beckett's business model is successful because it provides neutral third-party verification of what a purchaser is buying. *See* Am. Compl. ¶ 41. Marketing materials tout its reliability and consistency to raise the perception amongst sports card collectors that Beckett can be trusted. *Id*. ¶¶ 40–46. Moreover, Beckett's intent to induce reliance by subsequent purchasers is laid bare by its use of two instruments in conjunction: tamper-proof slabs encasing graded cards and an online database of prior certifications. The tamper-proof slabs ensure that a potential purchaser knows that the recipient of the card has not altered it since Beckett certified its status. *Id*. ¶ 25. The online database allows a potential purchaser to verify information about a graded card directly from Beckett. *Id*. ¶ 45. Beckett's choice of instruments allows a potential purchaser to obtain reliable

information directly from Beckett without relying on the original customer, demonstrating Beckett's intent to transmit its gradings to subsequent purchasers like Alt.[4]

The Restatement's formulation of negligent misrepresentation anticipates recovery by some subsequent purchasers. The Restatement allows for liability if "the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group." RESTATEMENT (SECOND) OF TORTS § 552(2) cmt. h. If the Court were to adopt Beckett's position, liability for negligent grading of sports cards would be limited to the original customer who requested grading of a card.[5] No matter who purchases a graded card, Beckett could then presumably claim that the subsequent purchaser is part of the unlimited class of plaintiffs whose claims are foreclosed by Texas law. Beckett cannot simultaneously present itself as a credible servicer that can be trusted for validation in the secondary sports card market, but avoid liability for misrepresenting the authenticity of graded products. As such, Alt has shown that it falls into the limited group that Beckett intended to rely on its representations.

---

[4] Beckett's argument that Alt cannot rely on a representation that occurred prior to its legal existence is not persuasive. Beckett does not cite any precedents establishing such a per se rule, and the Restatement's formulation allows for liability even if the maker of a representation lacked knowledge of the plaintiff's identity at the time. RESTATEMENT (SECOND) OF TORTS § 552(2) cmt. h ("It is sufficient . . . that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given.")

[5] Even if the original customer were to bring a claim of negligent misrepresentation, Beckett would be liable only for the value it charged for the grading as the customer would have suffered no other harm. The customer would have purchased the card prior to Beckett grading it, and therefore any inaccurate certification would not be the proximate cause for the loss of market value. This result would make all sports card certifications meaningless.

MEMORANDUM OPINION AND ORDER – PAGE 5

CONCLUSION

Because Alt has pleaded facts sufficient to state a claim under Rule 12(b)(6), the Court denies the motion to dismiss.

Signed July 24, 2023.

_____
David C. Godbey
Chief United States District Judge