IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P. and ALT PLATFORM, INC., | § § § § § | |
| Plaintiffs, | § § | Case No. 3:22-CV-02867-N |
| v. | § § | |
| BECKETT COLLECTIBLES, LLC, | § § | |
| Defendant. | § § | |

**BECKETT COLLECTIBLES, LLC'S RESPONSE
TO CHRISTOPHER LADD'S MOTION TO INTERVENE**

Aaron Z. Tobin
Texas State Bar No. 24028045
Kendal B. Reed
Texas State Bar No. 24048755
Abigail R.S. Campbell
Texas State Bar No. 24098959
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*Attorneys for Defendant
Beckett Collectibles, LLC*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .............................................................. 2

    I. Alt's lawsuit against Beckett ......................................................................................... 2

    II. The Wisconsin Action .................................................................................................. 2

    III. Ladd seeks to intervene ................................................................................................ 3

ARGUMENT & AUTHORITIES ............................................................................................ 3

    I. Legal standard ............................................................................................................... 3

        A. Intervention as of right ...................................................................................... 3

        B. Permissive intervention ..................................................................................... 4

    II. Ladd's lack of Article III standing is fatal .................................................................... 4

    III. Ladd's Motion to Intervene is not timely ..................................................................... 7

        A. Ladd knew, or should have known, about his purported interest for at least four months ....................................................................................................... 8

        B. Granting Ladd's intervention will significantly prejudice existing parties ....... 8

        C. Denial of Ladd's intervention will not result in prejudice ............................... 10

        D. Unusual circumstances weigh against intervention ........................................ 10

    IV. The Court should deny Ladd's Motion to Intervene as a matter of right ................... 11

        A. Ladd does not have a protectable interest in the underlying lawsuit .............. 11

        B. Disposition of this matter will not impair Ladd's ability to protect his purported interest .............................................................................................................. 12

        C. Ladd's "interests" are adequately represented by the parties in this litigation ............. 13

    V. Ladd's application for permissive intervention should be denied .............................. 14

CONCLUSION ....................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P.; Alt Platform, Inc. v. Christopher Ladd*,
  No. 23-752 (W.D. Wis. filed Oct. 27, 2023) ............................................................... 1

*Cox v. Morris*,
  No. 3:18-CV-30-DMB-JMV, 2019 WL 1601367 (N.D. Miss. Apr. 15, 2019) ....................... 8, 9

*Edwards v. City of Hou.*,
  78 F.3d 983 (5th Cir. 1996) ........................................................................................ 11

*Gen. Building Contractors Ass'n, inc. v. Pennsylvania*,
  458 U.S. 375 (1982)). ................................................................................................ 5

*Haspel & Davis Milling & Planting Co., Ltd. v. Bd. of Levee Comm'rs of Orleans Levee Dist.*,
  493 F. 3d 570 (5th Cir. 2007) ..................................................................................... 13

*John Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) ...................................................................................... 7

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
  884 F.2d 185 (5th Cir. 1989). ..................................................................................... 4, 14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992). .................................................................................................. 5

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ...................................................................................... 4, 5, 11, 12, 14

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) .................................................................................... 7

*Rose v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) ...................................................................................... 7

*Roussell v. Brinker Int'l, Inc.*,
  No. H-05-3733, 2009 WL 6496504 (S.D. Tex. Jan. 26, 2009) ..................................... 13

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016). .................................................................................................. 5

*St. Bernard Par. v. Lafarge N. Am., Inc.*,
  914 F.3d 969 (5th Cir. 2019) ...................................................................................... 4, 7, 11

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977)) ..................................................................................... 7

*Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*,
  172 F.3d 385 (5th Cir. 1999) ...................................................................................... 4

*Texas v. U.S.*,
  805 F.3d 653 (5th Cir. 2015) ...................................................................................... 11, 12, 13, 14

Case 3:22-cv-02867-N   Document 44   Filed 02/13/24   Page 4 of 19   PageID 295

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
   581 U.S. 433 (2017) .................................................................................................... 5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................................... 6

*United States v. Louisiana*,
   90 F.R.D. 358, (E.D. La. 1981), .............................................................................. 12

