IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ALT SPORTS CARD FUND GP LLC,** as the General Partner of Alt Sports Card Fund, L.P.; and **ALT PLATFORM, INC.,** | § § § § | |
| Plaintiffs, | § § | Case No. 3:22-CV-02867-N |
| v. | § § | |
| **BECKETT COLLECTIBLES, LLC,** | § § § | |
| Defendant. | § | |

**PROPOSED INTERVENOR'S REPLY BRIEF
IN SUPPORT OF MOTION TO INTERVENE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Movant Christopher Ladd ("Proposed Intervenor") to file this Reply Brief in Support of Motion to Intervene and for such would show the Honorable Court as follows:

**I.   The Harm Proposed Intervenor Has Suffered Proximately Caused by Proposed Intervenor's Reliance on Beckett's Negligent Misrepresentation Provides Standing to Assert its Claims in the Complaint in Intervention.**

Contrary to Defendant Beckett Collectibles, LLC's ("Beckett's") arguments advanced in its opposition to the pending Motion to Intervene, Proposed Intervenor possesses standing under Article III to assert its claims against Beckett in the Complaint in Intervention.

To establish standing to maintain claims, a party must demonstrate: (1) an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) that the injury is "fairly traceable to the challenged action;" and (3) that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The Supreme Court clarified that an injury in fact must be

concrete, real, and not abstract. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Elaborating that "there is a significant difference between (i) an actual harm that has occurred but is not readily quantifiable . . . and (ii) a mere risk of future harm. *Id.* at 2211 (noting that a mere risk of harm does not alone suffice to demonstrate Article III standing for damages). In order to have standing, a party must demonstrate that the "risk of future harm materialized." *Id.*

The risk of future harm to Proposed Intervenor by his reliance on Beckett's negligent misrepresentation has indeed materialized. As set forth in the Motion and brief in support, Proposed Intervenor has become embroiled in litigation with Plaintiff in the Western District of Wisconsin predicated entirely on Proposed Intervenor's sale of the Curry Card being in the condition negligently misrepresented by Beckett. In reconciling *TransUnion* with previous case law, at least one district court has recognized that getting sued would amount to realizing actual harm sufficient to confer standing. *Dodson v. ExamWorks LLC*, No. 1:23-CV-00401-JRN, 2024 U.S. Dist. LEXIS 21203, at *10 (W.D. Tex. 2024) ("The problem for [Intervenor] is that her alleged injuries—future civil suit or professional reprimand—are too speculative to confer standing. There is no allegation that [anyone is] imminently prepared to sue or, if they did, that they would sue [Intervenor]"). Further, Beckett's opposition equates a lack of alleged direct damages (i.e., that Proposed Intervenor was able to wrongfully recognize a profit on the sale of the Curry Card based on the misgrading) with lack of any recoverable damages. Indeed, the costs of answering and litigating the suit in Wisconsin, together with any resulting award, constitute consequential damages Proposed Intervenor is entitled to recover if successful on his claims. Furthermore, Proposed Intervenor has suffered damages to his reputation in the card and memorabilia collecting communities that he has spent decades curating as one of honesty and integrity, as well as the looming liability of a $350,000.00 judgment in a case that has already been filed by a party to this

case. Proposed Intervenor's harms are "concrete and particularized" in the instant suit because of actions by both Beckett and Plaintiff, and therefore vest standing under Article III.

Beckett has placed a great deal of reliance upon *TransUnion* to defeat the Motion to Intervene. There, TransUnion allegedly failed to maintain credit files which caused approximately 8,185 individuals to be labeled as criminals. *TransUnion LLC*, 141 S. Ct. 2190. 1,853 individuals had these inaccurate and potentially damaging credit reports disseminated to third parties, while the remaining 6,332 individuals' reports were not disclosed. *Id.* The Supreme Court ultimately reversed the Ninth Circuit's prior ruling that all 8,815 individuals had suffered a concrete harm, instead finding only the 1,853 individuals whose damaging reports had been provided to third parties suffered an injury sufficient to establish Article III standing. *Id.* at 2209. Beckett likens Proposed Intervenor to the 6,332 individuals whose inaccurate credit reports were never disseminated and thus suffered only a "risk of future harm." *Id.* at 2210-11. However, Proposed Intervenor is more akin to the 1,853 class members who were demonstrated to have suffered a realized injury owing to the litigation brought by Plaintiff in Wisconsin resulting directly from Proposed Intervenor's reasonable reliance on Beckett's negligent misrepresentations. Proposed Intervenor is no longer merely under threat of potential harm, such harm has materialized and brought with it costs of litigation and alleged liability to Plaintiff.