*Warth v. Seldin*,
   422 U.S. 490 (1975)) .................................................................................................. 5

*WRR Indus., Inc. v. Prologis*,
   No. 3:04-CV-2544-L, 2006 WL 247894 (N.D. Tex. Feb. 2, 2006) ............................. 9

**Other Authorities**

BLACK'S LAW DICTIONARY 479 (9th ed. 2009) ................................................................. 5

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
   PROCEDURE § 1913 (3d ed.)). ............................................................................ 4, 7, 8

FEDERAL PRACTICE AND PROCEDURE § 1913 (3d ed.)). ..................................................... 7

RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 305 (1967)). ......................... 5

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 472 (1971) ................................. 5

**Rules**

Fed. R. Civ. P. 24 ................................................................................................... passim
Fed. R. Civ. P. 26(f) ....................................................................................................... 3

28212917v8 92001.031.00

Defendant Beckett Collectibles, LLC ("Beckett") submits this Response to Christopher Ladd's ("Ladd") Motion to Intervene,[1] which should be denied because Ladd fails to meet the requirements for intervention under Federal Rule of Civil Procedure 24(a) or 24(b).

## INTRODUCTION

Ladd's copy and paste of the exact same allegations in Plaintiffs' Amended Complaint and asserting them as his own in his proposed intervening crossclaim against Beckett exhibits that there is no new theory of recovery not already being advanced by Plaintiffs. Instead, it appears the true purpose of Ladd's intervention is an attempt to hold Beckett as a responsible third party for undetermined and undecided damages that may result from the separate Wisconsin lawsuit that Plaintiffs filed against Ladd and as a path to consolidation of same. *See Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P.; Alt Platform, Inc. v. Christopher Ladd*, No. 23-752 (W.D. Wis. filed Oct. 27, 2023) (the "Wisconsin Action").

Moreover, Ladd's at least four-month delay in seeking to intervene in this case on the eve of the close of discovery is significantly prejudicial. The parties to this lawsuit have conducted extensive discovery, including exchanging expert reports and conducting depositions, which concludes on March 12, 2024. Significant motions are likewise due on March 12, 2024. Ladd's delayed intervention would require a second continuance of the deadlines and trial date in this lawsuit to allow for additional and repeated discovery—an unnecessary delay.

While the failure to meet *any* of the Rule 24 requirements is dispositive of an intervention motion, as set forth below, Ladd fails to satisfy even a single prerequisite of Rule 24(a) or (b).

---

[1] Ladd's Memorandum and Brief in Support of Motion to Intervene [Dkt. 43] fails to comply with Local Rule 7.1(i) requiring a party who relies on materials to support a motion to include such materials in an appendix and fails to comply with Local Rule 7.2 requiring briefs longer than ten pages contain a table of contents and table of authorities and that the brief contain citations to the appendix.

1
28212917v8 92001.031.00

Thus, Ladd's Motion to Intervene should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Alt's lawsuit against Beckett

On March 13, 2023, Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P. and Alt Platform, Inc. ("Alt" or "Plaintiffs") filed an Amended Complaint alleging a single cause of action for negligent misrepresentation against Beckett. Dkt. 14. Plaintiffs allege that Beckett made a negligent misrepresentation regarding the condition of a 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 Rookie Card (the "Curry Card") when, in 2016, Beckett graded the Card as being in unaltered 9.5 "Gem Mint" condition. *See id.* at ¶¶ 69-76.

This matter is scheduled for trial on June 10, 2024—less than five months from the date of this filing.[2] Dkt. 41. The parties have already exchanged written discovery and document production as well as expert disclosures and reports. As of the date of this filing, the parties will have completed four of the nine scheduled depositions. Discovery closes on March 12, 2024, meaning that timely discovery requests must have been served by February 12, 2024. *See id.* at ¶ 2(a). Further, all motions, including any objections to expert testimony must be filed by March 12, 2024. *Id.* at ¶ 2(b). In sum, by the time briefing is complete on Ladd's Motion to Intervene, discovery will be effectively closed, there will be approximately two weeks left for motion practice, and trial will be approximately ten weeks away. *See id.* at ¶¶ 1-2.