Beckett did not address the second and third elements of standing as they pertain to Proposed Intervenor because if Proposed Intervenor meets the first element, the other two must follow under the facts presented by the Motion and proposed Complaint in Intervention. The injuries Proposed Intervenor allege arise solely from his reliance on Beckett's negligent misrepresentation when it listed the Curry Card for sale, and award to Proposed Intervenor of his direct and consequential damages on his claim against Beckett through a favorable decision by

this Court would redress Proposed Intervenor's harms. Accordingly, Proposed Intervenor has standing to assert the claims he seeks to bring through intervention in this suit.

## II. The Motion to Intervene is Not Untimely

Timeliness is determined by weighing four factors: (1) the length of time the movant waited to file; (2) the prejudice to the existing parties from any delay; (3) the prejudice to the movant if the intervention is denied; and (4) any unusual circumstances. *U.S. ex rel. Hernandez v. Team Finance, LLC*, 80 F.4th 571, 578 (5th Cir. 2023) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)). The second factor evaluating prejudice to the existing parties as a result of the would-be intervenor's delay is the most important in determining timeliness. *Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970).

### A. Length of Time

Beckett alleges Proposed Intervenor knew or should have known of his interest in this case on September 8, 2023 when Plaintiff sent a demand letter alleging that Proposed Intervenor had misrepresented the condition of the Curry Card. However, Beckett readily admits that Proposed Intervenor was not formally brought into a legal proceeding by Plaintiff until nearly two months later when he was served on October 27, 2023 in the Wisconsin litigation. Meanwhile, Proposed Intervenor learned of this litigation for the first time only after he was drawn in to the Wisconsin litigation.

To harken back to Beckett's standing argument, Proposed Intervenor did not have standing prior to October 27, 2023 to bring its claims against Beckett prior to that date as his injuries to that point were merely the risk of harm and thus the harm was speculative. It was not until Plaintiff sued Proposed Intervenor that his injuries shifted from being speculative to being concrete and

particularized. Accordingly, Proposed Intervenor had no interest in this case until he had standing to assert such interest, and could not have intervened in that period in any event. *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) ("In the absence of a live controversy in a pending case, an intervenor would need standing to intervene."). Proposed Intervenor thus (arguably) knew or should have known of his interest in this case for no more than just shy of three months prior to the date he filed his Motion to Intervene in the instant suit as it was not until such time that he could have intervened.

Yet "[i]t is well established that the length of time [a movant waited] to file [a motion to intervene] is measured from the moment that the prospective intervenor knew that his interests would 'no longer be protected.'" *U.S. ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977)). This concept implicitly recognizes that knowledge and awareness of the pending action in which a party seeks to intervene is a necessary component to determining timeliness of filing, not merely knowledge that a would-be intervenor may have claims to assert against a party to the pending action. *See Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) ("timeliness clock" runs from when the applicant knew or reasonably should have known of his interest in the litigation).

Here, Proposed Intervenor learned of this litigation for the first time when his counsel in the Wisconsin litigation discovered the action. This is not a case of considerable publicity or notoriety such that Proposed Intervenor should have been aware of its existence prior to his actual discovery. The Motion to Intervene was then made within weeks of such discovery, owing to time needed to investigate the proceedings, coordinate with potential insurance coverage, locate and secure counsel in Texas, bring such counsel up to speed on the nature of the dispute, and prepare the necessary motion, complaint and briefing to assert the right to intervene.

Both the Fifth Circuit and this Court have held that "[p]arties intervening five months after learning of their interest have been deemed timely." *Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2022 U.S. Dist. LEXIS 59549, at *12 (N.D. Tex. 2022). Here, Proposed Intervenor filed his Motion to Intervene within weeks of learning of this litigation, and within three months of having any right to do so even had he known of these proceedings. Accordingly, the first factor clearly weighs in favor of timeliness.