### II.    The Wisconsin Action

On September 8, 2023, Ladd received written demand from Plaintiffs seeking to recover for Ladd's alleged 2020 misrepresentations regarding his sale of the Curry Card to Plaintiffs. Dkt.

---

[2] The Court originally set this case for trial on March 25, 2024. Dkt. 16 at ¶ 1. On December 11, 2023, the Court granted the parties' unopposed motion for continuance and entered the Amended Scheduling Order. Dkt. 41.

2

43, p. 4. On October 27, 2023, Plaintiffs filed suit against Ladd in Wisconsin asserting claims for fraudulent representations under Wis. Stat. § 100.18; violation of the California deceptive trade practices statute, Cal. Civ. Code § 1770; and for breach of warranty. Dkt. 43, Ex. 1, ¶¶ 37-53.

On November 2, 2023, Ladd executed a waiver of service in the Wisconsin Action. *Wis. Action,* Case No. 23-cv-00752, Dkt. 5. Two months later on January 15, 2024, Ladd filed his Answer. *Id.* at Dkt. 7. Pursuant to the parties' Fed. R. Civ. P. 26(f) Joint Discovery Plan and Preliminary Pretrial Conference Report, trial is proposed for March 24-25, 2025. *Id.* at Dkt. 9.

Since the filing on Ladd's intervention motion claiming that his right to seek relief from Beckett would not delay the ongoing litigation, Ladd informed the court in the Wisconsin Action that if intervention is granted, he contemplates filing a Motion to Transfer the Wisconsin Action to the Northern District of Texas and then seek consolidation with this matter. *Wis. Action*, Case No. 23-cv-00754, Dkt. 9, § B(7)(a).

### III. Ladd seeks to intervene

On January 23, 2024, more than four months after Ladd knew about his alleged "interest" in this matter, Ladd filed his Motion to Intervene. Ladd argues his intervention should be permitted pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1). Ladd's Motion misses the mark and should be denied because he cannot satisfy the prerequisites for either intervention as of right or permissive intervention.

## ARGUMENT & AUTHORITIES

### I. Legal standard

#### A. Intervention as of right

Rule 24(a) governs intervention as of right. Parties may intervene based on statutory right or an interest in the action. Fed. R. Civ. P. 24(a). The Fifth Circuit has "distilled" Rule 24(a)(2)'s

requirements for parties asserting an interest in an action into four parts:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (citations and footnote omitted). "Failure to meet any one of these requirements is fatal to a claim of intervention as of right." *Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999).

### B. Permissive intervention

Rule 24(b) provides for permissive intervention based on a conditional statutory right to intervene or a common question of law or fact. Fed. R. Civ. P. 24(b). Permissive intervention based on a common question of law or fact may be appropriate when:

> (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). "Permissive intervention 'is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied.'" *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470-71 (5th Cir. 1984) (alteration and ellipsis in original) (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1913 (3d ed.)).

### II. Ladd's lack of Article III standing is fatal

Regardless of the path to intervention, Ladd cannot intervene in this matter because he lacks Article III standing. "[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing. That includes cases in

4

which both the plaintiff and the intervenor seek separate money judgments in their own names." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017) (citing *Gen. Building Contractors Ass'n, inc. v. Pennsylvania*, 458 U.S. 375, 402-03 (1982)). "In acting on a request for permissive intervention, it is proper to consider, among other things… their standing to raise relevant legal issues." *New Orleans Pub. Serv.*, 732 F.2d at 472 & n.40. It is Ladd's burden to establish Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Here, both Plaintiffs and Ladd seek separate money judgments from Beckett. Dkt. 14 at p. 17 ("Plaintiff [sic.], Alt [sic.], requests that this Court enter judgment in its favor and against Defendant Beckett as follows . . . Award Plaintiff [sic.] actual damages in excess of $350,000"); Ladd Cross-Claim at p. 12, attached as Exhibit A to Dkt. 42 ("Ladd respectfully requests that . . . this Court enter judgment in his favor and against Defendant Beckett . . . ."). Consequently, Ladd must establish each element of Article III standing.

To establish Article III standing, Ladd must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). At the pleading stage, Ladd must "'clearly . . . allege facts demonstrating' each element." *Id.* at 338 (ellipsis in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Ladd fails to, and cannot, satisfy the injury-in-fact element because there is no particularized concrete injury.