B. **Prejudice to Parties as a Result of the Delay**

The second and most important factor looks to the prejudice to the active parties caused by the intervenor's delay in seeking to intervene, *not* the prejudice resulting from intervention. *Ross v. Marshall*, 426 F.3d 745, 755-56 (5th Cir. 2005). "Any potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely." *Poynor v. Chesapeake Energy Ltd. P'ship (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, 248 (5th Cir. 2009). Merely "complicat[ing] a simple case" or necessitating further litigation to address the claims brought in intervention does not amount to prejudice as a result of intervenor's delay. *Labrew v. A&K Truckline, Inc.*, No. 2:23-CV-079-Z-BR, 2023 U.S. Dist. LEXIS 201420, *9 (N.D. Tex. 2023).

As set forth above, the delay between when Proposed Intervenor learned of this suit and filed his Motion to Intervene was minimal. Beckett does not raise any prejudice which would be caused by such delay by reference to events which occurred in this case during that period (and indeed, Beckett and Plaintiff entered a joint request to modify the scheduling order and extend deadlines in December 2023 indicating that the parties were already addressing needed delays to permit full and fair litigation of their claims). Rather, the prejudice Beckett addresses is prejudice

to Beckett, Plaintiff and the current scheduling order if the Motion were granted for any reason at this juncture, not prejudice caused by Proposed Intervenor's delay in filing to intervene. However, as this Court reiterated three months ago, prejudice to the parties is not what the second timeliness factor evaluates; the Court must instead look to the prejudice caused by the proposed intervenor's delay, to which the possibility of prejudice is considerably lower. *Labrew*, 2023 U.S. Dist. LEXIS 201420 at *9.

Beckett's pointing to nine scheduled depositions from February 2, 2024, through March 6, 2024 as proof that intervention would be prejudicial further misses the mark. Those depositions were scheduled to take place *after* Proposed Intervenor filed his Motion to Intervene. Accordingly that cannot be prejudice to either Beckett or Plaintiff caused by any delay in filing the Motion as the Motion had already been filed. Beckett's additional arguments are similarly unavailing: the looming discovery deadline, the potential need to adjust the timeline of this case, and other matters Beckett argues as prejudice are all instances of prejudice resulting from intervention, not prejudice resulting from Proposed Intervenor's reasonable delay in filing the Motion from the time he learned of this action and his interest herein. Further, the Fifth Circuit has generally identified the entry of judgment to be the crucial juncture disfavoring timeliness, not the proposed schedule of depositions. *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) (examining authority and recognizing "that these motions [to intervene] were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation.")

Accordingly, as the case remains at least four months out from trial and any subsequent judgment, Proposed Intervenor's delay in filing its motion was minimal, and Beckett has failed to

show any prejudice caused by such delay, the second – and most important – factor weighs in favor of timeliness.

      C.      **Proposed Intervenor Will be Prejudiced if Intervention is Denied**

Proposed Intervenor holds the unique position in this lawsuit as a respondent answering to one party (Plaintiff) and claimant to the other (Beckett). Should Proposed Intervenor not be permitted to intervene in this proceeding he stands to litigate the same issues present in this case between the same parties in separate and duplicative actions spanning two different venues owing to the locations of the parties. The expense in time and resources not only for Proposed Intervenor, but for all parties and the court system, to litigate and adjudicate such duplicative and multiplicative suits to address the claims and facts already before the Court in this action are not inconsiderable. While Beckett cites "substantial additional costs and legal fees" as justification for a finding of prejudice on their part if intervention is permitted, it appears to scoff at Proposed Intervenor's suggestion that proceeding with two separate suits will undoubtedly incur more costs than one. "[I]n the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson*, 578 U.S. 266, 272, 136 S. Ct. 1412, 1418 (2016).

This case is centered around the care, custody, and control of the 2009 Steph Curry Rookie Card. Neither Beckett nor Alt assert that more than four individuals/entities have ever handled the "raw" Curry Card, the original owner who pulled the card from a sealed trading card pack, Beckett themselves, Alt after the sealed slab bearing Beckett's grade (mis)representation was broken open, and finally PSA after the recently opened "raw" card was sent to them for grading. Ladd never handled the "raw" card. If Ladd is not granted intervention in this suit, he alone suffers a lack of representation from any present party regarding his rights and interests pertaining to the Curry Card.