An injury in fact is an injury that is both "concrete *and* particularized." *Id.* at 334 (emphasis in original, internal quotations omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340 (citing and quoting BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). The injury must be "real" and not "abstract." *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 472 (1971); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 305 (1967)).

"[T]here is a significant difference between (1) an actual harm that has occurred but is not readily quantifiable . . . and (ii) a mere risk of future harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021). That latter does not constitute a concrete injury. *See id.*

Ladd's own allegations establish that he has not suffered a concrete injury and, instead, his pleaded injury is a mere risk of future harm. First, Ladd profited up to $157,400.00 from his 2020 sale of the Curry Card rather than suffer loss. Indeed, Ladd alleges that he purchased the Curry Card in 2016 for $10,600.00. Dkt. 42, Ex. A at ¶ 59. Ladd further alleges he sold the Curry Card in 2020 for $168,000.00—a significant profit to Ladd. *Id.* at ¶ 46. Consequently, Ladd benefitted from his purchase and sale of the Curry Card and did not suffer any injury.

Second, Ladd's claim for damages he may incur as a result of Plaintiff's Wisconsin Action against him is merely a risk of future harm—*i.e.* potential damages Ladd could owe to Plaintiffs—not a concrete harm required to confer Article III standing. *See TransUnion LLC*, 594 U.S. at 415 ("The risk of future harm on its own is not enough to support Article III standing for [Ladd's] damages claim.").

Ladd's risk of future harm is similar to the future harm plaintiffs alleged, and which the Court found insufficient to confer Article III standing, in *TransUnion*. There, 8,185 individuals sued TransUnion under the Fair Credit Reporting Act alleging that TransUnion failed to accurately maintain their credit files and caused their credit reports to contain serious criminal alerts. *See id.* at 417-18. Of the 8,185 individuals, only 1,853 had their credit reports disseminated to third parties. *Id.* at 418. The Supreme Court reversed the Ninth Circuit's ruling, holding that the remaining 6,332 individuals could not establish concrete harm because their risk of future harm—that their credit reports with the false criminal alert would be disseminated to third parties—never materialized because they were not disseminated and did not result in a denial of credit. *Id.* at 437.

The same analysis applies to Ladd. Ladd only holds a future risk of harm in the form of potential damages awarded to Plaintiffs at the conclusion of the Wisconsin Action. Indeed, Ladd's successful defense in the Wisconsin Action would result in no liability to Plaintiffs, thus Ladd's alleged harm against Beckett, even if proper, could never materialize. The Court "cannot simply presume a material risk of concrete harm." *Id.* at 438 (quoting *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1040 (9th Cir. 2020) (McKeown, J., op.)). Because Ladd fails to establish concrete harm, Ladd lacks standing to intervene either as of right or permission.

### III.   Ladd's Motion to Intervene is not timely

Ladd's unreasonable, over four-month delay in seeking to intervene in this matter fails to satisfy the prerequisites of Fed. R. Civ. P. 24(a)(2) and Fed. R. Civ. P. 24(b). The rules for both intervention as of right and permissive intervention require that such a motion be "timely." *See* Fed. R. Civ. P. 24(a), (b). "[W]hether intervention is sought as a matter of right or as a matter of law," a motion that is not timely filed must be denied. 7C CHARLES ALAN ARIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1913 (3d ed.)).

District courts evaluating a motion's timeliness look to (1) the length of time during which the proposed intervenor knew or reasonably should have known about its interest in the action; (2) the prejudice to existing parties if the motion is granted; (3) the prejudice to the intervenor if the motion is denied; and (4) whether there are any "unusual circumstances militating either for or against a determination that the application is timely." *St. Bernard Par.*, 914 F.3d at 974; *Rose v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)).  "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (citation omitted).

Timeliness is contextual and must be determined based on all the circumstances. *Id.* Consideration of these factors requires that Ladd's Motion be denied.