### D. Unusual Circumstances Favor Intervention

The existence of another lawsuit weighs in favor of timely intervention. *Doe #1 v. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001). Plaintiff was aware of the proceeding against Beckett in Texas for over a year before filing suit against Proposed Intervenor individually in Wisconsin. Plaintiff could, and should, have brought Proposed Intervenor into this suit as a defendant long before filing suit against Proposed Intervenor, but chose to attempt to keep their eggs in two baskets. Plaintiff seeks the entirety of their claimed damages in excess of $350,000.00 against Beckett, but also asserts the exact same amount against Proposed Intervenor in Wisconsin. To allow the two proceedings to continue individually serves only to create uncertainty and confusion regarding the amount in controversy, apportionment of the judgment, and would potentially permit Plaintiff a double-recovery on claims which – if proved against both Beckett and Proposed Intervenor – should be limited to a joint and several recovery. As permitting intervention in this suit would both reduce the need for duplicative litigation of the same facts in different venues among the same three parties and remove the potential of a double-recovery by consolidating actions, this factor weighs clearly in favor of timeliness.

### III. Proposed Intervenor Should Be Permitted to Intervene in the Interest of Judicial Economy and Equity.

The bases by which the Court should grant the Motion to Intervene – both as a matter of right under Rule 24(a) or permissively under Rule 24(b)(1)(B) – are set forth in Proposed Intervenor's brief in support thereof and will not be repeated here.

The motion as to both were timely as set forth above. However Beckett's arguments against Proposed Intervenor's intervention as a matter of right and permissively overlook two important considerations.

The first is judicial economy. Simply because a would-be intervenor *could* initiate an independent lawsuit to protect its interest affected by a suit in which it seeks to intervene, forcing a party to file a subsequent lawsuit with respect to an issue related to one already before the Court would be an undisputable waste of judicial resources. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, No. 04-997, 2004 U.S. Dist. LEXIS 18277, at *8 (E.D. La. 2004). By its claims against Beckett – which Beckett concedes are nearly identical to those asserted by Plaintiff in both factual basis and law – Proposed Intervenor seeks to reduce the number of duplicative suits rather than add to their number by causing the same battle to be fought in three different actions. If intervention is denied, the same issues will necessarily have to be addressed in this suit, the Wisconsin action, and a separate suit by Proposed Intervenor against Beckett on the same facts.

The second is equity. This factor dovetails with Proposed Intervenor's interest being inadequately represented by the parties in this suit – the second factor for establishing intervention as a matter of right – as well as the lack of prejudice to the parties if intervention is permitted.

Specifically, Proposed Intervenor is under attack by Plaintiff in the Wisconsin suit for the same alleged facts that underpin both parties' claims against Beckett. If Proposed Intervenor is not permitted to intervene in this suit then it faces a real risk of Plaintiff pursuing or consummating a settlement with Beckett which would serve to inflate its recoverable damages against Proposed Intervenor, for which it would have no mechanism to apportion the liability between the alleged joint tortfeasors – Proposed Intervenor and Beckett – who allegedly caused Plaintiff's economic losses in connection with the Curry Card. Conversely, Plaintiff should not be permitted a potential double-recovery in the form of multiple judgments for the same set of damages in the event that it prevails on its claims.

While the parties certainly have an interest in speedy resolution of this litigation, it cannot be at the expense of justice. Permitting the requested intervention would potentially cost the parties an extension of a discovery deadline and a modest continuance of trial to address Proposed Intervenor's few issues which are not already raised by Plaintiff's nearly identical claims. Meanwhile, denying the Motion would needlessly increase the burden on the federal docket and the parties, run the risk of injustice by permitting a potential double-recovery, and fail to permit a trier of fact to fairly apportion liability alleged by Plaintiff among the three parties in connection with Plaintiff's purchase of the Curry Card.

## CONCLUSION

For the foregoing reasons and as set forth in the Motion to Intervene and brief in support, Christopher Ladd respectfully requests that the Court grant the Motion to Intervene and afford Proposed Intervenor such other and further relief as justice demands.

Respectfully submitted,

KESSLER COLLINS, P.C.

By: */s/ Lisa C. Tulk*
LISA C. TULK
Texas Bar No. 24047004
ltulk@kesslercollins.com
ANTHONY J. BARBIERI
Texas Bar No. 24025235
ajb@kesslercollins.com

500 North Akard Street, Suite 3700
Dallas, TX 75201
(214) 379-0722 (phone)
(214) 373-4714 (fax)

**ATTORNEYS FOR CHRISTOPHER LADD**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on February 27, 2024, a true and correct copy of the foregoing was served on all counsel of record by electronic submission through the automated ECF system for the U.S. District Court of the Northern District of Texas.

                */s/ Lisa C. Tulk*
                LISA C. TULK