### A. Ladd knew, or should have known, about his purported interest for at least four months

In assessing the first factor, how long the intervenor knew of the pending action, "the court must consider whether the applicant was in a position to seek intervention at an earlier stage in the case." WRIGHT & MILLER at § 1916. "When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow interventions." *Id.*

At the latest, Ladd knew or should have known about his purported interest in this litigation as of September 8, 2023, when Plaintiffs issued a demand to him for his alleged misrepresentations during the 2020 sale of the Curry Card. *See* Dkt. 43, p. 4. Even after Plaintiffs filed the Wisconsin Action on October 27, 2023, Ladd still waited another three months to seek intervention. *See* Dkt. 43, Ex. 1.

In the meantime, Plaintiffs and Beckett conducted written discovery and production, exchanged expert reports, and conducted depositions in the preparation for the close of discovery and fast approaching motions deadlines. Indeed, just a five-month delay in filing a motion to intervene weighs against timeliness. *See Cox v. Morris*, No. 3:18-CV-30-DMB-JMV, 2019 WL 1601367, at *3 (N.D. Miss. Apr. 15, 2019). Had Ladd timely sought to intervene when he learned of his purported interest in the underlying lawsuit, the parties could have been afforded the opportunity to litigate this case without another continuance should the court had found the motion meritorious, which will be necessary if intervention is allowed.

### B. Granting Ladd's intervention will significantly prejudice existing parties

Beckett and Plaintiffs will be significantly prejudiced by Ladd's untimely and improper

intervention. Indeed, "failure to apply for intervention as soon as it actually knew or reasonably should have known of its interest in the case" prejudices existing litigants. *WRR Indus., Inc. v. Prologis,* No. 3:04-CV-2544-L, 2006 WL 247894, at *10 (N.D. Tex. Feb. 2, 2006).

First, if Ladd's intervention motion is granted, he contemplates filing a Motion to Transfer the Wisconsin Action to the Northern District of Texas and then seeking consolidation with this matter. *Wisconsin Action*, Case No. 23-cv-00754, Dkt. 9, § B(7)(a). This motion practice alone will take significant time and prevent this matter from moving forward under the current scheduling order, including the March 12, 2024 discovery and motions deadline as well as June 10, 2024 trial date. *See* Dkt. 41.

Similarly, the addition of Ladd's crossclaim and if consolidated, Plaintiffs' claims against Ladd, will require a second continuance of this lawsuit's deadlines in order to allow the parties sufficient opportunity to pursue motion practice regarding the new claims and conduct discovery in order to protect their rights and defend against both Plaintiffs' and Ladd's claims. *Cox*, 2019 WL 16013637 at *3 (reopening discovery is a consideration in prejudice to existing parties). Indeed, the Wisconsin Action is in its infancy, and if consolidated, would require full discovery.

Specifically, as for Beckett, necessary discovery would include topics such as Ladd's purchase of the Curry Card, Ladd's alleged reliance on Beckett's 2016 grading, Ladd's decision to auction the Curry Card, Ladd's treatment of the Curry Card while in his possession, the Curry Card's chain of custody, Ladd's damages (or lack thereof), and so on. The parties will also be entitled to depositions of experts as well as Ladd, Plaintiffs', and Beckett's knowledge parties—the majority of which will be completed by the conclusion of this briefing.[3] Ladd's intervention

---

[3] Plaintiffs and Beckett scheduled nine depositions in this matter from February 2, 2024 to March 6, 2024. As of the date of this filing, four of these depositions have been conducted.

will cause this case to be continued and delayed by many months and the parties will incur substantial additional costs and legal fees if intervention is allowed.

### C. Denial of Ladd's intervention will not result in prejudice

Ladd will not be prejudiced by the denial of his intervention motion. If Ladd had a concrete injury against Beckett, which he does not, he could file his own lawsuit against Beckett, which would not be at the advanced posture of this matter. Moreover, the Wisconsin Action is still in its infancy, with the deadline to add new parties not until March 18, 2024. *Wisconsin Action*, Case No. 23-cv-00754, Dkt. 9, § A. Consequently, the denial of Ladd's intervention does not dispose of his ability to seek redress from Beckett, especially at a more appropriate time when he may have concrete damages, if any.

Ladd's argument that he will incur "additional costs" if intervention is not allowed is unavailing. *See* Dkt. 43, p. 5. Ladd fails to explain why, in the absence of intervention, he would incur additional costs by filing a separate lawsuit or by naming Beckett as a third-party defendant in the Wisconsin Action. *See id.* In contrast, Ladd represented to the Wisconsin Court that if intervention is granted, he plans to spend the additional time and money on transferring the Wisconsin Action to Texas and seeking consolidation. *Wisconsin Action*, Case No. 23-cv-00754, Dkt. 9, § B(7)(a).

### D. Unusual circumstances weigh against intervention

As set forth above, Ladd lacks Article III standing to even bring his purported crossclaim against Beckett. If intervention is allowed, Beckett would not only be forced to seek a second continuance of the Amended Scheduling Order but would require additional time to file a motion to dismiss Ladd's proposed counterclaim, which must then be fully briefed and seek discovery and expert opinions from Ladd regarding these new claims against Beckett.

Consequently, in considering all the circumstances, the factors indicate that Ladd's Motion to Intervene is not timely and should be denied.

## IV. The Court should deny Ladd's Motion to Intervene as a matter of right

In addition to Ladd's failure to meet the timeliness requirements under Fed. R. Civ. P. 24(a), which alone would require denial of the intervention motion, Ladd likewise fails to meet the prerequisites that he have a protectable interest in the Curry Card, disposition of this matter would impair his ability to protect his purported interest in the Curry Card, and Ladd's purported interest is inadequately represented by the current parties to this litigation. *See St. Bernard*, 914 F.3d at 974.

### A. Ladd does not have a protectable interest in the underlying lawsuit

Ladd's only alleged interest in this matter is the economic and precedential effect of its outcome, not the actual property that is the subject of the case. This alleged interest (even if true) is insufficient to support intervention. Though there is no clear definition of the "interest" that is required for intervention of right, an intervenor must show a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Hou.*, 78 F.3d 983, 995 (5th Cir. 1996). This is a narrow reading of the term "interest." *New Orleans Pub. Serv., Inc.*, 732 F.2d at 463.

> [T]he inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way. So, an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other.

*Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015) (alteration added, emphasis original, footnote omitted).

Ladd admits his interest in this matter is in the outcome—*i.e.* that he is entitled to recover non-existent damages from his purchase of the Curry Card and future undetermined damages that

11

Ladd may be found liable to Plaintiffs. Dkt. 43, pp. 6-7. These are both economic and precedential interests in the outcome of this matter. Indeed, whether Ladd even has damages against Beckett is contingent upon the outcome of the Wisconsin Action as one step, as well as whether Beckett is found liable in the this matter, as another step. *See New Orleans Pub. Serv., Inc.*, 732 F.2d at 464 ("economic interest alone insufficient").

Moreover, Ladd's purported "interest" is merely the precedential effect of the outcome because a determination that Beckett owed a duty of care to any person who possibly could purchase the Curry Card or that Beckett did not make a negligent misrepresentation regarding the Curry Card can be used in support of the claims and defenses at stake in the Wisconsin Action. *See Texas*, 805 F.3d at 657. Conversely, if Beckett is liable to Plaintiffs, then Beckett may be liable to Ladd on the same theories Ladd asserts against Beckett.

Because Ladd's purported interest is only in the outcome of this litigation and is solely economic and precedential, he does not have any legally protectable interests sufficient for intervention as a matter of right. *Id.*

### B. Disposition of this matter will not impair Ladd's ability to protect his purported interest

The Fifth Circuit has routinely held that a party cannot intervene as of right if the intervenor has other remedies available, like simply filing a different lawsuit. *United States v. Louisiana*, 90 F.R.D. 358, 362-63 (E.D. La. 1981), *affirmed* 669 F.2d 314 (5th Cir. 1982) (denying motion to intervene based in part on proposed intervenors' acknowledgement that they would not be left without a remedy should the court deny their petition). Rather, an intervenor must show, for example, that his interests would be impaired by the *stare decisis* effect of the district court's judgment. *See, e.g., Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2009 WL 6496504, at *9 (S.D. Tex. Jan. 26, 2009) ("Where an adverse resolution on an issue would have a precedential effect,

an adverse decision would impair the litigants' ability to protect their interest.").

Regardless of the disposition of this matter, Ladd's purported interest—his alleged claims against Beckett—are contingent on the outcome of the Wisconsin Action—*i.e.* whether Ladd is held liable to Plaintiffs and can seek redress from Beckett. Consequently, disposition of this matter will in no way impair Ladd's ability to pursue his purported interest, which is speculative at best.

### C. Ladd's "interests" are adequately represented by the parties in this litigation

Under controlling Fifth Circuit law, when, as here, "the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Haspel & Davis Milling & Planting Co., Ltd. v. Bd. of Levee Comm'rs of Orleans Levee Dist.*, 493 F. 3d 570, 578-79 (5th Cir. 2007) (internal quotation marks omitted). The burden is on Ladd to establish inadequate representation. *Texas*, 805 F.3d at 661.

In this matter, Plaintiffs allege identical facts and a single, identical cause of action against Beckett as Ladd asserts in his proposed crossclaim. In fact, it appears Ladd copied and pasted most of Plaintiffs' Amended Complaint into his proposed crossclaim. Ladd and Plaintiffs thus have the same ultimate objective—holding Beckett liable for alleged negligent misrepresentation in grading the Curry Card as a 9.5 "Gem Mint" in 2016.

Ladd's conclusory argument that he and Plaintiffs have adverse interests because Plaintiffs are also seeking damages against Ladd in the Wisconsin Action and thus would have "little incentive" to "vigorously pursue" their claim against Beckett is an unavailing assumption that fails to satisfy Ladd's burden. Plaintiffs are actively pursuing their claim against Beckett and have aligned interests with Ladd to hold Beckett liable for their alleged damages from the 2016 grading of the Curry Card. Indeed, "[i]n order to show adversity of interest, an intervenor must

demonstrate its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. Ladd fails to show his purported interests diverge from Plaintiffs in a manner germane to the case. Instead, Ladd asserts nearly an identical claim and seeks identical relief to Plaintiffs. *See id.* Consequently, Ladd's failure to show that his purported interest is not adequately represented (because they are) by the parties already part of this litigation and the intervention motion should be denied.

## V.     Ladd's application for permissive intervention should be denied

For permissive intervention to be proper, Ladd's application for intervention must be timely, Ladd's claim must share a common question of law or of fact with the underlying lawsuit, and Ladd must show that his intervention will not unduly delay or prejudice the adjudication of the rights of the parties to the underlying lawsuit. *Clements*, 884 F.2d at 189 n.2. However, the Fifth Circuit has consistently held that permissive intervention "is wholly discretionary with the [district] court…even though there is a common question of fact or law, or the requirements of Fed. R. Civ. P. 24(b) are otherwise satisfied." *New Orleans Pub. Serv.*, 732 F.2d at 470-71. "In acting on a request for permissive intervention, it is proper to consider, among other things, whether the intervenors' interests are adequately represented by other parties, . . . whether they will significantly contribute to the full development of the underlying factual issues in the suit . . . the nature and extent of intervenors' interest, . . . and their standing to raise relevant legal issues." *New Orleans Pub. Serv.*, 732 F.2d at 472 & n.40 (citation and quotation marks omitted).

Here, the Court should deny permissive intervention for the same reasons that it should deny intervention as a matter of right. Ladd fails to show that he would contribute anything to this matter beyond causing significant delays and backtracking through this litigation's progress. Ladd's claim is identical to Plaintiffs and discovery will be effectively closed by the time the Court

14

rules on Ladd's intervention. Consequently, Ladd's untimely request for permissive intervention should be denied.

## CONCLUSION

For all the foregoing reasons, Beckett respectfully requests that the Court deny Ladd's Motion to Intervene and grant Beckett such other and further relief to which it may be entitled.

Dated: February 13, 2024

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas State Bar No. 24028045
Kendal B. Reed
Texas State Bar No. 24048755
Abigail R.S. Campbell
Texas State Bar No. 24098959
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*Attorneys for Defendant*
*Beckett Collectibles, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2024, the foregoing was electronically submitted to the clerk of court for the United States District Court for the Northern District of Texas using the Court's electronic filing system and that all counsel of record have been served electronically or as authorized by the Federal Rules of Civil Procedure.

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell