# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>BECKETT COLLECTIBLES, LLC,<br><br>    Defendant. | No. 3:22-cv-02867-N |

### APPENDIX IN SUPPORT OF BECKETT COLLECTIBLES, LLC'S BRIEF IN SUPPORT OF MOTION TO COMPEL

| Exhibit No. | Document | Appendix Range |
|---|---|---|
| Exhibit 1 | Defendant's First Request for Production to Plaintiffs; dated 04/14/23 | 1-12 |
| Exhibit 2 | Defendant's First Set of Interrogatories to Plaintiffs; dated 04/14/23 | 13-22 |
| Exhibit 3 | Defendant's Second Request for Production to Plaintiffs; dated 11/16/23 | 23-30 |
| Exhibit 4 | Defendant's Second Set of Interrogatories to Plaintiffs; dated 11/16/23 | 31-39 |
| Exhibit 5 | Campbell letter to Hammervold; dated 11/16/23 | 40-42 |
| Exhibit 6 | Campbell letter to Hammervold; dated 11/20/23 | 43-45 |
| Exhibit 7 | Campbell letter to Hammervold; dated 12/20/23 | 46-48 |
| Exhibit 8 | Campbell letter to Hammervold; dated 01/16/24 | 49-52 |
| Exhibit 9 | Plaintiffs' Response to Defendant's 1st Request for Production; dated 07/13/23 | 53-62 |
| Exhibit 10 | Plaintiffs' Response to Defendant's First Set of Interrogatories; dated 07/13/23 | 63-73 |
| Exhibit 11 | Plaintiffs' Responses to Defendant 2nd Request for Production;  dated 01/05/24 | 74-84 |

| Exhibit 12 | Plaintiffs' Responses to Defendant's Second Set of Interrogatories; dated 01/05/24 | 85-94 |
|---|---|---|
| Exhibit 13 | Hammervold letter to Campbell; dated 01/19/24 | 95-98 |
| Exhibit 14 | Excerpts from Deposition of Darius Sadeghi | 99-113 |
| Exhibit 15 | Excerpts from Deposition of Jonathan Euston | 114-125 |
| Exhibit 16 | Excerpts from Deposition of Matthew Levine | 126-135 |

Dated: March 12, 2024

Respectfully submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas State Bar No. 24028045
Kendal B. Reed
Texas State Bar No. 24048755
Abigail R.S. Campbell
Texas State Bar No. 24098959
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*Attorneys for Defendant*
*Beckett Collectibles, LLC*

27945421v1 92001.031.00

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> BECKETT COLLECTIBLES, LLC, <br><br>    Defendant. | No. 3:22-cv-02867-N |

<u>**DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFFS**</u>

**To:   Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc., by and through their attorney of record, Mark Hammervold, Hammervold Law, 155 S. Lawndale Ave., Elmhurst, IL 60126, mark@hammervoldlaw.com.**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Beckett Collectibles, LLC ("Beckett") hereby requests that Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. produce the documents described below that are in their possession, custody, or control. Plaintiffs should send their written responses and document production within 30 days of the date these requests were served to the offices of Condon, Tobin, Sladek, Thornton, Nerenberg, PLLC, 8080 Park Lane, Suite 700, Dallas, Texas 75231, or electronically to atobin@condontobin.com, and tourso@condontobin.com.

Dated: April 14, 2023

Respectfully Submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin
State Bar No. 24028045
atobin@condontobin.com
Taryn E. Ourso
State Bar No. 24103715
tourso@condontobin.com
8080 Park Lane, Suite 700
Dallas, Texas 75231
*Telephone*: (214) 265-3800
*Facsimile*: (214) 691-6311

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant's First Request for Production to Plaintiffs has been served upon the following counsel of record on April 14, 2023:

      Mark Hammervold, Esq.
      Hammervold Law
      155 S. Lawndale Ave.
      Elmhurst, IL 60126
      mark@hammervoldlaw.com

                        */s/ Aaron Z. Tobin*
                        Aaron Z. Tobin

## DEFINITIONS & INSTRUCTIONS

The following definitions apply to each request set forth herein.

1.    "You," "Your," "Plaintiffs," or "Alt" means Plaintiff Alt Sports Card Fund GP LLC, as the General Partner of Alts Sports Card Fund, L.P., Alt Fund I, LP, and Plaintiff Alt Platform, Inc., and their employees, agents, affiliates, attorneys, and/or representatives.

2.    "Beckett" means Defendant Beckett Collectibles, LLC and its employees, agents, affiliates, attorneys, and/or representatives.

3.    "Communication" means the transmission of information or data in any form (including but not limited to written, oral, or electronic transmissions), such as telephone conferences, voicemails, text messages, messages in applications (including but not limited to SMS, Signal, Messenger, WhatsApp, Telegram, Snapchat, Gmail, Outlook, Zoom, Slack, Microsoft Teams, Google Hangouts, and Trello), correspondence, letters, emails, memoranda, and other written forms of exchange, as well as all verbal conversations by whatever means, including all forms and manifestations of electronically stored and/or retrieved electronic information, in all electronic media (including but not limited to hard drives, thumb drives, computers, phones, Internet of Things (IoT) devices, the "cloud," disks, tapes, servers, software, or hardware).

4.    "Concerning" means referring to, describing, evidencing, or constituting.

5.    "Curry Card" means the 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 card at issue in this case. (*See* Plaintiffs' Amended Complaint, Dkt. 83.)

6.    "Document" and "documents" are synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Federal Rule of Civil Procedure 34(a). Documents may include, but are not limited to, hard copy documents, text messages, communications conducted in ephemeral messaging applications (*e.g.*, WhatsApp, Snapchat, etc.), direct messages exchanged on social media websites or apps such as, but not limited to, Twitter, TikTok, Instagram, Facebook, and LinkedIn, communications conducted in workplace collaboration tools (*e.g.*, Workspace, Slack, Teams, etc.), emails, voicemails, files on Plaintiffs' computers, cloud storage accounts, phones, tablets, USB drives, and/or other devices such as, but not limited to, photographs, videos, word processing documents, PDFs, spreadsheets, call logs, and databases.

7.    "Identify", "identity", or "identification" means:

a)    when used in reference to a natural person, means that person's full name, last known address, home and business telephone numbers, and present occupation or business affiliation;

b)    when used in reference to a person other than a natural person, means that person's full name, a description of the nature of the person (that is, whether it is a corporation, partnership, etc. under the definition of person below), and the person's last known address, telephone number and principal place of business;

c)    when used in reference to a document, requires you to state the date, the author (or signor), the addressee, the identity of the document's present

custodian, and the type of document (*e.g.*, letter, e-mail, memorandum, telegram, or chart), or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the request.

8.     "Person" or "persons" shall mean individuals and entities, including, but not limited to, sole proprietorships, partnerships, joint ventures, estates, trusts, associations, companies, or corporations. When the referenced person is an entity of any type, the term "person" or "persons" includes all present or former officers, directors, employees, agents, shareholders, trustees, beneficiaries or other representatives.

9.     "Plaintiffs' Amended Complaint" means the Amended Complaint filed by Plaintiffs in this case on March 13, 2023. (Dkt. 14.)

10.    "PSA" means Professional Sports Authenticator, a division of Collectors Universe, Inc., and its employees, agents, affiliates, attorneys, and/or representatives.

11.    These requests are to be treated as continuing. If all the information requested is not available, you must answer each request as fully as possible and furnish additional information and documentation when it becomes available. If additional information or documentation is discovered between the time of your initial responses and trial, these requests are directed to the discovery of those materials.

12.    If any document requested was, but is no longer, in your custody, control or possession, state with particularity the disposition made of each such document, including the date of, method of, and reason(s) for such disposition, and the name and address, if known, of any person who has seen the document or who now has custody, control or possession thereof.

13.     If any information is withheld under a claim of privilege or is not produced for whatever reason, you must (i) state with specificity the claim of privilege or other reason used to withhold the document from production, and (ii) identify each document by date, author, and subject matter, without disclosing its contents, in a manner sufficient to allow it to be described to the Court for a ruling on the privilege or other reason stated. Documents withheld based on a claim of privilege or work product are subject to the provisions of Federal Rule of Civil Procedure 26(b)(5).

14.     If a partial or incomplete answer or production is provided, Plaintiffs must state the reason that the answer or production is partial or incomplete.

15.     These requests are subject to Federal Rules of Civil Procedure 26(e) (on supplementation) and 34(b)(2)(E) (on form of production), and the ESI and protective orders entered in this case.

16.     Unless otherwise stated, all requested documents cover the period from October 1, 2016, to March 13, 2023.

## FIRST REQUEST FOR PRODUCTION

1.     All partnership agreements of Alt Fund I, LP and Alt Sports Card Fund, L.P.

**RESPONSE:**

2.     All formation documents of Alt Fund I, LP and Alt Sports Card Fund, L.P.

**RESPONSE:**

3.     All merger and/or acquisition agreements involving Alt Fund I, LP and Alt Sports Card Fund, L.P.

**RESPONSE:**

4.      All documents and communications concerning the October 2016 grading of the Curry Card.

**RESPONSE:**

5.      All pictures, images, and videos of the Curry Card.

**RESPONSE:**

6.      All documents and communications concerning the query performed on or around October 31, 2020 (as referenced in Paragraph 54 of Plaintiffs' Amended Complaint).

**RESPONSE:**

7.      Documents sufficient to show the complete chain of custody of the Curry Card.

**RESPONSE:**

8.      Documents sufficient to show the complete chain of ownership of the Curry Card.

**RESPONSE:**

9.      Documents sufficient to identify the person(s) that purchased the Curry Card for $168,000 (referenced in Paragraph 54 of Plaintiffs' Complaint).

**RESPONSE:**

10.      All documents and communications concerning the purchase of the Curry Card for $168,000 (referenced in Paragraph 54 of Plaintiffs' Amended Complaint), including but not limited to wire transfer slips, checks, invoices, and receipts.

**RESPONSE:**

11.    All documents and communications reflecting Alt's valuation(s) of the Curry Card at any time.

**RESPONSE:**

12.    Documents sufficient to show each and every person who had access to the Curry Card from October 2016 through March 13, 2023.

**RESPONSE:**

13.    All documents and communications concerning Alt's removal of the Curry Card from its slab on or around August 30, 2022.

**RESPONSE:**

14.    All documents and communications concerning the transportation of the Curry Card from Alt to PSA on or around August 30, 2022.

**RESPONSE:**

15.    All documents and communications concerning PSA's grading of the Curry Card on or around September 1, 2022.

**RESPONSE:**

16.    All documents and communications concerning PSA's transportation of the Curry Card to Alt after PSA's September 2022 grading of the Curry Card.

**RESPONSE:**

17.    All documents and communications concerning Beckett's evaluation of the card in September 2022.

**RESPONSE:**

18.    Documents sufficient to identify the person that submitted the Curry Card to Beckett for grading in October 2016.

**RESPONSE:**

19.    All communications and correspondence with Beckett concerning the Curry Card.

**RESPONSE:**

20.    All communications and correspondence with PSA concerning the Curry Card.

**RESPONSE:**

21.    All communications and correspondence with any person concerning the Curry Card.

**RESPONSE:**

22.    All documents identified in your initial disclosures.

**RESPONSE:**

23.    All documents identified in your responses to Interrogatories 1-7.

**RESPONSE:**

24.    All documents you intend to use as exhibits at trial.

**RESPONSE:**

25.    All affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person you intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit.

**REPSONSE:**

---

26.    All affidavits, sworn statements, notes, and other documents (including drafts thereof) concerning the Curry Card.

**RESPONSE:**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC., <br><br>     Plaintiffs, <br><br> v. <br><br> BECKETT COLLECTIBLES, LLC, <br><br>     Defendant. | No. 3:22-cv-02867-N |

## <u>DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS</u>

**To:** **Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc., by and through their attorney of record, Mark Hammervold, Hammervold Law, 155 S. Lawndale Ave., Elmhurst, IL 60126, mark@hammervoldlaw.com.**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Beckett Collectibles, LLC ("Beckett") hereby requests that Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. answer the following interrogatories separately and fully, in writing, and under oath, within 30 days of the date these interrogatories were served.

Dated: April 14, 2023

Respectfully Submitted,

**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin

---

**Defendant's First Set of Interrogatories to Plaintiffs**      **Page 1 of 9**

State Bar No. 24028045
atobin@condontobin.com
Taryn E. Ourso
State Bar No. 24103715
tourso@condontobin.com
8080 Park Lane, Suite 700
Dallas, Texas 75231
*Telephone*: (214) 265-3800
*Facsimile*: (214) 691-6311

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant's First Set of Interrogatories to Plaintiffs has been served upon the following counsel of record on April 14, 2023:

> Mark Hammervold, Esq.
> Hammervold Law
> 155 S. Lawndale Ave.
> Elmhurst, IL 60126
> mark@hammervoldlaw.com

*/s/ Aaron Z. Tobin*

Aaron Z. Tobin

## DEFINITIONS & INSTRUCTIONS

The following definitions apply to each request set forth herein.

1.  "You," "Your," "Plaintiffs," or "Alt" means Plaintiff Alt Sports Card Fund GP LLC, as the General Partner of Alts Sports Card Fund, L.P., Alt Fund I, LP, and Plaintiff Alt Platform, Inc., and their employees, agents, affiliates, attorneys, and/or representatives.

2.  "Beckett" means Defendant Beckett Collectibles, LLC and its employees, agents, affiliates, attorneys, and/or representatives.

3.  "Communication" means the transmission of information or data in any form (including but not limited to written, oral, or electronic transmissions), such as telephone conferences, voicemails, text messages, messages in applications (including but not limited to SMS, Signal, Messenger, WhatsApp, Telegram, Snapchat, Gmail, Outlook, Zoom, Slack, Microsoft Teams, Google Hangouts, and Trello), correspondence, letters, emails, memoranda, and other written forms of exchange, as well as all verbal conversations by whatever means, including all forms and manifestations of electronically stored and/or retrieved electronic information, in all electronic media (including but not limited to hard drives, thumb drives, computers, phones, Internet of Things (IoT) devices, the "cloud," disks, tapes, servers, software, or hardware).

4.  "Concerning" means referring to, describing, evidencing, or constituting.

5.  "Curry Card" means the 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 card at issue in this case. (*See* Plaintiffs' Amended Complaint, Dkt. 83.)

---

6.    "Document" and "documents" are synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Federal Rule of Civil Procedure 34(a). Documents may include, but are not limited to, hard copy documents, text messages, communications conducted in ephemeral messaging applications (*e.g.*, WhatsApp, Snapchat, etc.), direct messages exchanged on social media websites or apps such as, but not limited to, Twitter, TikTok, Instagram, Facebook, and LinkedIn, communications conducted in workplace collaboration tools (*e.g.*, Workspace, Slack, Teams, etc.), emails, voicemails, files on Plaintiffs' computers, cloud storage accounts, phones, tablets, USB drives, and/or other devices such as, but not limited to, photographs, videos, word processing documents, PDFs, spreadsheets, call logs, and databases.

7.    "Identify", "identity", or "identification" means:

a)  when used in reference to a natural person, means that person's full name, last known address, home and business telephone numbers, and present occupation or business affiliation;

b)  when used in reference to a person other than a natural person, means that person's full name, a description of the nature of the person (that is, whether it is a corporation, partnership, etc. under the definition of person below), and the person's last known address, telephone number and principal place of business;

c)  when used in reference to a document, requires you to state the date, the author (or signor), the addressee, the identity of the document's present

custodian, and the type of document (*e.g.*, letter, e-mail, memorandum, telegram, or chart), or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the request.

8.     "Person" or "persons" shall mean individuals and entities, including, but not limited to, sole proprietorships, partnerships, joint ventures, estates, trusts, associations, companies, or corporations. When the referenced person is an entity of any type, the term "person" or "persons" includes all present or former officers, directors, employees, agents, shareholders, trustees, beneficiaries or other representatives.

9.     "Plaintiffs' Amended Complaint" means the Amended Complaint filed by Plaintiffs in this case on March 13, 2023. (Dkt. 14.)

10.     "PSA" means Professional Sports Authenticator, a division of Collectors Universe, Inc., and its employees, agents, affiliates, attorneys, and/or representatives.

11.     These requests are to be treated as continuing. If all the information requested is not available, you must answer each request as fully as possible and furnish additional information and documentation when it becomes available. If additional information or documentation is discovered between the time of your initial responses and trial, these requests are directed to the discovery of those materials.

12.     If any document requested was, but is no longer, in your custody, control or possession, state with particularity the disposition made of each such document, including the date of, method of, and reason(s) for such disposition, and the name and address, if known, of any person who has seen the document or who now has custody, control or possession thereof.

13.     If any information is withheld under a claim of privilege or is not produced for whatever reason, you must (i) state with specificity the claim of privilege or other reason used to withhold the document from production, and (ii) identify each document by date, author, and subject matter, without disclosing its contents, in a manner sufficient to allow it to be described to the Court for a ruling on the privilege or other reason stated. Documents withheld based on a claim of privilege or work product are subject to the provisions of Federal Rule of Civil Procedure 26(b)(5).

14.     If a partial or incomplete answer or production is provided, Plaintiffs must state the reason that the answer or production is partial or incomplete.

15.     These requests are subject to Federal Rules of Civil Procedure 26(e) (on supplementation), 26(g) on certification of responses, and 34(b)(2)(E) (on form of production), and the ESI and protective orders entered in this case.

16.     Unless otherwise stated, all requested documents cover the period from October 1, 2016, to March 13, 2023.

## **FIRST SET OF INTERROGATORIES**

1.     Provide the Curry Card's complete chain of custody from October 1, 2016, to March 13, 2023, by identifying all persons involved in handling, storing, transporting, or physically possessing the Curry Card during this time period. If the Curry Card was moved or transported at all during this time period, state the reason for the move. If the complete chain of custody cannot be established for the entire duration, please provide an explanation and provide as much of the chain of custody as possible. (This

interrogatory seeks to establish the complete chronological chain of custody of the Curry Card when, and after, it was encapsulated in or around October 2016.)

**RESPONSE:**

2.    Provide the Curry Card's complete chain of ownership and title from October 1, 2016, to March 13, 2023, by identifying all persons who have held an ownership interest in, or title to, the Curry Card during that time (including the person(s) who purchased the Curry Card for $168,000 on or around October 31, 2020 (*see* Plaintiffs' Amended Complaint, ¶ 54)). If the complete chain of ownership and title cannot be established for the entire duration, please provide an explanation and provide as much of the chain of ownership and title as possible. (This interrogatory seeks to establish the complete chronological chain of ownership and title of the Curry Card when, and after, it was encapsulated in or around October 2016.)

**RESPONSE:**

3.    With respect to your contention that "[a]t the time that BGS received the Steph Curry Rookie Card for grading, it had been trimmed and was short on the top" (*see* Plaintiffs' Amended Complaint, ¶ 38): (i) state all facts upon which you base this contention; (ii) state the name, address, and telephone number of each person who has knowledge of those facts; and (iii) identify all documents you contend support those facts.

**RESPONSE:**

4.    Identify all persons from whom you have received any statement, whether oral or written, at any time, concerning the claims and defenses of the parties

or the allegations in Plaintiffs' Amended Complaint. With respect to each person: (i) describe in reasonable detail the nature and substance of each statement you received and (ii) identify all documents and communications concerning the statement.

**RESPONSE:**

5.    Identify all persons with knowledge concerning the claims and defenses of the parties or the allegations in Plaintiffs' Amended Complaint. With respect to each person: (i) state the name, address, and telephone number of each person with such knowledge and (ii) describe in reasonable detail the nature and substance of such knowledge.

**RESPONSE:**

6.    Describe any and all method(s) or analyses Alt used to determine the value of the Curry Card at any time from October 1, 2016, to March 13, 2023, and identify all documents you contend support such valuation(s).

**RESPONSE:**

7.    State the date your relationship with Beckett was established and describe the nature of such relationship.

**RESPONSE:**

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

ALT SPORTS CARD FUND GP LLC, as the
General Partner of Alt Sports Card Fund, L.P.,
ALT PLATFORM, INC.,

    Plaintiffs,

v.                                                                    No. 3:22-cv-02867-N

BECKETT COLLECTIBLES, LLC,

    Defendant.

## DEFENDANT'S SECOND REQUEST FOR PRODUCTION TO PLAINTIFFS

**To:    Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc., by and through their attorney of record, Mark Hammervold, Hammervold Law, 155 S. Lawndale Ave., Elmhurst, IL 60126, mark@hammervoldlaw.com.**

    Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Beckett Collectibles, LLC ("Beckett") hereby requests that Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. produce the documents described below that are in their possession, custody, or control. Plaintiffs should send their written responses and document production within 30 days of the date these requests were served to the offices of Condon, Tobin, Sladek, Thornton, Nerenberg, PLLC, 8080 Park Lane, Suite 700, Dallas, Texas 75231, or electronically to kreed@condontobin.com and acampbell@condontobin.com

Dated: November 16, 2023                Respectfully Submitted,

                                    **CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**

                                    */s/ Abigail R.S. Campbell*
                                    Aaron Z. Tobin

State Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
State Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
State Bar No. 24098959
acampbell@condontobin.com
8080 Park Lane, Suite 700
Dallas, Texas 75231
*Telephone*: (214) 265-3800
*Facsimile*: (214) 691-6311

**ATTORNEYS FOR DEFENDANT**


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Second Request for Production to Plaintiffs has been served upon the following counsel of record on November 16, 2023:

Mark Hammervold, Esq.
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
mark@hammervoldlaw.com


*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

## DEFINITIONS & INSTRUCTIONS

The following definitions apply to each request set forth herein.

1.    "You," "Your," "Plaintiffs," or "Alt" means Plaintiff Alt Sports Card Fund GP LLC, as the General Partner of Alts Sports Card Fund, L.P., Alt Fund I, LP, and Plaintiff Alt Platform, Inc., and their employees, agents, affiliates, attorneys, and/or representatives.

2.    "Beckett" means Defendant Beckett Collectibles, LLC and its employees, agents, affiliates, attorneys, and/or representatives.

3.    "Communication" means the transmission of information or data in any form (including but not limited to written, oral, or electronic transmissions), such as telephone conferences, voicemails, text messages, messages in applications (including but not limited to SMS, Signal, Messenger, WhatsApp, Telegram, Snapchat, Gmail, Outlook, Zoom, Slack, Microsoft Teams, Google Hangouts, and Trello), correspondence, letters, emails, memoranda, and other written forms of exchange, as well as all verbal conversations by whatever means, including all forms and manifestations of electronically stored and/or retrieved electronic information, in all electronic media (including but not limited to hard drives, thumb drives, computers, phones, Internet of Things (IoT) devices, the "cloud," disks, tapes, servers, software, or hardware).

4.    "Concerning" means referring to, describing, evidencing, or constituting.

5.    "Curry Card" means the 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 card at issue in this case. (*See* Plaintiffs' Amended Complaint, Dkt. 83.)

6.    "Document" and "documents" are synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Federal Rule of Civil Procedure 34(a). Documents may include, but are not limited to, hard copy documents, text messages, communications conducted in ephemeral messaging applications (*e.g.*, WhatsApp,

Snapchat, etc.), direct messages exchanged on social media websites or apps such as, but not limited to, Twitter, TikTok, Instagram, Facebook, and LinkedIn, communications conducted in workplace collaboration tools (*e.g.*, Workspace, Slack, Teams, etc.), emails, voicemails, files on Plaintiffs' computers, cloud storage accounts, phones, tablets, USB drives, and/or other devices such as, but not limited to, photographs, videos, word processing documents, PDFs, spreadsheets, call logs, and databases.

 7. "Identify", "identity", or "identification" means:

  a) when used in reference to a natural person, means that person's full name, last known address, home and business telephone numbers, and present occupation or business affiliation;

  b) when used in reference to a person other than a natural person, means that person's full name, a description of the nature of the person (that is, whether it is a corporation, partnership, etc. under the definition of person below), and the person's last known address, telephone number and principal place of business;

  c) when used in reference to a document, requires you to state the date, the author (or signor), the addressee, the identity of the document's present custodian, and the type of document (*e.g.*, letter, e-mail, memorandum, telegram, or chart), or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the request.

 8. "Person" or "persons" shall mean individuals and entities, including, but not limited to, sole proprietorships, partnerships, joint ventures, estates, trusts, associations, companies, or corporations. When the referenced person is an entity of any type, the term "person" or "persons"

includes all present or former officers, directors, employees, agents, shareholders, trustees, beneficiaries or other representatives.

9.      "Complaint" means the Amended Complaint filed by Plaintiffs in this case on March 13, 2023. (Dkt. 14.)

10.     "PSA" means Professional Sports Authenticator, a division of Collectors Universe, Inc., and its employees, agents, affiliates, attorneys, and/or representatives.

11.     These requests are to be treated as continuing. If all the information requested is not available, you must answer each request as fully as possible and furnish additional information and documentation when it becomes available. If additional information or documentation is discovered between the time of your initial responses and trial, these requests are directed to the discovery of those materials.

12.     If any document requested was, but is no longer, in your custody, control or possession, state with particularity the disposition made of each such document, including the date of, method of, and reason(s) for such disposition, and the name and address, if known, of any person who has seen the document or who now has custody, control or possession thereof.

13.     If any information is withheld under a claim of privilege or is not produced for whatever reason, you must (i) state with specificity the claim of privilege or other reason used to withhold the document from production, and (ii) identify each document by date, author, and subject matter, without disclosing its contents, in a manner sufficient to allow it to be described to the Court for a ruling on the privilege or other reason stated. Documents withheld based on a claim of privilege or work product are subject to the provisions of Federal Rule of Civil Procedure 26(b)(5).

14.     If a partial or incomplete answer or production is provided, Plaintiffs must state the

reason that the answer or production is partial or incomplete.

      15.     These requests are subject to Federal Rules of Civil Procedure 26(e) (on supplementation) and 34(b)(2)(E) (on form of production), and the ESI and protective orders entered in this case.

      16.     Unless otherwise stated, all requested documents cover the period from October 1, 2016, to March 13, 2023.

**<u>SECOND REQUEST FOR PRODUCTION</u>**

**<u>REQUEST NO. 27:</u>**  All documents related to every trading card You have submitted for grading to any grading company that was deemed to have been trimmed or altered.

**<u>REQUEST NO. 28:</u>**  All documents and communications You have received from any third party that relate to the allegations set forth in Your Complaint, whether such documents support or fail to support, contradict, or dispute any of those allegations, including without limitation, all communications between You and the persons identified in Your Rule 26 Initial Disclosures related to this litigation or the facts of this litigation.

**<u>REQUEST NO. 29:</u>**  All documents and communications relied upon in preparing and/or identified in Your responses to Defendant's Second Set of Interrogatories.

**<u>REQUEST NO. 30:</u>**  All documents concerning or evidencing Your purported damages as alleged in the Complaint.  Please include all documents identifying the nature of the alleged damages, and notes, witness statements, calculations or other document which substantiates the nature, type and amount of any damages claimed.

**<u>REQUEST NO. 31:</u>**  All documents evidencing or in any way supporting Your efforts to mitigate any purported damages.

**<u>REQUEST NO. 32:</u>**  All documents and communications related to every trading card You

purchased from Christopher Ladd that has been deemed to have been trimmed or altered in any way.

**REQUEST NO. 33:**  All documents and communications related to every trading card You purchased from Goldin Auctions that has been deemed to have been trimmed or altered in any way.

**REQUEST NO. 34:**  All documents and communications related to every trading card You have broken out of or removed from tamper proof of similar protective slabs.

**REQUEST NO. 35:**  All documents and communications related to every lawsuit You have filed or been a party to related to the Curry Card.

**REQUEST NO. 36:**  All documents and communications related to every lawsuit You have filed or been a party to related to the trimming or altering of a sports trading card.

**REQUEST NO. 37:**  All documents and communications between You and Christopher Ladd.

**REQUEST NO. 38:**  All documents and communications between You and Keith Koenig.

**REQUEST NO. 39:**  All documents and communications related to every trading card You purchased from Keith Koenig that has been deemed to have been trimmed or altered in any way.

**REQUEST NO. 40:**  All documents and communications related to Your Beckett member account(s).

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

ALT SPORTS CARD FUND GP LLC, as the
General Partner of Alt Sports Card Fund, L.P.,
ALT PLATFORM, INC.,

    Plaintiffs,

v.                                                                                No. 3:22-cv-02867-N

BECKETT COLLECTIBLES, LLC,

    Defendant.

## DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS

**To:   Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc., by and through their attorney of record, Mark Hammervold, Hammervold Law, 155 S. Lawndale Ave., Elmhurst, IL 60126, mark@hammervoldlaw.com.**

    Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Beckett Collectibles,

LLC ("Beckett") hereby requests that Plaintiffs Alt Sports Card Fund GP LLC, as the General

Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. answer the following interrogatories

separately and fully, in writing, and under oath, within 30 days of the date these interrogatories

were served.

Dated: November 16, 2023                    Respectfully Submitted,

                                      **CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**

                                      */s/ Abigail R.S. Campbell*
                                      Aaron Z. Tobin
                                      State Bar No. 24028045

atobin@condontobin.com
Kendal B. Reed
State Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
State Bar No. 24098959
acampbell@condontobin.com
8080 Park Lane, Suite 700
Dallas, Texas 75231
*Telephone*: (214) 265-3800
*Facsimile*: (214) 691-6311

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Defendant's Second Set of Interrogatories

to Plaintiffs has been served upon the following counsel of record on November 16, 2023:

Mark Hammervold, Esq.
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
mark@hammervoldlaw.com

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

## DEFINITIONS & INSTRUCTIONS

The following definitions apply to each request set forth herein.

1.      "You," "Your," "Plaintiffs," or "Alt" means Plaintiff Alt Sports Card Fund GP LLC, as the General Partner of Alts Sports Card Fund, L.P., Alt Fund I, LP, and Plaintiff Alt Platform, Inc., and their employees, agents, affiliates, attorneys, and/or representatives.

2.      "Beckett" means Defendant Beckett Collectibles, LLC and its employees, agents, affiliates, attorneys, and/or representatives.

3.      "Communication" means the transmission of information or data in any form (including but not limited to written, oral, or electronic transmissions), such as telephone conferences, voicemails, text messages, messages in applications (including but not limited to SMS, Signal, Messenger, WhatsApp, Telegram, Snapchat, Gmail, Outlook, Zoom, Slack, Microsoft Teams, Google Hangouts, and Trello), correspondence, letters, emails, memoranda, and other written forms of exchange, as well as all verbal conversations by whatever means, including all forms and manifestations of electronically stored and/or retrieved electronic information, in all electronic media (including but not limited to hard drives, thumb drives, computers, phones, Internet of Things (IoT) devices, the "cloud," disks, tapes, servers, software, or hardware).

4.      "Concerning" means referring to, describing, evidencing, or constituting.

5.      "Curry Card" means the 2009 Topps Chrome #101 Stephen Curry Gold Refractor 26/50 card at issue in this case. (*See* Plaintiffs' Amended Complaint, Dkt. 83.)

6.      "Document" and "documents" are synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Federal Rule of Civil Procedure 34(a). Documents may include, but are not limited to, hard copy documents, text messages, communications conducted in ephemeral messaging applications (*e.g.*, WhatsApp,

Snapchat, etc.), direct messages exchanged on social media websites or apps such as, but not limited to, Twitter, TikTok, Instagram, Facebook, and LinkedIn, communications conducted in workplace collaboration tools (*e.g.*, Workspace, Slack, Teams, etc.), emails, voicemails, files on Plaintiffs' computers, cloud storage accounts, phones, tablets, USB drives, and/or other devices such as, but not limited to, photographs, videos, word processing documents, PDFs, spreadsheets, call logs, and databases.

7.    "Identify", "identity", or "identification" means:

    a)    when used in reference to a natural person, means that person's full name, last known address, home and business telephone numbers, and present occupation or business affiliation;

    b)    when used in reference to a person other than a natural person, means that person's full name, a description of the nature of the person (that is, whether it is a corporation, partnership, etc. under the definition of person below), and the person's last known address, telephone number and principal place of business;

    c)    when used in reference to a document, requires you to state the date, the author (or signor), the addressee, the identity of the document's present custodian, and the type of document (*e.g.*, letter, e-mail, memorandum, telegram, or chart), or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the request.

8.    "Person" or "persons" shall mean individuals and entities, including, but not limited to, sole proprietorships, partnerships, joint ventures, estates, trusts, associations, companies, or corporations. When the referenced person is an entity of any type, the term "person" or "persons"

includes all present or former officers, directors, employees, agents, shareholders, trustees, beneficiaries or other representatives.

9.   "Complaint" means the Amended Complaint filed by Plaintiffs in this case on March 13, 2023. (Dkt. 14.)

10.   These requests are to be treated as continuing. If all the information requested is not available, you must answer each request as fully as possible and furnish additional information and documentation when it becomes available. If additional information or documentation is discovered between the time of your initial responses and trial, these requests are directed to the discovery of those materials.

11.   If any document requested was, but is no longer, in your custody, control or possession, state with particularity the disposition made of each such document, including the date of, method of, and reason(s) for such disposition, and the name and address, if known, of any person who has seen the document or who now has custody, control or possession thereof.

12.   If any information is withheld under a claim of privilege or is not produced for whatever reason, you must (i) state with specificity the claim of privilege or other reason used to withhold the document from production, and (ii) identify each document by date, author, and subject matter, without disclosing its contents, in a manner sufficient to allow it to be described to the Court for a ruling on the privilege or other reason stated. Documents withheld based on a claim of privilege or work product are subject to the provisions of Federal Rule of Civil Procedure 26(b)(5).

13.   If a partial or incomplete answer or production is provided, Plaintiffs must state the reason that the answer or production is partial or incomplete.

14.   These requests are subject to Federal Rules of Civil Procedure 26(e) (on

supplementation), 26(g) on certification of responses, and 34(b)(2)(E) (on form of production), and the ESI and protective orders entered in this case.

15.     Unless otherwise stated, all requested documents cover the period from October 1, 2016, to March 13, 2023.

<u>**SECOND SET OF INTERROGATORIES**</u>

**INTERROGATORY NO. 8:**     Identify every trading card You have submitted for grading to any grading company that was deemed to have been trimmed or altered, describe the reason such determination was made, the grading company, and when the card was graded.

**RESPONSE:**


**INTERROGATORY NO. 9:**     Identify every trading card You purchased from Keith Koenig that have been deemed to have been trimmed or altered, the date You purchased such card, the date You discovered or were informed the card had been trimmed or altered, and who determined the card was trimmed or altered.

**RESPONSE:**


**INTERROGATORY NO. 10:**   Identify every trading card You purchased from Christopher Ladd that have been deemed to have been trimmed or altered, the date You purchased such card, the date You discovered or were informed the card had been trimmed or altered, and who determined the card was trimmed or altered.

**RESPONSE:**

**INTERROGATORY NO. 11:**  Identify every trading card You purchased from Goldin Auctions that have been deemed to have been trimmed or altered, the date You purchased such card, the date You discovered or were informed the card had been trimmed or altered, and who determined the card was trimmed or altered.

**RESPONSE:**


**INTERROGATORY NO. 12:**  Identify every trading card You have broken out of or removed from tamper proof or similar protective slabs, the date of the removal, why the trading card was removed, and if the trading card was identified as trimmed or altered in any way.

**RESPONSE:**


**INTERROGATORY NO. 13:**  Identify each and every lawsuit You have filed or been a party to related to the Curry Card, please specify the dates of, parties to, claims involved, and outcomes of each lawsuit.

**RESPONSE:**


**INTERROGATORY NO. 14:**  Identify each and every lawsuit You have filed or been a party to related to the trimming or altering of a sports trading card, please specify the dates of, parties to, claims involved, and outcomes of each lawsuit.

**RESPONSE:**


**INTERROGATORY NO. 15:**  Describe, in detail, all actions You have taken to mitigate any damages You claim to have suffered and for which You seek recovery in this lawsuit.

---

**RESPONSE:**


**INTERROGATORY NO. 16:**   Identify and itemize each and every element and item of actual damages incurred by You as alleged in Your Complaint.   As part of your answer to this interrogatory please provide:

      a.  the total amount for each item of damages;

      b.  the category and claim to which each item of damages relates;

      c.  the factual basis for each item of damages;

      d.  every person who has possession, custody, or control of each such factual information and/or document(s); and

      e.  an explanation of how each item of damages was computed, including any mathematical formula used.

**RESPONSE:**

# EXHIBIT 5



Abigail R.S. Campbell

Direct Dial: 214-265-3891
E-Mail: acampbell@condontobin.com

November 16, 2023

**Via Email:** mark@hammervoldlaw.com
Mr. Mark Hammervold
Hammervold Law
155 S. Lawndale Avenue
Elmhurst, IL 60126

Re:     Civil No.: 3:22-cv-02867-N; *ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P.; ALT PLATFORM, INC., v. BECKETT COLLECTIBLES, LLC*; In the United States District Court for the Northern District of Texas; Dallas Division.

Dear Mark:

        After reviewing Plaintiffs Alt Sports Card Fund GP, LLC's and Alt Platform, Inc.'s ("Plaintiffs") responses to Defendant Beckett Collectibles, LLC's ("Beckett") First Request for Production and First Set of Interrogatories along with the materials produced by Plaintiffs to date, I have identified several deficiencies. Please address each of the following:

**November 10, 2023 Production**

        On November 10, 2023 you emailed a dropbox link stating that the link contained four documents that Plaintiffs are designating as confidential. The link, however, only contained a single, one page document titled Stephen Curry 2009 Valuation Analysis. On November 13, 2023, I responded to your email informing you of this issue and asking for the remaining three documents to be produced. I have not received a response to my request. Please produce Plaintiffs' remaining documents.

**Videos of Emails and Messages**

        Plaintiffs' production included video recordings of email and messaging conversations rather than a PDF of the full email or messaging conversation. This is not an acceptable form of production, and it appears that relevant and responsive portions of the conversations are not included in the videos nor have they been produced. These videos are labeled PSA_3, PSA_4, and Screen Recording 2023-07-11. Please produce complete PDF copies of these communications.

November 16, 2023
Page 2

**Redactions**

On July 13, 2023, Plaintiffs produced a document titled Trout Curry Lebron Goldin Invoice_10_4 (Redacted).pdf with redactions covering the "Final Bid" amounts. It is unclear why these amounts are redacted as this would not qualify as privileged information, and if it did, Plaintiffs have not produced a privilege log identifying the privilege claim. Please produce this document without redactions.

**Interrogatory No. 3**

In response to Beckett's Interrogatory No. 3, Plaintiffs state that they object to answering the interrogatory until after discovery is substantially completed. This is not a proper objection. Moreover, the interrogatory seeks information supporting Plaintiffs' own allegations in the Amended Complaint. Further, with discovery substantially completed and closing in December, even pursuant to Plaintiffs' improper objection, a complete response should now be provided. Please amend Plaintiffs' response to Interrogatory No. 3 to remove the objection and provide a complete response.

So that we may quickly resolve these issues and continue with discovery in this matter, please address the issues outlined above no later than November 22, 2023. Otherwise, we will need to seek the Court's intervention according to Federal Rules and local rules for the Northern District of Texas. I am generally available to discuss if necessary.

Thank you for your prompt attention

Sincerely,

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

cc:

Kendal B. Reed

# EXHIBIT 6



Abigail R.S. Campbell

Direct Dial: 214-265-3891
E-Mail: acampbell@condontobin.com

November 20, 2023

**Via Email:** mark@hammervoldlaw.com
Mr. Mark Hammervold
Hammervold Law
155 S. Lawndale Avenue
Elmhurst, IL 60126

Re:    Civil No.: 3:22-cv-02867-N; *ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P.; ALT PLATFORM, INC., v. BECKETT COLLECTIBLES, LLC*; In the United States District Court for the Northern District of Texas; Dallas Division.

Dear Mark:

After reviewing Plaintiffs' November 16, 2023 production, I have identified further issues that need to be addressed in addition to the issues identified in my November 16, 2023 correspondence. Please address each of the following:

**Videos of Messages**

In addition to the videos of emails and messages identified in my November 16, 2023 letter, Plaintiffs' November 16, 2023 production contained three videos scrolling through Slack messages instead of producing the entire conversation as a complete PDF. Again, this is not an acceptable form of production and it appears that relevant and responsive portions of the conversations are not included in the videos nor have they been produced. Please produce complete PDF copies of the communications.

**Objection to Confidential Designation**

Pursuant to your November 10, 2023 email, Plaintiffs designated Screen Recording 2023-07-11 at 7.48.59 PM.mov, Screen Recording 2023-07-11 at 7.56.45 PM.mov, and Screen Recording 2023-07-11 at 8.08.32 PM.mov as confidential. Defendant objects to this designation because the communications do not qualify as needing a confidential designation. Specifically, the conversations do not contain any proprietary or trade secret information and the improper confidentiality designation will cause unnecessary issues with filings and disclosures at trial. Please confirm your agreement to remove the confidential designation from these communications.

November 20, 2023
Page 2

**Deficient Discovery**

Plaintiffs' November 16, 2023 production reveals that prior to cracking the Stephen Curry 2009-10 Topps Chrome Gold Refractor Rookie #101 26/50 ("Curry Card"), Plaintiffs previously attempted to cross grade it with PSA. *See* Screen Recording 2023-07-11 at 7.48.59PM at 1:20. Consequently, Plaintiffs' discovery responses are deficient because they lack any information or production regarding Plaintiffs' prior attempt(s) to cross grade the Curry Card.

Specifically, Plaintiffs' responses to the following fail to account for or produce responsive documents related to Plaintiffs' prior to attempt to cross grade the Curry Card:

- Interrogatory No. 1, requesting the Curry Card's complete chain of custody from October 1, 206 to March 13, 2023;

- Request for Production No. 7, requesting documents sufficient to show the complete chain of custody of the Curry Card;

- Request for Production No. 12, requesting documents sufficient to show each and every person who had access to the Curry Card from October 2016 through March 13, 2023;

- Request for Production No. 20, requesting all communications and correspondence with PSA concerning the Curry Card;

- Request for Production No. 21, requesting all communications and correspondence with any person concerning the Curry Card; and

- Request for Production No. 26, requesting all affidavits, sworn statements, notes, and other documents (including drafts thereof) concerning the Curry Card.

Please amend these responses accordingly and produce the documents requested.

Please address the issues outlined above along with the issues identified in my November 16, 2023 correspondence no later than November 22, 2023. As previously stated, failure to address these issues will result in Beckett needing to seek the Court's intervention. I am generally available to discuss if necessary.

Thank you for your prompt attention.

Very truly yours,

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

cc:    Kendal B. Reed

# EXHIBIT 7



**Abigail R.S. Campbell**

Direct Dial: 214-265-3891
E-Mail: acampbell@condontobin.com

December 20, 2023

**Via Email:** mark@hammervoldlaw.com
Mr. Mark Hammervold
Hammervold Law
155 S. Lawndale Avenue
Elmhurst, IL 60126

Re:    Civil No.: 3:22-cv-02867-N; *ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P.; ALT PLATFORM, INC., v. BECKETT COLLECTIBLES, LLC*; In the United States District Court for the Northern District of Texas; Dallas Division.

Dear Mark:

The purpose of this letter is to follow upon the issues identified in my November 16 and 20, 2023 Letters as well as additional outstanding issues.

**Failure to Respond to Beckett's Second Set of Requests for Production and Interrogatories**

On Thursday, November 16, 2023, Becket served its Second Requests for Production and Second Set of Interrogatories to Plaintiffs. Plaintiffs' responses to these discovery requests were due by December 18, 2023. Plaintiffs failed to serve any responses to this set of discovery. Consequently, Plaintiffs have waived their objections to the requests and interrogatories and must produce and provide all requested information, without objection. Please provide responses to each and every request and interrogatory by December 22, 2023 or we will be required to seek the court's intervention.

**Slack Conversations**

The Slack conversations produced appear to be screen shots of the conversations that include pop ups or bubbles obscuring the conversation. Please produce complete copies of these conversations, in full.

**Objection to Confidential Designation**

During our previous meet and confer, you agreed to look at the conversations that Plaintiffs designated as confidential. Specifically, Beckett objects to the confidential designations of Screen Recording 2023-07-11 at 7.48.59 PM.mov, Screen Recording 2023-07-11 at 7.56.45

December 20, 2023
Page 2

PM.mov, and Screen Recording 2023-07-11 at 8.08.32 PM.mov As previously stated, the communications do not qualify as needing a confidential designation. Specifically, the conversations do not contain any proprietary or trade secret information and the improper confidentiality designation will cause unnecessary issues with filings and disclosures at trial. Please confirm your agreement to remove the confidential designation from these communications.

**Deficient Discovery**

As previously pointed out in my November 20, 2023 letter, Plaintiffs' production unequivocally admits that they submitted the Stephen Curry 2009-10 Topps Chrome Gold Refractor Rookie #101 26/50 ("Curry Card") to PSA for cross grading prior to September 2022. Plaintiffs have still not produced any documents or communications regarding this prior attempt to cross grade, which are responsive to multiple discovery requests.

Similarly, Plaintiffs' production unequivocally admits that in or around August or September 2022, Plaintiffs contacted PSA regarding the prior grading of the Curry Card to confirm whether the grade was recorded. Plaintiffs have not produced these communications.

Further, despite producing the October 28, 2022 Letter from Jackie Curiel at PSA, Plaintiff has not produced any communications about the letter—*i.e.* communications to Ms. Curiel requesting the letter.

All of these communications are responsive to Beckett's First Set of Requests for Production and are long overdue. Again, I request that these documents be produced by December 22, 2023.

Due to Plaintiffs' continued failure to provide full and complete responses and production to Beckett's first set of discovery and outright failure to provide any responses to Beckett's second set of discovery, failure to address the issues above by December 22, 2023 will leave Beckett with no choice by to seek intervention of the Court.

Thank you for your prompt attention

Very truly yours,

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

# EXHIBIT 8



Abigail R.S. Campbell

**ATTORNEY**

Direct Dial: 214-265-3891
E-Mail: acampbell@condontobin.com

January 16, 2024

**Via Email:** mark@hammervoldlaw.com
Mr. Mark Hammervold
Hammervold Law
155 S. Lawndale Avenue
Elmhurst, IL 60126

Re:    Civil No.: 3:22-cv-02867-N; *ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P.; ALT PLATFORM, INC., v. BECKETT COLLECTIBLES, LLC*; In the United States District Court for the Northern District of Texas; Dallas Division.

Dear Mark:

This is my fourth attempt to obtain full and complete discovery from Plaintiffs Alt Sports Card Fund GP LLC and Alt Platform, Inc. (together "Alt Platform"). Please address the below outstanding issues as well as the issues identified regarding Plaintiffs' responses to Beckett's Second Set of Requests for Production and Interrogatories.

**Slack Conversations**

The Slack conversations produced appear to be screen shots of the conversations that include pop ups or bubbles obscuring the conversation. Please produce complete copies of these conversations, in full.

**Objection to Confidential Designation**

During our previous meet and confer, you agreed to look at the conversations that Plaintiffs designated as confidential. Specifically, Beckett objects to the confidential designations of Screen Recording 2023-07-11 at 7.48.59 PM.mov, Screen Recording 2023-07-11 at 7.56.45 PM.mov, and Screen Recording 2023-07-11 at 8.08.32 PM.mov As previously stated, the communications do not qualify as needing a confidential designation. Specifically, the conversations do not contain any proprietary or trade secret information and the improper confidentiality designation will cause unnecessary issues with filings and disclosures at trial. Please confirm your agreement to remove the confidential designation from these communications.

January 16, 2024
Page 2

**Deficient Discovery**

As previously pointed out in my November 20, 2023 and December 20, 203 letters, Plaintiffs' production unequivocally admits that they submitted the Stephen Curry 2009-10 Topps Chrome Gold Refractor Rookie #101 26/50 ("Curry Card") to PSA for cross grading prior to September 2022. Plaintiffs have still not produced any documents or communications regarding this prior attempt to cross grade, which are responsive to multiple discovery requests.

Similarly, Plaintiffs' production unequivocally admits that in or around August or September 2022, Plaintiffs contacted PSA regarding the prior grading of the Curry Card to confirm whether the grade was recorded. Plaintiffs have not produced these communications.

Further, despite producing the October 28, 2022 Letter from Jackie Curiel at PSA, Plaintiff has not produced any communications about the letter—*i.e.* communications to Ms. Curiel requesting the letter.

All of these communications are responsive to Beckett's First Set of Requests for Production and are long overdue.

**Second Set of Discovery Requests**

After reviewing Alt Platform's responses to Beckett's Second Set of Requests for Production and Second Set of Interrogatories, we have identified several deficiencies. Please address each of the following:

Despite stating that Alt Platform will production documents Plaintiffs failed to produce any documents in response to Beckett's Second Set of Requests for Production. Plaintiffs' continued delay in producing documents in this litigation is not proper.

In response to RFP 27 and Interrogatory 8, Alt Platform objects to producing the documents and information requested. Alt Platform argues that because Keith Koenig submitted a high number of cards identified as altered, that all cards he submitted should have been red-flagged for issue. Consequently, Alt Platform has put a card submitters history at issue, including Alt Platform's submissions, which have also been identified as altered. Please produce the requested information.

In response to RFP 30, Alt Platform states it has already produced responsive documents. Plaintiffs have not produced all documents requested by RFP 30. For example, Alt Platform has not produced any documents evidencing the sale of Curry Cards considered by their experts. Moreover, Alt Platform has not provided the specific information requested in Interrogatory 16. Please provide the requested information.

January 16, 2024
Page 3

   In response to RFP 34 and Interrogatory 12, Alt Platform objects and refuses to produce any documents or information related to trading cards they have broken out of or removed from tamper proof [or] similar protective slabs. This information is reasonably calculated to lead to the production of relevant information because it relates to a pattern, practice, and history of Alt Platform's actions of returning cards to raw form, including Alt Platform's risk assessment, ability to crack tamper proof slabs without damaging the card inside, their intentions or actions to alter a card to achieve a better grade, and whether any other cracked cards have been identified as trimmed or altered. Please produce the requested information.

   Alt Platforms objections to RFP 35 and 37 are improper form objections without explanation. Additionally, Alt Platform's response "subject to" its form objections is prohibited in the Northern District of Texas. *Heller v. City of Dallas*, 303 F.R.D. 466, 486-490 (N.D. Tex. 2014). Documents and communications related to a lawsuit filed by Alt Platform regarding the same card and same damages for which it has sued Beckett are inarguably relevant. Please produce the requested information.

   Alt Platforms objections to RFP 40 are improper form objections without explanation and its response "subject to" those form objections is prohibited in the Northern District of Texas. *Heller*, 303 F.R.D. at 486-490. It is further improper to state that Beckett would have internal Alt Platform communications about their Beckett member account(s). Moreover, the fact that Beckett may or may not have some information about Alt Platform accounts is not justification for failing to produce, including the fact that Alt Platform may have multiple accounts that are not easily identifiable as Alt Platform. Please produce the requested information.

   Alt Platform can no longer to delay providing full and complete discovery in this matter. Indeed, Beckett has sought a significant amount of the above information since November 2023. If Alt Platform does not address the issues outline above by January 19, 2024, Beckett will seek the Court's intervention.

   Finally, despite multiple requests for deposition dates, Alt Platform has not provided any available dates for the rescheduling of depositions. Consequently, Beckett will be serving notices of deposition at is convenience.

   Thank you for your prompt attention.

        Very truly yours,

        */s/ Abigail R.S. Campbell*

        Abigail R.S. Campbell

# EXHIBIT 9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

ALT SPORTS CARD FUND GP LLC, as the
General Partner of Alt Sports Card Fund, L.P.,
ALT PLATFORM, INC.,

    Plaintiffs,

v.

BECKETT COLLECTIBLES, LLC,

    Defendant.

No. 3:22-cv-02867-N

## PLAINTIFFS' RESPONSES TO DEFENDANT'S 1ST REQUEST FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. hereby provide this response to Defendant Beckett Collectibles, LLC's First Request for Production.

## PRELIMINARY STATEMENT AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Insofar as the "Definitions/Instructions" are incorporate into each Interrogatory, the following General Objections also apply to each and every Interrogatory, and are incorporate by reference into each and every specific response as if fully set forth in each such response:

1.    Plaintiffs' responses herein are based on a reasonably diligent and good faith inquiry. Further investigation may result in the identification of further responsive documents. Plaintiffs' factual and legal investigation of this matter is ongoing. Plaintiffs reserve the right, but do not assume any obligation, except as required by law, to supplement, amend, correct, clarify, or modify the responses as further information becomes available or further documents are identified. Plaintiffs also reserve their right to amend and/or supplement any responses or

**Plaintiffs' Response to Defendant's First Request for Production**

objections herein. Further, Plaintiffs reserve their right, at trial or during other proceedings in this action, to rely on documents, evidence, and other materials in addition to the responses provided to the Responses, whether or not such information is now in existence but has not been obtained, despite reasonably diligent and good faith efforts.

2.      Plaintiffs object to the Requests to the extent that, in light of the Definitions and Instructions, they seek information or documents created after the commencement of the instant lawsuit or for the purposes of, or in connection with, the instant litigation.

3.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they request documents that are subject to any privilege, immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity recognized by the Federal Rules, federal statute, or any other applicable federal or state rule or law. Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence that Plaintiffs do not object to a Request on the basis of an applicable privilege.

4.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they purport to impose upon Plaintiffs a duty to secure and produce documents not in their possession, custody, or control. Unless representations regarding the existence or non-existence of specific information in Plaintiffs' possession, custody, or control are expressly made, Plaintiffs' responses and objections should not be construed as amounting to such representations.

5.      Plaintiffs object to the Requests to the extent that, in light of the Definitions and Instructions, they purport to require production of documents that is public, already in the possession, custody, or control of Defendants, equally available to Defendants, available from

---

**Plaintiffs' Response to Defendant's First Request for Production**

sources to which Defendants also have access, or obtainable from some other source that is more convenient, less burdensome, or less expensive, including, but not limited to, non-parties.

6.      Plaintiffs' production of documents is not a waiver of any of the objections set forth herein or an admission or acknowledgment that such material is relevant to the claims or defenses in this action. Further, these responses are without prejudice to and not a waiver of (i) Plaintiffs' right to contend at trial or any other proceeding in this action that such material is inadmissible, irrelevant, immaterial, or not a proper basis for discovery; or (ii) any objection by Plaintiffs to any future use of such material that Defendants may attempt to make. In addition, these responses are solely for the purposes of this action.

## **FIRST REQUEST FOR PRODUCTION**

**1.      All partnership agreements of Alt Fund I, LP and Alt Sports Card Fund, L.P.**

**RESPONSE:** Plaintiffs previously produced responsive documents on June 5, 2023. Plaintiffs object to producing any documents beyond those previously produced as they are not relevant to any claim or defense in this action and as imposing a burden disproportionate to the needs of the case.

**2.      All formation documents of Alt Fund I, LP and Alt Sports Card Fund, L.P.**

**RESPONSE:** Plaintiffs previously produced responsive documents on June 5, 2023. Plaintiffs object to producing any documents beyond those previously produced as they are not relevant to any claim or defense in this action and as imposing a burden disproportionate to the needs of the case.

**3.      All merger and/or acquisition agreements involving Alt Fund I, LP and Alt Sports Card Fund, L.P.**

**RESPONSE:** Plaintiffs previously produced responsive documents on June 5, 2023. Plaintiffs

object to producing any documents beyond those previously produced as not relevant to any claim or defense in this action and as imposing a burden disproportionate to the needs of the case.

  **4.  All documents and communications concerning the October 2016 grading of the Curry Card.**

**RESPONSE:** Plaintiffs object to this request on the basis that the requested documents are already in Defendant's possession and/or are publicly available. Subject to this objection, Plaintiff has produced responsive documents it obtained in the process of investigating this claim from Defendant's website, as well as pictures of the Curry Card in Beckett's slab.

  **5.  All pictures, images, and videos of the Curry Card.**

**RESPONSE:** Plaintiffs have conducted a reasonable search and have produced responsive documents.

  6.  All documents and communications concerning the query performed on or around October 31, 2020 (as referenced in Paragraph 54 of Plaintiffs' Amended Complaint).

**RESPONSE:** Plaintiffs object to this request on the basis that responsive documents are already in Defendant's possession and/or are publicly available. Beyond the information publicly available on Defendant's website, Plaintiffs have conducted a reasonable search, but have yet to identify or locate any responsive documents in their possession.

  **7.  Documents sufficient to show the complete chain of custody of the Curry Card.**

**RESPONSE:** Plaintiffs object to this request to the extent that it requires Plaintiffs to produce documents not in its possession and because the operative term "chain of custody" is vague and ambiguous. Subject to these objections, Plaintiffs have conducted a reasonable search and have produced responsive documents in its possession sufficient to show the "chain of custody" after it first came into possession of the Curry Card in October/November 2020. *See* Plaintiffs' response

to Interrogatory #1.

8.    Documents sufficient to show the complete chain of ownership of the Curry Card.

**RESPONSE:** Plaintiffs object to this request as "chain of ownership" is vague and calls for a legal conclusion. Subject to that objection, Plaintiffs have conducted a reasonable search and have produced responsive documents. *See* Plaintiffs' response to Interrogatory #2.

**9.    Documents sufficient to identify the person(s) that purchased the Curry Card for $168,000 (referenced in Paragraph 54 of Plaintiffs' Complaint).**

**RESPONSE:** *See* Plaintiffs' response to interrogatory #2. Plaintiffs have conducted a reasonable search and have produced responsive documents.

**10.    All documents and communications concerning the purchase of the Curry Card for $168,000 (referenced in Paragraph 54 of Plaintiffs' Amended Complaint), including but not limited to wire transfer slips, checks, invoices, and receipts.**

**RESPONSE:** Plaintiffs have conducted a reasonable search and have produced responsive documents. Plaintiffs object to producing confidential documents reflecting trade secrets and processes without a protective order in place. Plaintiffs have agreed to provide these documents AEO while the Parties work on an agreed protective order.

**11.    All documents and communications reflecting Alt's valuation(s) of the Curry Card at any time.**

**RESPONSE:** Plaintiffs object to producing valuations performed at the direction of counsel or privileged communications with experts. Plaintiffs object to producing confidential documents reflecting trade secrets and processes without a protective order in place. Plaintiffs have agreed to provide these documents AEO while the Parties work on an agreed protective order.

**12.    Documents sufficient to show each and every person who had access to the**

---

**Curry Card from October 2016 through March 13, 2023.**

**RESPONSE:** Plaintiffs object to this request on the basis that "access" is vague and that the request imposes a burden that is disproportionate to the needs of the case. *See* Plaintiffs' Objections to Interrogatory #1. Plaintiffs also object to the extent that the request requires Alt to produce documents not in its possession. Subject to these objections, Plaintiffs have conducted a reasonable search and have produced responsive documents.

> **13.**    **All documents and communications concerning Alt's removal of the Curry Card from its slab on or around August 30, 2022.**

**RESPONSE:** Plaintiffs object to the extent this request requires Plaintiffs to produce documents not in their possession. Plaintiffs object to producing confidential documents reflecting trade secrets and processes without a protective order in place. Plaintiffs have agreed to provide these documents AEO while the Parties work on an agreed protective order. Plaintiffs have conducted a reasonable search and have produced responsive documents. *See also* Plaintiffs' Response to Interrogatory #1.

> **14.**    **All documents and communications concerning the transportation of the Curry Card from Alt to PSA on or around August 30, 2022.**

**RESPONSE:** Plaintiffs object to the extent this request requires Plaintiffs to produce documents not in their possession. Plaintiffs have conducted a reasonable search and have produced responsive documents. *See also* Plaintiffs' Response to Interrogatory #1.

> **15.**    **All documents and communications concerning PSA's grading of the Curry Card on or around September 1, 2022.**

**RESPONSE:** Plaintiffs object to the extent this request requires Plaintiffs to produce documents not in their possession. Plaintiffs have conducted a reasonable search and have produced

---

**Plaintiffs' Response to Defendant's First Request for Production**

responsive documents. *See also* Plaintiffs' Response to Interrogatory #3.

**16.    All documents and communications concerning PSA's transportation of the Curry Card to Alt after PSA's September 2022 grading of the Curry Card.**

**RESPONSE:** Plaintiffs object to the extent this request requires Plaintiffs to produce documents not in their possession. Plaintiffs have conducted a reasonable search and have produced responsive documents. *See also* Plaintiffs' Response to Interrogatory #1.

**17.    All documents and communications concerning Beckett's evaluation of the card in September 2022.**

**RESPONSE:** Plaintiffs object to the extent this request requires Plaintiffs to produce documents not in their possession and to produce documents already in Beckett's possession. Plaintiffs have conducted a reasonable search and have produced responsive documents. *See also* Plaintiffs' Response to Interrogatory #3.

**18.    Documents sufficient to identify the person that submitted the Curry Card to Beckett for grading in October 2016.**

**RESPONSE:** Plaintiffs object on the basis that Defendant already has such knowledge and such documents in its possession. Plaintiffs do not know who submitted the Curry Card to Defendant for grading, even though they have requested this information from Defendant on two prior occasions.

**19.    All communications and correspondence with Beckett concerning the Curry Card.**

**RESPONSE:** Plaintiffs object on the basis that Defendant's already have such documents. Subject to this objection, Plaintiffs have conducted a reasonable search and produced responsive documents.

---

**Plaintiffs' Response to Defendant's First Request for Production**

**20.    All communications and correspondence with PSA concerning the Curry Card.**

**RESPONSE:** Plaintiffs object to producing any documents that are not relevant to any claim or defense in this action, as this imposes a burden disproportionate to the needs of the case. Subject to this objection, Plaintiffs have conducted a reasonable search and produced responsive documents.

**21.    All communications and correspondence with any person concerning the Curry Card.**

**RESPONSE:** Plaintiffs object to this request as overly broad and vague and to the extend it calls for documents not in Plaintiffs' possession for communications "with any person." Subject to this objection, Plaintiffs have conducted a reasonable search and produced responsive documents.

**22.    All documents identified in your initial disclosures.**

**RESPONSE:** Plaintiffs only identified categories of documents in its initial disclosures. Plaintiffs have conducted a reasonable search for such documents and produced responsive documents.

**23.    All documents identified in your responses to Interrogatories 1-7.**

**RESPONSE:** Plaintiffs have produced those documents.

**24.    All documents you intend to use as exhibits at trial.**

**RESPONSE:** Plaintiffs have not yet decided which documents they will designate or use as exhibits at trial, but Plaintiffs expect that most of the documents it will use as exhibits will be produced in response to other requests or will be produced by Defendant or third parties.

**25.    All affidavits, sworn statements, notes, and other documents sent to, received from, or otherwise relating to any person you intend to call as a witness at trial, either in person, through deposition testimony, or through an affidavit.**

---

**Plaintiffs' Response to Defendant's First Request for Production**

**REPSONSE:** Plaintiffs have produced all affidavits and sworn statements in its possession from persons it may call as witnesses at trial. Plaintiffs have also produced the unsworn statement they received from PSA. But Plaintiffs otherwise object the request as vague, unduly burdensome and calling for privileged information, to the extent that it requests statements to counsel, counsel's notes, or statements prepared at the direction of counsel during or in anticipation of this litigation.

26. **All affidavits, sworn statements, notes, and other documents (including drafts thereof) concerning the Curry Card.**

**RESPONSE:** See response to Request #25.

**RESPECTFULLY SUBMITTED,**

**S/Mark Hammervold**
Mark Hammervold, Il #6320744
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
Mark@Hammervoldlaw.Com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 13, 2023, a true and correct copy of the foregoing was served upon all counsel of record in this proceeding by email:

Aaron Z. Tobin (atobin@condontobin.com)
Jessica Steele (jsteele@condontobin.com)
Condon Tobin
8080 Park Lane, Suite 700
Dallas, Texas 75231

*Attorneys for Defendant*

*/s/ Mark Hammervold*

---

**Plaintiffs' Response to Defendant's First Request for Production**

# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC., <br><br>     Plaintiffs, <br><br> v. <br><br> BECKETT COLLECTIBLES, LLC, <br><br>     Defendant. | No. 3:22-cv-02867-N |

## PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. hereby provide this response to Defendant Beckett Collectibles, LLC's First Set of Interrogatories.

## PRELIMINARY STATEMENT AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Insofar as the "Definitions/Instructions" are incorporate into each Interrogatory, the following General Objections also apply to each and every Interrogatory, and are incorporate by reference into each and every specific response as if fully set forth in each such response:

1.      Plaintiffs' responses herein are based on a reasonably diligent and good faith inquiry and represent Plaintiffs' current knowledge as of the date of these responses and objections. Further investigation may reveal additional facts or information that could lead to additions to, changes in, and/or variations from the responses herein. Unless otherwise stated, Plaintiffs' construe the Interrogatories only to require them to use reasonable diligence to locate responsive information. Plaintiffs' factual and legal investigation of this matter is ongoing.

---

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

Plaintiffs reserve the right, but do not assume any obligation, except as required by law, to supplement, amend, correct, clarify, or modify the responses as further information becomes available. Plaintiffs also reserve their right to amend and/or supplement any responses or objections herein. Further, Plaintiffs reserve their right, at trial or during other  proceedings in this action, to rely on documents, evidence, and other materials in addition to the responses provided to the Interrogatories, whether or not such information is now in existence but has not been obtained, despite reasonably diligent and good faith efforts.

2.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they seek information or documents created after the commencement of the instant lawsuit or for the purposes of, or in connection with, the instant litigation.

3.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they seek disclosure of information that is subject to any privilege, immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity recognized by the Federal Rules, federal statute, or any other applicable federal or state rule or law. Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence that Plaintiffs do not object to an Interrogatory on the basis of an applicable privilege.

4.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they purport to impose upon Plaintiffs a duty to secure and provide information that is not in their possession, custody, or control. Unless representations regarding the existence or non-existence of specific information in Plaintiffs' possession, custody, or control are

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

expressly made, Plaintiffs' responses and objections should not be construed as amounting to such representations.

5. Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they purport to require information that is public, already in the possession, custody, or control of Plaintiffs, equally available to Plaintiffs, available from sources to which Plaintiffs also have access, or obtainable from some other source that is more convenient, less burdensome, or less expensive, including, but not limited to, non-parties.

6. Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, the terms "You" "Your" or "Alt" are overbroad to the extent it refers to entities or individuals other than Plaintiffs. Plaintiffs respond to these Interrogatories on behalf of Plaintiffs only.

7. Plaintiffs' disclosure of information is not a waiver of any of the objections set forth herein or an admission or acknowledgment that such material is relevant to the claims or defenses in this action. Further, these responses are without prejudice to and not a waiver of (i) Plaintiffs' right to contend at trial or any other proceeding in this action that such material is inadmissible, irrelevant, immaterial, or not a proper basis for discovery; or (ii) any objection by Plaintiffs to any future use of such material that Defendants may attempt to make. In addition, these responses are solely for the purposes of this action.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 1:** **Provide the Curry Card's complete chain of custody from October 1, 2016, to March 13, 2023, by identifying all persons involved in handling, storing, transporting, or physically possessing the Curry Card during this time period. If the Curry Card was moved or transported at all during this time period, state the reason for the**

---

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

**move. If the complete chain of custody cannot be established for the entire duration, please provide an explanation and provide as much of the chain of custody as possible. (This interrogatory seeks to establish the complete chronological chain of custody of the Curry Card when, and after, it was encapsulated in or around October 2016.)**

**RESPONSE:** Alt objects to this request to the extent it requires the provision of information not known to Alt. Alt also objects to this request because – as written – it is unduly burdensome and imposes a burden disproportionate to the needs of the case. Detailing every person tangentially involved with handling, storing, or transporting the Curry Card over seven years is irrelevant because the Curry Card was in Beckett's tamper-proof slab. There has also been no allegation or suggestion that the card was altered *after* Beckett graded it (which would make no sense for Alt or anyone else to do), or that the Curry Card was swapped with a forgery.[1]

Subject to these objections, and without waiving them, Alt purchased the Curry Card through Goldin Auctions on or around October 31, 2020 from an unknown consignor,[2] and received the Curry Card shortly thereafter. Alt does not have information about the chain of custody of the Curry Card before it first received the card in November 2020. When Alt received the Curry Card, it was in Beckett's tamper-proof slab, with no evidence of any tampering, so Alt would expect that it was the same card, in the same condition, that Beckett had previously graded as a 9.5. After receiving the Curry Card, Alt kept it in its secure vault. That vault is a highly secured location: cards are stored within safes and cabinets inside of the vault, with the higher-dollar assets, like the Curry Card, secured within a coded safe. The Curry Card had been stored within this coded safe location from the time Alt received it until August 30, 2022, when it was removed from Beckett's tamper-proof slab and sent to PSA for re-grading.

---

[1] Indeed, both PSA and Beckett evaluated the card as authentic-altered in 2022.

[2] Alt has subpoenaed Goldin

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

On August 30, 2022, Alt removed the Curry Card from Beckett's tamper-proof slab for it to be sent to PSA for re-grading. On August 31, 2022, Malca-Amit picked up the Curry Card to transport it to PSA (Malca tracking #4152557). The removal of the Curry Card from the slab was captured on video, a copy of which is produced herewith. Alex Liriano and Jonathan Euston were primarily involved with the removal of the Curry Card from the Beckett slab and sending it to PSA for re-grading. Alt has produced sworn affidavits from both Alex Liriano and Jonathan Euston further detailing that process.

On September 1, 2022, Jackie Curriel confirmed that PSA had received the Curry Card by email. Alt has produced a copy of that email.  On September 6, 2022, PSA sent the Curry Card back to Alt via Malca-Amit (tracking #4153721).

On September 13, 2022, Alt sent the Curry Card to Beckett via Malca-Amit. Alt does not have information about the chain of custody of the Curry Card when it was in Beckett's possession. On October 13, 2022, Beckett sent the Curry Card back to Alt via Fedex, Overnight, Signature required. Beckett provided Alt with the following Fedex tracking number: 601544119772.

Alt has remained in possession of the Curry Card since receiving it back from Beckett.

**INTERROGATORY NO. 2: Provide the Curry Card's complete chain of ownership and title from October 1, 2016, to March 13, 2023, by identifying all persons who have held an ownership interest in, or title to, the Curry Card during that time (including the person(s) who purchased the Curry Card for $168,000 on or around October 31, 2020 (*see* Plaintiffs' Amended Complaint, ¶ 54)). If the complete chain of ownership and title cannot be established for the entire duration, please provide an explanation and provide as much of the chain of ownership and title as possible. (This interrogatory seeks to establish the**

---

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

complete chronological chain of ownership and title of the Curry Card when, and after, it was encapsulated in or around October 2016.)

**RESPONSE:** Alt objects to the request as vague, ambiguous, and as calling for a legal conclusion due to the operative terms "ownership" and "title." Subject to these objections, and without waiving them, Alt has owned the Curry Card since around October 31, 2020, when it purchased the card from an unknown consignor through Goldin Auctions. Alt does not know the identity of the consignor, or chain of ownership of the Curry Card before October 2020.

**INTERROGATORY NO. 3:** With respect to your contention that "[a]t the time that BGS received the Steph Curry Rookie Card for grading, it had been trimmed and was short on the top" (*see* Plaintiffs' Amended Complaint, ¶ 38): (i) state all facts upon which you base this contention; (ii) state the name, address, and telephone number of each person who has knowledge of those facts; and (iii) identify all documents you contend support those facts.

**RESPONSE:** Alt objects to answering this interrogatory until after discovery is substantially completed. This is a "contention interrogatory" because it requires the Plaintiffs to identify the scope and/or basis for a legal contention plead in the Complaint, rather than inquiring into specific factual matters known by the Plaintiffs. Subject to these objections, and without waiving them, the primary basis for the referenced contention is Beckett's *own* evaluation of the Curry Card in 2022. Beckett re-evaluated the Curry Card in September 2022 and admitted that the Curry Card had been trimmed and was short on top.  On September 16, 2022, Aram Munoz – a Senior Account Executive for Beckett – informed Darius Sadeghi (Alt Employee) via text message that "The [Curry] card was deemed altered by our graders. It measures short on the top edge [which] is inconsistent with the others" and "After inspecting [the Curry Card] it appears to have been tampered with and cannot put a numeric grade on it anymore." Copies of these text

messages have been produced herewith. PSA also evaluated the Curry Card in September 2022 and determined that it had been trimmed. PSA's grader "determined that the card exhibited characteristics of being altered and designated it as an N1 (Evidence of Trimming) in [PSA's] database." October 28, 2022 Letter from Jackie Curiel (produced herewith).

**INTERROGATORY NO. 4: Identify all persons from whom you have received any statement, whether oral or written, at any time, concerning the claims and defenses of the parties or the allegations in Plaintiffs' Amended Complaint. With respect to each person: (i) describe in reasonable detail the nature and substance of each statement you received and (ii) identify all documents and communications concerning the statement.**

RESPONSE: Alt objects to this interrogatory as overbroad given the vagueness and ambiguity of the term "statement." Alt also objects to identifying any statements made to counsel or at counsel's request in anticipation or in furtherance of litigation on the basis of the attorney-client and attorney work product privileges. Subject to these objections, and without waiving them, Alt has produced the affidavits, declarations, and formal statements it has received in connection with this anticipated litigation. Those are: Affidavit of Alexander Liriano, Affidavit of Jonathan Euston, summary of Jackie Curiel, Chief of Staff for Collectors at PSA.

INTERROGATORY NO. 5: Identify all persons with knowledge concerning the claims and defenses of the parties or the allegations in Plaintiffs' Amended Complaint. With respect to each person: (i) state the name, address, and telephone number of each person with such knowledge and (ii) describe in reasonable detail the nature and substance of such knowledge.

RESPONSE: Alt objects to this interrogatory as overbroad as written, as it requires Alt to identify "all persons" with any knowledge, no matter how tangential or cumulative.

---

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

Subject to that objection, and without waiving it, the following persons are believed to have

knowledge relating to the issues in this case:

Jonathan Euston, employee of Alt[3]
Alexander Liriano, former employee of Alt[4]
Darius Sadeghi, employee of Alt
Leore Avidar, CEO of Alt

These individuals have information about Alt's purchase, storage, submission of the Curry card
for re-grading by PSA and Beckett, and/or Alt's damages.

Beckett Collectibles, LLC (Defendant) and employees thereof
c/o Aaron Z. Tobin, Esq.
Condon Tobin Sladek Thornton Nerenberg PLLC
8080 Park Lane, Suite 700
Dallas, TX 75231
(214) 265-3800

Beckett and its employees have information about its grading and re-grading of the Steph Curry
card, as well as its practices, policies, etc.

Professional Sports Authenticator ("PSA"), a division of Collectors Universe, Inc.
1610 E. St. Andrew Place
Santa Ana, CA 92705
Phone: (949) 567-1234

Jackie Curiel
Chief of Staff
Collectors Universe, Inc.
1610 E. St. Andrew Place
Santa Ana, CA 92705
Phone: (949) 303-6129
curielj@collectors.com

PSA and its employees, including Ms. Curiel, have information about its grading and handling of
the Steph Curry Card in 2022.

Goldin Auctions
160 E Ninth Ave Ste C
Runnemede, NJ 08078

---

[3] Alt objects to providing the contact information of its current employees on privacy and relevance grounds. Alt
employees should be contacted through Alt's counsel.
[4] It is not yet known whether Mr. Hammervold will represent Mr. Liriano. Alt requests that Beckett not contact him
until that is resolved. Mr. Liriano's last known contact information is: 35 Montross Street, White Plains, NY 10603,
alexanderliriano10@gmail.com, 914-906-8521.

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

(856) 767-8550

Goldin Auctions has information about the seller and the sale of the Curry card to Alt.

John Doe 1 (person who submitted the Steph Curry Card to BGS for grading and/or sold it to Alt through Goldin Auctions)
Contact information unknown

John Doe 1 has information about the Steph Curry card, BGS' grading of it, and the sale of the Curry card to Alt.

**INTERROGATORY NO. 6:** Describe any and all method(s) or analyses Alt used to determine the value of the Curry Card at any time from October 1, 2016, to March 13, 2023, and identify all documents you contend support such valuation(s).

**RESPONSE:** Alt objects to this interrogatory to the extent it requires Alt to disclose information or valuations performed or provided at the direction of counsel in connection with this litigation or to disclose privileged communications with experts. When Alt determines which experts it may present at trial, it will provide appropriate disclosures of those experts in accordance with the Court's scheduling order. Subject to these objections, and without waiving them, Alt directs Beckett to the valuation it produced for the Curry Card pursuant to Fed. R. Civ. P. 33(d). Alt has also searched for and produced communications or documents where the value of the Curry Card is informally discussed by Alt employees. At this time, following a reasonable search, no other non-privileged "valuations" have yet been identified.

---

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

**<u>INTERROGATORY NO. 7:</u> State the date your relationship with Beckett was established and describe the nature of such relationship.**

**RESPONSE:** Alt objects to this interrogatory as vague and ambiguous as to the operative term "relationship." But Alt is willing to meet and confer about what type of information Beckett is seeking with this interrogatory and to provide a supplemental response.

**RESPECTFULLY SUBMITTED,**

<u>**S/Mark Hammervold**</u>
Mark Hammervold, Il #6320744
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
Mark@Hammervoldlaw.Com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 13, 2023, a true and correct copy of the foregoing was served upon all counsel of record in this proceeding by email:

Aaron Z. Tobin (atobin@condontobin.com)
Jessica Steele (jsteele@condontobin.com)
Condon Tobin
8080 Park Lane, Suite 700
Dallas, Texas 75231

*Attorneys for Defendant*

*/s/ Mark Hammervold*

---

**Plaintiffs' Responses to Defendant's First Set of Interrogatories**

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> BECKETT COLLECTIBLES, LLC, <br><br>    Defendant. | No. 3:22-cv-02867-N |

## PLAINTIFFS' RESPONSES TO DEFENDANT'S 2ND REQUEST FOR PRODUCTION

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. hereby provide this response to Defendant Beckett Collectibles, LLC's Second Request for Production.

## PRELIMINARY STATEMENT AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Insofar as the "Definitions/Instructions" are incorporated into each Request, the following General Objections also apply to each and every Response, and are incorporated by reference into each and every specific response as if fully set forth in each such response:

1. Plaintiffs' responses herein are based on a reasonably diligent and good faith inquiry. Further investigation may result in the identification of further responsive documents. Plaintiffs' factual and legal investigation of this matter is ongoing. Plaintiffs reserve the right, but do not assume any obligation, except as required by law, to supplement, amend, correct, clarify, or modify the responses as further information becomes available or further documents are identified. Plaintiffs also reserve their right to amend and/or supplement any responses or

---

**Plaintiffs' Response to Defendant's Second Request for Production**

objections herein. Further, Plaintiffs reserve their right, at trial or during other  proceedings in this action, to rely on documents, evidence, and other materials in addition to the responses provided to the Responses, whether or not such information is now in existence but has not been obtained, despite reasonably diligent and good faith efforts.

2.      Plaintiffs object to the Requests to the extent that, in light of the Definitions and Instructions, they seek information or documents created after the commencement of the instant lawsuit or for the purposes of, or in connection with, the instant litigation.

3.      Plaintiffs object to the Requests to the extent that, in light of the Definitions and Instructions, they request documents that are subject to any privilege, immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity recognized by the Federal Rules, federal statute, or any other applicable federal or state rule or law. Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence that Plaintiffs do not object to a Request on the basis of an applicable privilege.

4.      Plaintiffs object to the Requests to the extent that, in light of the Definitions and Instructions, they purport to impose upon Plaintiffs a duty to secure and produce documents not in their possession, custody, or control. Unless representations regarding the existence or non-existence of specific information in Plaintiffs' possession, custody, or control are expressly made, Plaintiffs' responses and objections should not be construed as amounting to such representations.

5.      Plaintiffs object to the Requests to the extent that, in light of the Definitions and Instructions, they purport to require production of documents that is public, already in the possession, custody, or control of Defendants, equally available to Defendants, available from

**Plaintiffs' Response to Defendant's Second Request for Production**

sources to which Defendants also have access, or obtainable from some other source that is more convenient, less burdensome, or less expensive, including, but not limited to, non-parties.

6.      Plaintiffs' production of documents is not a waiver of any of the objections set forth herein or an admission or acknowledgment that such material is relevant to the claims or defenses in this action. Further, these responses are without prejudice to and not a waiver of (i) Plaintiffs' right to contend at trial or any other proceeding in this action that such material is inadmissible, irrelevant, immaterial, or not a proper basis for discovery; or (ii) any objection by Plaintiffs to any future use of such material that Defendants may attempt to make. In addition, these responses are solely for the purposes of this action.

## FIRST REQUEST FOR PRODUCTION

**27.      All documents related to every trading card You have submitted to any grading company that was deemed to have been trimmed or altered.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Plaintiffs also object to this request as overly burdensome and not reasonably calculated to result in the production of any relevant evidence because Plaintiffs' submission of other cards has no bearing on any disputed issue in the case, but will require the Plaintiffs to undertake a significant investigation to locate a significant number of documents. This is particularly true because Alt will often submit customers' cards to grading companies for evaluation as a service. The cards those customers choose to submit and the grades given by the grading companies have no bearing on any issue in this case. Without waiving these objections, Beckett already has access to and has produced records of other trading cards submitted

by and/or through Alt to Beckett for grading. To the extent these Beckett plans to make some type of showing based on Alt's submission of other trading cards for grading, it should be able to do so with those records.

**28.    All documents and communications You have received from any third party that relate to the allegations set forth in You Complaint, whether such documents support or fail to support, contradict, or dispute any of those allegations, without limitation, all communications between You and the persons identified in Your Rule 26 Initial Disclosures related to this litigation.**

**RESPONSE:** Plaintiffs object to this request as overly broad and vague. Plaintiff's also object to the definition of "You" as overly expansive, resulting in an unduly burdensome obligation to search for responsive documents. Plaintiffs also incorporate by reference their response to Requests 30, 43, 45-47 of Defendant's First Request for Production. Plaintiffs have already conducted a reasonable search for responsive documents to similarly-worded requests for production. If Defendant can provide more targeted guidance as to documents they are seeking, Plaintiffs are willing to confer and try to reach an agreement about supplementing their production.

**29.    All documents and communications relied upon in preparing and/or identified in Your responses to Defendant's Second Set of Interrogatories.**

**RESPONSE:** Plaintiffs will produce those documents.

**30.    All documents concerning or evidencing Your purported damages as alleged in the Complaint. Please include all documents identifying the nature of the alleged damages, and notes, witness statements, calculations or other document which substantiates the nature, type and amount of any damages claim.**

**RESPONSE:** Plaintiffs direct Defendant to their initial disclosures and the reports of their experts,

as well as documents previously produced in response to Defendant's First Set of Requests for Production. Plaintiffs object to producing any communications between Alt employees and Counsel in connection with or in anticipation of this lawsuit as privileged attorney-client communications and/or attorney work product. Subject to this limitation, Plaintiffs will produce responsive documents.

**31.    All documents evidencing or in any way supporting Your efforts to mitigate any purported damages.**

**RESPONSE:** Plaintiffs object to this request as conclusory and vague. Subject to that objection, Plaintiffs were damaged because the Curry Card was trimmed when Beckett had certified it was not. There is nothing Plaintiffs could do to stop or undo the Curry Card having been trimmed. Furthermore, Plaintiffs have not and could not have "mitigated" their damages by selling the Curry Card because they were obligated to preserve the Curry Card as evidence for this claim. If Defendant can provide more targeted guidance as to documents they are seeking, Plaintiffs are willing to confer and try to reach an agreement about supplementing their production.

**32.    All documents and communications related to every trading card You purchased from Christoper Ladd that has been deemed to have been trimmed or altered in any way.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Subject to that objection, Plaintiffs have already produced responsive documents related to the Curry Card at issue in this case. Otherwise, Plaintiffs are not aware of any other purchase it made of a trading card from Christoper Ladd that was

---

**Plaintiffs' Response to Defendant's Second Request for Production**

deemed to have been trimmed or altered.

**33.    All documents and communications related to every trading card You purchased from Goldin Auctions that has been deemed to have been trimmed or altered in any way.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Subject to that objection, Plaintiffs have already produced responsive documents related to the Curry Card at issue in this case. Otherwise, Plaintiffs are not aware of any other purchase it made of a trading card from or through Goldin Auctions that were deemed to have been trimmed or altered.

**34.    All documents and communications related to every trading card You have broken out of or removed from tamper proof [or] similar protective slabs.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs' employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Plaintiffs also object to this request as overly burdensome and not reasonably calculated to result in the production of any relevant evidence because Plaintiffs' documents and communications related to cracking of other slabbed cards will require the Plaintiffs to undertake a significant investigation to locate a significant number of documents that will have no bearing on any issue in this case. Alt may crack the slabs less than 100 cards a year. For each such instance, there may be any number of communications that "relate" to that. If Defendant can identify more targeted documents they are seeking or make a showing of the

---

**Plaintiffs' Response to Defendant's Second Request for Production**

relevance of such documents to this case, Plaintiffs are willing to confer and try to reach an agreement about supplementing their production.

**35.    All documents and communications related to every lawsuit You have filed or been a party to related to the Curry Card.**

**RESPONSE:** Plaintiffs object to this request insofar as "all documents and communications related to" is overly broad. Plaintiffs object to producing or cataloging the many attorney-client or work product communications that relate to the lawsuits they have filed and are pursuing. Subject to these objections, Alt has only filed or been a party to two lawsuits related to the Curry Card: (1) this lawsuit and (2) Alt's lawsuit against Christoper Ladd in the Western District of Wisconsin (of which Defendant is already aware). Defendant already has the vast majority of non-privileged documents and communications that "relate" to this lawsuit in its possession. The lawsuit against Christoper Ladd is in its infancy. Mr. Ladd has not yet filed an answer to Alt's Complaint. The pleadings from that case are equally available to the Defendant on Pacer. Plaintiffs' object to producing every communication it has going forward in that case, as it will be unduly burdensome and not calculated to result in the production of relevant evidence. If Defendant can identify more targeted documents they are seeking or make a showing of the relevance of such documents to this case, Plaintiffs are willing to confer and try to reach an agreement about supplementing their production.

**36.    All documents and communications related to every lawsuit You have filed or been a party to related to the trimming or altering of a sports trading card.**

**RESPONSE:** Plaintiffs object to this request insofar as "all documents and communications related to" is overly broad. Plaintiffs object to producing or cataloging the many attorney-client or work product communications that relate to the lawsuits they have filed and are pursuing. Subject

---

**Plaintiffs' Response to Defendant's Second Request for Production**

to these objections, Alt has only filed or been a party to two lawsuits related to the trimming or altering of a sports trading card: (1) this lawsuit and (2) Alt's lawsuit against Christoper Ladd in the Western District of Wisconsin (of which Defendant is already aware). Defendant already has the vast majority of non-privileged documents and communications that "relate" to this lawsuit in its possession. The lawsuit against Christoper Ladd is in its infancy. Mr. Ladd has not yet filed an answer to Alt's Complaint. The pleadings from that case are equally available to the Defendant on Pacer. Plaintiffs' object to producing every communication it has going forward in that case, as it will be unduly burdensome and not calculated to result in the production of relevant evidence. If Defendant can identify more targeted documents they are seeking or make a showing of the relevance of such documents to this case, Plaintiffs are willing to confer and try to reach an agreement about supplementing their production.

**37.    All documents and communications between You and Christoper Ladd.**

**RESPONSE:** To the extent that this request includes communications between Plaintiffs' counsel and counsel for Mr. Ladd with respect to their ongoing lawsuit, Plaintiffs incorporate their objection from their response to Requests #35. Subject to that limitation, Plaintiffs will produce responsive documents.

**38.    All documents and communications between You and Keith Koenig.**

**RESPONSE:** Following a reasonable search, neither Plaintiffs nor Plaintiffs' Counsel have communicated with Mr. Koenig to date.

---

**39.    All documents and communications related to every trading card You purchased from Keith Koenig that has been deemed to have been trimmed or altered in any way.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Subject to that objection, Plaintiffs are not aware of any purchase they made of any trading card from Keith Koenig that was deemed to have been trimmed or altered.

**40.    All documents and communications related to Your Beckett member account(s).**

**RESPONSE:** Plaintiffs object to this request as overly broad, unduly burdensome, impermissibly vague, and not reasonably calculated to result in the production of any relevant evidence. Plaintiffs also object that most, if not all responsive documents (whatever the nature of the documents Defendant is seeking) would already be in Defendant's possession. Subject to those objections, if Defendant can identify more targeted documents they are seeking or make a showing of the relevance of such documents to this case, Plaintiffs are willing to confer and try to reach an agreement about supplementing their production.

**RESPECTFULLY SUBMITTED,**

<u>**S/Mark Hammervold**</u>
Mark Hammervold, Il #6320744
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
Mark@Hammervoldlaw.com


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on January 5, 2024, a true and correct copy of the foregoing was served upon all counsel of record in this proceeding by email:

Aaron Z. Tobin (atobin@condontobin.com)
Kendal Reed (kreed@condontobin.com)
Abigail Campbell (acampbell@condontobin.com)
Condon Tobin
8080 Park Lane, Suite 700
Dallas, Texas 75231

*Attorneys for Defendant*

*/s/ Mark Hammervold*

---

**Plaintiffs' Response to Defendant's Second Request for Production**

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ALT SPORTS CARD FUND GP LLC, as the General Partner of Alt Sports Card Fund, L.P., ALT PLATFORM, INC.,<br><br>　　Plaintiffs,<br><br>v.<br><br>BECKETT COLLECTIBLES, LLC,<br><br>　　Defendant. | No. 3:22-cv-02867-N |

## PLAINTIFFS' RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs Alt Sports Card Fund GP LLC, as the General Partner of Alt Sports Card Fund, L.P., and Alt Platform, Inc. hereby provide this response to Defendant Beckett Collectibles, LLC's Second Set of Interrogatories.

## PRELIMINARY STATEMENT AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Insofar as the "Definitions/Instructions" are incorporate into each Interrogatory, the following General Objections also apply to each and every Interrogatory, and are incorporate by reference into each and every specific response as if fully set forth in each such response:

1.　　Plaintiffs' responses herein are based on a reasonably diligent and good faith inquiry and represent Plaintiffs' current knowledge as of the date of these responses and objections. Further investigation may reveal additional facts or information that could lead to additions to, changes in, and/or variations from the responses herein. Unless otherwise stated, Plaintiffs' construe the Interrogatories only to require them to use reasonable diligence to locate responsive information. Plaintiffs' factual and legal investigation of this matter is ongoing.

---

**Plaintiffs' Responses to Defendant's Second Set of Interrogatories**

Plaintiffs reserve the right, but do not assume any obligation, except as required by law, to supplement, amend, correct, clarify, or modify the responses as further information becomes available. Plaintiffs also reserve their right to amend and/or supplement any responses or objections herein. Further, Plaintiffs reserve their right, at trial or during other  proceedings in this action, to rely on documents, evidence, and other materials in addition to the responses provided to the Interrogatories, whether or not such information is now in existence but has not been obtained, despite reasonably diligent and good faith efforts.

2.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they seek information or documents created after the commencement of the instant lawsuit or for the purposes of, or in connection with, the instant litigation.

3.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they seek disclosure of information that is subject to any privilege, immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity recognized by the Federal Rules, federal statute, or any other applicable federal or state rule or law. Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence that Plaintiffs do not object to an Interrogatory on the basis of an applicable privilege.

4.      Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they purport to impose upon Plaintiffs a duty to secure and provide information that is not in their possession, custody, or control. Unless representations regarding the existence or non-existence of specific information in Plaintiffs' possession, custody, or control are

---

**Plaintiffs' Responses to Defendant's Second Set of Interrogatories**

expressly made, Plaintiffs' responses and objections should not be construed as amounting to such representations.

5.    Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, they purport to require information that is public, already in the possession, custody, or control of Plaintiffs, equally available to Plaintiffs, available from sources to which Plaintiffs also have access, or obtainable from some other source that is more convenient, less burdensome, or less expensive, including, but not limited to, non-parties.

6.    Plaintiffs object to the Interrogatories to the extent that, in light of the Definitions and Instructions, the terms "You" "Your" or "Alt" are overbroad to the extent it refers to entities or individuals other than Plaintiffs. Plaintiffs respond to these Interrogatories on behalf of Plaintiffs only.

7.    Plaintiffs' disclosure of information is not a waiver of any of the objections set forth herein or an admission or acknowledgment that such material is relevant to the claims or defenses in this action. Further, these responses are without prejudice to and not a waiver of (i) Plaintiffs' right to contend at trial or any other proceeding in this action that such material is inadmissible, irrelevant, immaterial, or not a proper basis for discovery; or (ii) any objection by Plaintiffs to any future use of such material that Defendants may attempt to make. In addition, these responses are solely for the purposes of this action.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 8:** **Identify every trading card You have submitted for grading to any grading company that was deemed to have been trimmed or altered, describe the reason such determination was made, the grading company, and when the card was graded.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Plaintiffs also object to collecting and providing information about customers' trading cards that Alt submitted on customers' behalf as a courtesy. Plaintiffs also object to this request as overly burdensome and not reasonably calculated to result in the production of any relevant evidence because Plaintiffs' submission of other cards has no bearing on any disputed issue in the case, but will require the Plaintiffs to undertake a significant investigation into a significant number of documents. Subject to these objections, after reasonably inquiry, Plaintiffs are not aware of any other cards owned by Plaintiffs – besides the Curry Card – that Plaintiffs submitted for grading that were deemed to be trimmed or altered.

**INTERROGATORY NO. 9:** **Identify every trading card You purchased from Keith Koenig that have been deemed to have been trimmed or altered, the date You purchased such card, the date You discovered or were informed the card had been trimmed or altered, and who determined the card was trimmed or altered.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly

---

**Plaintiffs' Responses to Defendant's Second Set of Interrogatories**

burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Subject to that objection, Plaintiffs are not aware of any such purchases from Keith Koenig.

**INTERROGATORY NO. 10:** **Identify every trading card You purchased from Christopher Ladd that have been deemed to have been trimmed or altered, the date You purchased such card, the date You discovered or were informed the card had been trimmed or altered, and who determined the card was trimmed or altered.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Subject to that objection, Plaintiffs are not aware of any such purchases other than the Curry Card. Plaintiffs have already provided the requested information as to the Curry Card in their Responses to Defendant's First Set of Interrogatories.

**INTERROGATORY NO. 11:** **Identify every trading card You purchased from Goldin Auctions that have been deemed to have been trimmed or altered, the date You purchased such card, the date You discovered or were informed the card had been trimmed or altered, and who determined the card was trimmed or altered.**

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Subject to that objection, Plaintiffs are not aware of any such purchases other than the Curry Card. Plaintiffs have already provided the requested information as to the Curry Card in their Responses to Defendant's First Set of Interrogatories.

**Plaintiffs' Responses to Defendant's Second Set of Interrogatories**

**INTERROGATORY NO. 12:** Identify every trading card You have broken out of or removed from tamper proof or similar protective slabs, the date of the removal, why the trading card was removed, and if the trading card was identified as trimmed or altered in any way.

**RESPONSE:** Plaintiffs object to the definition of "You" to include persons or entities beyond the Plaintiffs. Many of Plaintiffs' employees are collectors and it would be unreasonable, unduly burdensome, and inappropriate for the Plaintiffs to have to track down information or documents about any employees' personal property. Plaintiffs also object to this request as overly burdensome and not reasonably calculated to result in the production of any relevant evidence because it would will require the Plaintiffs to undertake a significant investigation to provide responsive information that will have no bearing on any issue in this case. Alt may crack the slabs less than 100 cards a year, but does not keep business records that allow for the easy retrieval of the information requested here as to each card. Subject to these objections, Plaintiffs are not aware of any other instance (besides the Curry Card) where they have removed a graded card from a slab that was later deemed to have been trimmed or altered. If Defendant can identify more targeted information they are seeking or make a showing of the relevance of such information to this case, Plaintiffs are willing to confer and try to reach an agreement about supplementing their response.

**INTERROGATORY NO. 13:** **Identify each and every lawsuit You have filed or been a party to related to the Curry Card, please specify the dates of, parties to, claims involved, and outcomes of each lawsuit.**

**RESPONSE:** Plaintiffs have only filed or been a party to two lawsuits related to the Curry Card: (1) this lawsuit and (2) Alt's lawsuit against Christoper Ladd filed in the Western District of Wisconsin on October 27, 2023. That latter lawsuit is in its infancy, so there is no outcome yet. The claims involved are set forth in the complaint, a copy of which is being produced herewith.

**INTERROGATORY NO. 14:** **Identify each and every lawsuit You have filed or been a party to related to the trimming or altering of a sports trading card, please specify the dates of, parties to, claims involved, and outcomes of each lawsuit.**

**RESPONSE:** Alt has only filed or been a party to two lawsuits related to the trimming or altering of a sports trading card: (1) this lawsuit and (2) Alt's lawsuit against Christoper Ladd filed in the Western District of Wisconsin on October 27, 2023. That latter lawsuit is in its infancy, so there is no outcome yet. The claims involved are set forth in the complaint, a copy of which is being produced herewith.

**INTERROGATORY NO. 15:** **Describe, in detail, all actions You have taken to mitigate any damages You claim to have suffered and for which You seek recovery in this lawsuit.**

**RESPONSE:** Plaintiffs object that this interrogatory is vague and impermissibly requires Plaintiffs to make a legal conclusion. Subject to that objection, Plaintiffs were damaged because the Curry Card was trimmed when Beckett had certified it was not. There is nothing Plaintiffs could do to stop or undo the Curry Card having been trimmed. Furthermore, Plaintiffs have not and could not have "mitigated" their damages by selling the Curry Card because they were obligated to preserve the Curry Card as evidence for this claim. If Defendant can provide more

targeted guidance as to documents they are seeking, Plaintiffs are willing to confer and try to reach an agreement about supplementing their response.

**INTERROGATORY NO. 16:**  **Identify and itemize each and every element and item of actual damages incurred by You as alleged in Your Complaint. As part of your answer to this interrogatory please provide:**

**a. the total amount for each item of damages;**

**b. the category and claim to which each item of damages relates;**

**c. the factual basis for each item of damages;**

**d. every person who has possession, custody, or control of each such factual information and/or document(s); and**

**e. an explanation of how each item of damages was computed, including any mathematical formula used.**

**RESPONSE:** Alt has already provided this information in its initial disclosures and expert reports. If Defendant can provide more targeted guidance as to the information they are seeking, Plaintiffs are willing to confer and try to reach an agreement about supplementing their response.

**RESPECTFULLY SUBMITTED,**

**S/Mark Hammervold**
Mark Hammervold, Il #6320744
Hammervold Law
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
Mark@Hammervoldlaw.com

**Plaintiffs' Responses to Defendant's Second Set of Interrogatories**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 5, 2024, a true and correct copy of the foregoing was served upon all counsel of record in this proceeding by email:

> Aaron Z. Tobin (atobin@condontobin.com)
> Kendal Reed (kreed@condontobin.com)
> Abigail Campbell (acampbell@condontobin.com)
> Condon Tobin
> 8080 Park Lane, Suite 700
> Dallas, Texas 75231
>
> *Attorneys for Defendant*

<i><u>/s/ Mark Hammervold</u></i>

---

**Plaintiffs' Responses to Defendant's Second Set of Interrogatories**

# EXHIBIT 13

# HAMMERVOLD LAW

**MARK HAMMERVOLD**
Licensed to practice
in Illinois, Tennessee, and Florida

**January 19, 2024**

**VIA EMAIL**
Abigail Campbell
Aaron Tobin
Kendal Reed

### RE: Civil No.: 3:22-cv-02867, Alt v. Beckett, Discovery Issues.

Abigail,

I am writing in response to your January 16, 2024 letter. I hope this letter will resolve all outstanding issues or at least set us on the path of resolving these issues constructively between the Parties, so that we do not need to bother or tax the court with unnecessary or unripe disputes.

**Slack Conversations**

I already produced copies of these conversations, and then produced them in another format when you objected. You asked yesterday that these be produced in native format. I worked with Alt and they have provided me with what appear to be the native format files, but I need to figure out how to open those files and review them before I can produce them. I should be able to do that next week.

**Confidentiality Designations**

While I disagree with your objections to our confidentiality designations, I will agree to withdraw them to avoid a dispute.

**Documents Regarding Submission of Curry Card to PSA**

You had previously asked me to produce documents regarding a prior attempt to cross-grade the Curry Card. I want to provide some information I have received relevant to your request.

I investigated and Alt did not actually send the Curry Card to PSA for cross-grading before August 2022. The Slack comment that prompted you to infer that Alt previously sent the Curry Card to PSA for cross-grading (before August 2022) was from Darius Sadeghi. Mr. Sadeghi has informed me – and will testify as such when you depose him – that when he made that comment he was confusing the Curry Card with one or more other cards that Alt purchased from Goldin around the same period of time that Alt had Goldin send directly to PSA for grading.[1]

But with this letter, Alt is producing the following documents related to this information:
1. Invoice from Goldin for Curry Card – showing the Curry Card was sent from Goldin directly to Alt.
2. Invoice for shipping of the Curry Card from Goldin to Alt.

---

[1] It is obvious from the comment that it was a spur of the moment thought.

155 S. Lawndale Ave., Elmhurst, IL 60126· **T:** 405.509.0372 · **E:** mark@hammervoldlaw.com · **W:** Hammervoldlaw.com

**96**

**HAMMERVOLD LAW**

**MARK HAMMERVOLD**
Licensed to practice
in Illinois, Tennessee, and Florida

3. Email chain regarding other cards purchased from Goldin sent directly to PSA during same time period as the Curry Card.

4. Email chain regarding the direct shipment of the Curry Card from Goldin to Alt.

5. Email chain with PSA regarding cross-over of another card.

6. A spreadsheet reflecting fees paid by Alt for grading of cards – showing that Alt only paid PSA and BGS for grading of the Curry Card once (each) in August/Sept. 2022.[2]

**Second Set of Discovery Requests**

As a preliminary matter, I do not believe you have yet complied with the local rules with respect to your obligation to meet and confer with me about our responses to your Second Set of Discovery Responses before filing a motion to compel. When I first received your January 16, 2024 letter, I asked to schedule a call so that we could discuss the issues in more detail. You refused and indicated that you would be moving forward with a motion to compel regardless, unless I agreed with your letter in its totality. I would caution you to change course and to take the meet and confer requirement seriously before moving to compel. On his website, Judge Godbey warns: "Seeking relief from the Court on discovery disputes prior to conducting a meaningful, substantive conference with the opposing party is STRONGLY discouraged." *See also Layton v. Mainstage Mgmt.,* 2023 U.S. Dist. LEXIS 111240, *4-5 (Jun. 28, 2023) (J. Godbey) (denying motion to compel where movant's counsel violated the "requirement to meet and confer regarding the specific discovery dispute").

Notwithstanding, I do want to address a few of the issues.

1. You are correct that I inadvertently did not send a few of the documents I had meant to produce with the responses. I have now sent those contemporaneously with this letter. Those includes documents responsive to RFP 30. Our experts relied on data of card sales directly from Alt's platform. That information is available at: https://app.alt.xyz/research/d57f6652-e7eb-11ea-bd44-02d4568f26ba?grade=BGS-9.5 Anyone can access it by creating a free account. I did that in order to screenshot the information for you, but if you prefer it in another form, you can get it yourself.

2. Regarding RFPs 27 and 24, as well as Interrogatories 8 and 9, I do not think we are understanding each other about the relevance of Alt's submission of other cards for grading. However, I was able to identify one instance where Alt submitted a card that ended up being trimmed. I have produced an email chain about that instance and will update the response to the interrogatory we previously sent.

3. Regarding your objections to our objections to RFP 35, 37, and 40, it is not clear if we even have any dispute or if this is purely a semantic skirmish.

---

[2] I have redacted expenses for all other cards, as the information is irrelevant and confidential.

155 S. Lawndale Ave., Elmhurst, IL 60126 · **T:** 405.509.0372 · **E:** mark@hammervoldlaw.com · **W:** Hammervoldlaw.com

**97**

**HAMMERVOLD LAW**

MARK HAMMERVOLD
Licensed to practice
in Illinois, Tennessee, and Florida

If you have any further concerns or questions about these issues, I would implore you to make a good faith effort to confer with me about them before asking the Court to intervene.

Regards,

Mark Hammervold

155 S. Lawndale Ave., Elmhurst, IL 60126· **T:** 405.509.0372 · **E:** mark@hammervoldlaw.com · **W:** Hammervoldlaw.com

**98**

# EXHIBIT 14

**In the Matter Of:**

ALT SPORTS CARD V. BECKETT COLL.

3:22-cv-02867-N

---

**DARIUS SADEGHI**

*February 02, 2024*

---



1              IN THE UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF TEXAS

3                      DALLAS DIVISION

4   ALT SPORTS CARD FUND GP,      )

5   LLC, as the General          )

6   Partner of Alt Sports        )

7   Card Fund, L.P., and ALT      )

8   PLATFORM, INC.,              )

9           Plaintiffs,          )

10       -vs-                    ) Case No.

11  BECKETT COLLECTIBLES,        ) 3:22-cv-02867-N

12  LLC,                         )

13          Defendant.           )

14

15       The videotaped videoconference deposition of

16  DARIUS SADEGHI, called for examination, taken

17  pursuant to the Federal Rules of Civil Procedure of

18  the United States District Courts pertaining to the

19  taking of depositions, taken remotely before ALICE

20  M. SCHWINGER, CSR NO. 84-2913, a Certified

21  Shorthand Reporter of the State of Illinois, on the

22  2nd day of February, A.D. 2024, commencing at 10:00

23  a.m. Central Standard Time.

24



```
 1   APPEARANCES:

 2        HAMMERVOLD LAW, LLC,

 3        (155 South Lawndale Avenue,

 4        Elmhurst, Illinois 60126,

 5        405/509-0372), by:

 6        MR. MARK HAMMERVOLD,

 7            appeared on behalf of the Plaintiffs;

 8

 9        CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC,

10        (8080 Park Lane, Suite 700,

11        Dallas, Texas 75231,

12        214/265-3800), by:

13        MR. KENDAL B. REED,

14        MS. ABIGAIL R.S. CAMPBELL,

15            appeared on behalf of the Defendant.

16

17

18

19

20

21

22   VIDEOTAPED BY:  EDWIN ARLEQUIN

23   REPORTED BY:  ALICE M. SCHWINGER, CSR

24                CSR No. 84-2913.
```



1  whether it was worth that gamble to go get it cross

2  graded; right?

3        A.    Yes.  Correct.

4        Q.    Okay.  Now, when the card is owned by

5  the fund, and when you say owned by the fund, do

6  you mean Alt Sports Card Fund, LP?

7        A.    Yes.

8        Q.    Okay.  When the card is owned by the

9  fund and a decision is needing to be made to crack

10  it out of the card and have it cross graded, does

11  anyone have to get permission from the fund other

12  than Leore to get it -- to go through that process?

13        A.    No.

14        Q.    Now, you said that this decision was

15  made in August of '22; right?

16        A.    Yes.

17        Q.    With the Curry card at issue here, any

18  time during the previous two years that the fund

19  had owned the card, had it been considered for

20  cross grading?

21        A.    Yes.

22        Q.    When?

23        A.    It was at the National Sports Card

24  Convention in 20 -- I can't remember if it was



1   2021 -- I think it was -- it was 2021, yeah.

2         Q.    2021, you said National Sports Card

3   Convention?

4         A.    Yes.

5         Q.    And where was that at?

6         A.    Chicago.

7         Q.    Describe for me how it was considered at

8   that convention for cross grading.

9         A.    Yeah, so the CEO of PSA basically just

10  took, like, a handful of cards from us.  And there

11  was no paperwork or anything involved.  He just

12  took the cards, they took a look at them, and if

13  any of them would have cross graded, you know, we

14  would have at that point, like, paid the fee to

15  cross grade it and filled out the paperwork.  So it

16  was kind of more like an informal look at a handful

17  of cards.

18        Q.    Okay.  So this was --

19        A.    Still within the case.

20        Q.    I'm sorry?

21        A.    Still -- and they were all still within

22  the case, obviously, so there was no -- no cracking

23  or anything.

24        Q.    Okay.  So this was physically there in



1  where it -- what was it -- that had one 9.0 in the

2  corners.  Do you remember the subgrades on the

3  third one?

4      A.    The same.

5      Q.    It had 9.0 on the corners?

6      A.    Yeah.

7      Q.    Do you recall when it was sold?

8      A.    I do not.

9      Q.    But you have records of that; right?

10     A.    Yes.

11     MR. REED:  Let's go off the record a minute

12  here.

13     THE VIDEOGRAPHER:  We're going off the record

14  at 10:19 a.m.

15            (WHEREUPON, a short break was

16             taken.)

17     THE VIDEOGRAPHER:  We are back on the record

18  at 10:46 a.m.

19  BY MR. REED:

20     Q.    All right.  We're back on the record,

21  and you understand you're still under oath?

22     A.    Yes.

23     Q.    Were you involved in searching for and

24  producing documents in this case?



1        A.    Yes.

2        Q.    What was your involvement?

3        A.    Like --

4        MR. HAMMERVOLD:  So I just want to instruct

5    you again that to the extent that your answer would

6    include communications with counsel, don't disclose

7    communications with counsel.

8    BY THE WITNESS:

9        A.    Yeah, it was just retrieving, like,

10   Slack messages and e-mails that were involved.

11   BY MR. REED:

12       Q.    So you retrieved some Slack messages,

13   e-mails.  Anything else?

14       A.    Any, like, documents that were related

15   to, like, the purchase of the card, stuff like

16   that.

17       Q.    Did you search for text messages?

18       A.    I believe I did, yeah.

19       Q.    And what search did you perform for text

20   messages?

21       A.    My text messages with the representative

22   from BGS.

23       Q.    With whom?

24       A.    His name is Aram.



1    Q.    And so you provided all your text

2    messages with Aram?

3    A.    Yeah.

4    Q.    Anybody else with Beckett?

5    A.    That was the only person I've spoken to

6    from Beckett.

7    Q.    How about e-mails with anyone from

8    Beckett?  Did you search for those?

9    A.    No.

10    Q.    Why not?

11    A.    I didn't have e-mail correspondence with

12    Beckett.

13    Q.    No e-mail correspondence with anyone at

14    Beckett; correct?

15    A.    No.

16    Q.    That's correct?

17    A.    That's correct, yeah.

18    Q.    Now, what you're telling me is you

19    didn't do any search because you just knew you

20    didn't communicate by e-mail with anyone at

21    Beckett; is that correct?

22    A.    Correct.

23    Q.    Now, when you retrieved Slack messages,

24    how did you go about doing that?



1          A.    There's -- there's, like, a channel

2    where most of these conversations took place, like

3    our grading channel, so I just went through there

4    and took screenshots or videos.

5          Q.    What's the channel name?

6          A.    It was grading-escalation-squad.

7          Q.    And who's included in that channel, the

8    grading-escalation-squad?

9          A.    I don't know everyone who is included,

10   but myself, Leore, members of the ball team, the

11   other fund partners.  That's probably a good list.

12         Q.    Now, in Slack when you look at that

13   channel, you can see who is included; right?

14         A.    Yeah.

15         Q.    Did you provide a list of those?

16         A.    No, I was not asked to.

17         Q.    And so you went through your Slack

18   messages in that channel and you took screenshots

19   and videos?

20         A.    Yeah.

21         Q.    Of every communication within that

22   channel?

23         A.    No, just of the ones that related to the

24   Curry card.



1    Q.    And so how did you make the decision
2    that it was related to the Curry card?
3    A.    Because the messages either had to do
4    with the decision to crack the card or sending the
5    card or getting the card back.  It was pretty clear
6    which messages had to do with the card and which
7    didn't.
8    Q.    So you just went through the entire
9    channel and made that decision yourself; right?
10    A.    Yeah.  Just the date, like, not the
11    entire channel, just the time frame from when this
12    took place.
13    Q.    What time frame did you search?
14    A.    It was, like, August 2022 through -- I
15    can't remember the end, but it was maybe a month or
16    two.
17    Q.    So August 2022 through when?
18    A.    Through, like, October, we could say.
19    Q.    Of 2022?
20    A.    Yeah.
21    Q.    Now, this isn't the only Slack channel,
22    right, that you have there at Alt?
23    A.    No, we have many.
24    Q.    How many?



1     A.    I couldn't tell you, but it's a lot.

2     Q.    More than 50?

3     A.    Yeah.

4     Q.    More than a hundred?

5     A.    50 is probably closer.

6     Q.    Okay.  And you didn't search any of

7  those Slack messages for communications regarding

8  the Curry card, did you?

9     A.    No.

10    Q.    Why not?

11    A.    Because all the communications would

12  have happened in that channel.

13    Q.    How do you know that?

14    A.    Because I remember.

15    Q.    But you didn't do anything to search and

16  verify; right?

17    A.    No.

18    Q.    Did you search any of your text messages

19  with Leore regarding the Curry card?

20    A.    No.

21    Q.    Did you search your text messages with

22  any other Alt employee regarding the Curry card?

23    A.    No.

24    Q.    Did you search any of your text messages



1  with anyone at PSA regarding the Curry card?

2       A.    No.

3       Q.    Did you search your e-mails for

4  communications with people from or employees at PSA

5  regarding the Curry card?

6       A.    Yes.

7       Q.    Did you do anything else to collect and

8  assemble documents in this case?

9       MR. HAMMERVOLD:  Object to form.

10  BY THE WITNESS:

11       A.    I think that's it.

12  BY MR. REED:

13       Q.    Were you involved in any way in

14  answering any of the interrogatories, the written

15  interrogatory questions in this case?

16       MR. HAMMERVOLD:  Object to form.

17  BY THE WITNESS:

18       A.    I don't recall.

19  BY MR. REED:

20       Q.    During your time at Alt Platform, Inc.,

21  what would you say is your primary mode of

22  communication with other employees at Alt Platform?

23       A.    Slack.

24       Q.    All right.  I'm going to show you what's



```
 1   STATE OF ILLINOIS    )

 2                        )  SS:

 3   COUNTY OF DUPAGE     )

 4            I, ALICE M. SCHWINGER, CSR No. 84-2913,

 5   a Certified Shorthand Reporter of the State of

 6   Illinois, do hereby certify:

 7            That previous to the commencement of the

 8   examination of the witness, the witness was duly

 9   sworn to testify the whole truth concerning the

10   matters herein;

11            That the foregoing deposition transcript

12   was reported stenographically by me, was thereafter

13   reduced to typewriting under my personal direction

14   and constitutes a true record of the testimony

15   given and the proceedings had;

16            That the said deposition was taken

17   before me at the time and place specified;

18            That I am not a relative or employee or

19   attorney or counsel, nor a relative or employee of

20   such attorney or counsel for any of the parties

21   hereto, nor interested directly or indirectly in

22   the outcome of this action.

23            IN WITNESS WHEREOF, I do hereunto set my

24   hand at Woodridge, Illinois, this 14th day of
```



1   February, A.D. 2024.

2

3

4

5

6              Certified Shorthand Reporter

7

8

9   ALICE M. SCHWINGER, CSR No. 84-2913

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



# EXHIBIT 15

## In the Matter Of:

## ALT SPORTS CARD FUND vs BECKETT COLLECTIBLES

3:22-cv-02867-N

---

## JONATHAN E. EUSTON

*February 06, 2024*

---



800.211.DEPO (3376)
*EsquireSolutions.com*

**115**

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE NORTHERN DISTRICT OF TEXAS

3                    DALLAS DIVISION

4    ALT SPORTS CARD FUND GP,     )

5    LLC, as the General          )

6    Partner of Alt Sports        )

7    Card Fund, L.P., and ALT     ) Civil Action No.

8    PLATFORM, INC.,              ) 3:22-cv-02867-N

9              Plaintiffs,    )

10        -vs-                     )

11   BECKETT COLLECTIBLES,        )

12   LLC,                         )

13             Defendant.    )

14       The videotaped deposition of JONATHAN E.

15   EUSTON, via Zoom, called for examination, taken

16   pursuant to the Federal Rules of Civil Procedure of

17   the United States District Courts pertaining to the

18   taking of depositions, taken before NANCY A.

19   GUIDOLIN, CSR No. 84-2531, a Notary Public within

20   and for the County of DuPage, State of Illinois,

21   and a Certified Shorthand Reporter of said state,

22   at New Castle, Delaware, on the 6th day of

23   February, 2024, commencing at 10:00 a.m. eastern

24   time.



```
 1   PRESENT: (VIA ZOOM)

 2

 3        HAMMERVOLD LAW,

 4        (155 South Lawndale Avenue,

 5        Elmhurst, Illinois 60126,

 6        405-509-0372), by:

 7        MARK HAMMERVOLD, ESQ.,

 8        mark@hammervoldlaw.com,

 9            appeared on behalf of the Plaintiffs;

10

11        CONDON TOBIN SLADEK THORNTON NERENBERG PLLC,

12        (8080 Park Lane, Suite 700,

13        Dallas, Texas 75231,

14        214-265-3800), by:

15        KENDAL B. REED, ESQ.,

16        kreed@condontobin.com,

17        ABIGAIL R.S. CAMPBELL, ESQ.,

18        acampbell@condontobin.com,

19            appeared on behalf of the Defendant.

20

21

22   VIDEOTAPED BY:  JOANNA ARAUZ.

23   REPORTED BY:   NANCY A. GUIDOLIN, C.S.R.,

24                  CERTIFICATE NO. 84-2531.
```



1   the packing and shipping of the Curry card to --

2        A.    Sorry.  Your video cut out again.

3        Q.    I apologize.

4        A.    I heard the first part but it didn't --

5   yeah.

6        Q.    It's saying I have good, but I did see

7   it freeze there for a minute.  I apologize.

8              All right.  Let me try that again.  Was

9   anyone else at Alt Platform involved in the packing

10  and shipping of the Curry card to PSA?

11       A.    Packing and shipping was just me.

12       Q.    Okay.  Did anyone at Alt Platform

13  observe you pack and ship the Curry card to PSA?

14       A.    I don't believe so, but it was -- I did

15  video record it.

16       Q.    You did video record the entire process?

17       A.    Correct.

18       Q.    Why did you video record the process?

19       A.    It's standard for everything that we

20  send to grading.

21       Q.    So everything that you send to grading

22  no matter the value you video record the packing

23  and shipping?

24       A.    Correct.



1        Q.    How is it recorded?

2        A.    I have a -- it's recorded via Zoom, and

3    then recorded by an application called Grain.  I

4    use -- Grain, yeah, G-r-a-i-n.

5        Q.    Okay.

6        A.    And I use a -- an almost bird's eye

7    camera.  It has a holder, and it stems over my

8    laptop to display my working area.  From there I

9    show the submission forms and then I show the cards

10   that we're sending to grading, each one

11   individually.

12       Q.    And where is this video stored usually?

13       A.    It's stored on the Grain application in

14   my library.

15       Q.    And is it -- how would you go back and

16   reference if you wanted to pull up that video?

17       A.    I could just access the application, go

18   to my library, and then if I know the date I packed

19   and shipped it, I can go specifically to that date,

20   or if I don't know the date, I can filter with a

21   guess of the time range, and then I can look

22   through my videos, and I name -- I name my videos

23   after each grading order.

24       Q.    Okay.  You name them after what?  I'm



1  sorry.

2          A.    Each grading order.

3          Q.    So the grading order number?

4          A.    Yeah, we typically associate the name of

5  the grading order with a date that it is shipped

6  on.

7          Q.    Okay.  But it's not organized by an item

8  ID, for instance?

9          A.    Correct.  It is not.

10         Q.    So I would have to know the date that

11 you shipped in order to find the video?

12         A.    Correct.

13         Q.    Now, is there a similar video made for

14 when you receive items and unpack them?

15         A.    Correct.  Everything that we receive at

16 the vault is always video recorded, whether or not

17 it comes from grading or it's a new package from a

18 user.

19         Q.    Is it also organized and titled by date?

20         A.    No.  We typically just name those

21 intake, and then the intake video will be displayed

22 under the date that the video or the unpacking

23 occurs.

24         Q.    Okay.  So I have to know what day that



1   it came in in order to find the video of the

2   unpacking?

3        A.    Correct.

4        Q.    Okay.  So you also mentioned that you

5   saw this card when it was received back from PSA,

6   packed and shipped to Beckett; correct?

7        A.    Correct.

8        Q.    Did that all happen on one day, the

9   receipt of it and the shipping out to Beckett, or

10  was that on separate days?

11       A.    I believe that it was the same day, as

12  far as I can remember.

13       Q.    Okay.  So for when it came in there

14  would be an intake video for when the Curry card

15  came in from PSA; is that correct?

16       A.    There should be.  Correct.

17       Q.    Have you viewed it?

18       A.    I have not.  Not recently.

19       Q.    Have you searched for it?

20       A.    Not recently.

21       Q.    Have you at any time searched for it?

22       A.    No.

23       Q.    Have you viewed the packing video for

24  when you did the packing to ship the Curry card to



1       A.    I was not.

2       Q.    Were you asked to search your e-mail at

3  all?

4       A.    No, I was not.

5       Q.    So it's not something that -- you didn't

6  search your e-mail and provide e-mails as part of

7  the discovery process, did you?

8       A.    No, I did not.

9       Q.    Did you search your personal cell phone

10  for text messages to process as part of this

11  litigation?

12       A.    I did not.

13       Q.    What is your phone number?

14       A.    302-553-3068.

15       Q.    In addition to Slack messages, can you

16  direct message through Slack in addition to, like,

17  the conversations?

18       A.    Yeah, we have -- we have -- yeah,

19  correct.  We have DM, direct messages, where you

20  can individually message somebody or a group of

21  people.

22       Q.    And do you -- have you searched your

23  direct messages for documents as part of the

24  discovery process?



1      Q.     And do you recall making any revisions

2    after you've looked at his?

3      A.     I don't believe so, but maybe just to

4    iron out dates and times.  We wanted to make sure

5    that they were accurate.

6      Q.     Make sure that they lined up?

7      A.     Correct.

8      Q.     Okay.  And I just want to make sure.  We

9    had an example there of some e-mails between you

10   and Beckett.  As part of this litigation process

11   have you searched your e-mails for any other

12   communications with anyone at Beckett?

13     A.     I have not.

14     Q.     Was that because you weren't asked to?

15     A.     Yeah.  Nobody requested that I do so.

16     Q.     Do you normally save your e-mails?

17     A.     I generally put everything grading

18   related into its own folder.  So I have a descent

19   amount saved up.

20     Q.     You're one of those organized guys,

21   huh?

22     A.     Yeah.  With way too many.

23     Q.     I'm sometimes organized, but not that

24   well.  So anything grading related would be put in



```
1   STATE OF ILLINOIS    )

2                        )  SS:

3   COUNTY OF DU PAGE    )

4

5            I, NANCY A. GUIDOLIN, CSR No. 84-2531, a

6   Notary Public within and for the County of DuPage,

7   State of Illinois, and a Certified Shorthand

8   Reporter of said state, do hereby certify:

9            That previous to the commencement of the

10  examination of the witness, the witness was duly

11  sworn to testify the whole truth concerning the

12  matters herein;

13           That the foregoing deposition transcript

14  was reported stenographically by me, was thereafter

15  reduced to typewriting under my personal direction

16  and constitutes a true record of the testimony

17  given and the proceedings had;

18           That the said deposition was taken

19  before me at the time and place specified;

20           That I am not a relative or employee or

21  attorney or counsel, nor a relative or employee of

22  such attorney or counsel for any of the parties

23  hereto, nor interested directly or indirectly in

24  the outcome of this action.
```



1          IN WITNESS WHEREOF, I do hereunto set my

2    hand of office at Chicago, Illinois, this 17th day

3    of February, 2024.

4

5

6                    _Nancy A. Guidolin_

7

8                         Notary Public,

9                         DuPage County, Illinois.

10

11

12    NANCY A. GUIDOLIN, CSR No. 84-2531

13

14

15

16

17

18

19

20

21

22

23

24



# EXHIBIT 16

**In the Matter Of:**

ALT SPORTS CARD vs BECKETT COLLECTIBLES

3:22-cv-02867-N

---

# MATTHEW LEVINE

*February 07, 2024*

---



```
 1            IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF TEXAS

 3                     DALLAS DIVISION

 4   ALT SPORTS CARD FUND GP,      )

 5   LLC, as the General          )

 6   Partner of Alt Sports        )

 7   Card Fund, L.P., and ALT     ) Civil Action No.

 8   PLATFORM, INC.,              ) 3:22-cv-02867-N

 9                 Plaintiffs,    )

10        -vs-                    )

11   BECKETT COLLECTIBLES,        )

12   LLC,                         )

13                 Defendant.     )

14        The deposition of MATTHEW LEVINE, via Zoom,

15   called for examination, taken pursuant to the

16   Federal Rules of Civil Procedure of the United

17   States District Courts pertaining to the taking of

18   depositions, taken before NANCY A. GUIDOLIN, CSR

19   No. 84-2531, a Notary Public within and for the

20   County of DuPage, State of Illinois, and a

21   Certified Shorthand Reporter of said state, at

22   Easton, Pennsylvania, on the 7th day of

23   February, 2024, commencing at 9:00 a.m. central

24   time.
```



```
 1   PRESENT: (VIA ZOOM)

 2

 3        HAMMERVOLD LAW,

 4        (155 South Lawndale Avenue,

 5        Elmhurst, Illinois 60126,

 6        405-509-0372), by:

 7        MARK HAMMERVOLD, ESQ.,

 8        mark@hammervoldlaw.com,

 9             appeared on behalf of the Plaintiffs;

10

11        CONDON TOBIN SLADEK THORNTON NERENBERG PLLC,

12        (8080 Park Lane, Suite 700,

13        Dallas, Texas 75231,

14        214-265-3800), by:

15        KENDAL B. REED, ESQ.,

16        kreed@condontobin.com,

17        ABIGAIL R.S. CAMPBELL, ESQ.,

18        acampbell@condontobin.com,

19             appeared on behalf of the Defendant.

20

21

22

23   REPORTED BY:   NANCY A. GUIDOLIN, C.S.R.,

24                  CERTIFICATE NO. 84-2531.
```



1          MR. HAMMERVOLD:  Object to form.

2    BY MR. REED:

3          Q.   So without assuming that Beckett was

4    negligent in 2016 in the grading of the Steph Curry

5    card, you went and reviewed the submission history

6    first; right?

7          MR. HAMMERVOLD:  Object to form.

8    BY THE WITNESS:

9          A.   No.

10   BY MR. REED:

11         Q.   What did you do first to determine

12   whether Beckett had been negligent in 2016?

13         A.   Looked into the submitter of the asset,

14   Googled his name, and started reading about his

15   history.  That was the first thing that I did.

16         Q.   Okay.  And that was in September of

17   2023?

18         A.   No, that was in October when I was

19   preparing this report.

20         Q.   Okay.  So in October of 2023 you Googled

21   who?

22         A.   Keith Koenig.

23         Q.   Okay.  And did you keep a record of the

24   results that you obtained when you Googled



1   Mr. Koenig?

2        MR. HAMMERVOLD:  Object to form.

3   BY THE WITNESS:

4        A.    I did not.

5   BY MR. REED:

6        Q.    How many results came up when you

7   Googled Mr. Koenig?

8        A.    Quite a few.  Specifically on this forum

9   called Blowout Forums.

10       Q.    What forum?

11       A.    Blowout Card Forums.

12       Q.    Okay.  Do you keep any notes in

13  preparing and doing your analysis?

14       A.    Nothing that I kept.

15       Q.    So you did take notes?  You just didn't

16  keep them?

17       A.    Probably, yeah.

18       Q.    Okay.  So in October of 2023 you Googled

19  Keith Koenig, found quite a few results, and then

20  what did you do?

21       MR. HAMMERVOLD:  Object to form.

22  BY THE WITNESS:

23       A.    I believe the next thing that I did was

24  review Keith Koenig's actual submission history and



 1   saw the red flags.

 2   BY MR. REED:

 3       Q.    Now, this Keith Koenig submission

 4   history that you reviewed, is that a specific

 5   document?

 6       A.    Yes.  That was included in the Appendix.

 7   Not in this document, though.  Sorry not the

 8   Appendix.  In the Supplemental Report.

 9       Q.    So you reviewed it in preparation for

10   this report, but you didn't include it here?

11       MR. HAMMERVOLD:  Object to form.

12   BY THE WITNESS:

13       A.    I can't necessarily remember the

14   timeline, but that's what I recall.

15   BY MR. REED:

16       Q.    Okay.  And I just want to be clear that

17   right now what I'm asking you about is the process

18   that you undertook in formulating your opinion that

19   is in this first November 10, 2023, report.

20            I will get to the Second Supplemental

21   Report later in our deposition and ask you

22   questions about it, but I'm trying to understand

23   here as to the process that you undertook to

24   formulate this opinion, and I'm talking



1  specifically right now the first opinion about

2  whether Beckett was negligent when it graded the

3  Steph Curry card at issue in 2016.  Okay?

4      A.    Yes.

5      Q.    Are we all clear?  I just want to make

6  sure that there is no confusion here, and that we

7  are all on the same page.  Are you on the same page

8  as me?

9      A.    I understand.  I understand.  I just

10 can't remember the specific timeline of documents

11 that I reviewed back four months ago.  So that's

12 the confusion.  I'm sorry for that.

13     Q.    And you didn't keep any notes so that

14 you could review those or provide those to show me

15 either; right?

16     MR. HAMMERVOLD:  Object to form.

17 BY THE WITNESS:

18     A.    No.

19 BY MR. REED:

20     Q.    Okay.  What else did you do -- well,

21 strike that.  Let me start over.

22          What else did you review in order to

23 formulate your opinions as to whether Beckett was

24 negligent when it graded the Steph Curry card in



1    STATE OF ILLINOIS    )

2                         )   SS:

3    COUNTY OF DU PAGE    )

4

5           I, NANCY A. GUIDOLIN, CSR No. 84-2531, a

6    Notary Public within and for the County of DuPage,

7    State of Illinois, and a Certified Shorthand

8    Reporter of said state, do hereby certify:

9           That previous to the commencement of the

10   examination of the witness, the witness was duly

11   sworn to testify the whole truth concerning the

12   matters herein;

13          That the foregoing deposition transcript

14   was reported stenographically by me, was thereafter

15   reduced to typewriting under my personal direction

16   and constitutes a true record of the testimony

17   given and the proceedings had;

18          That the said deposition was taken

19   before me at the time and place specified;

20          That I am not a relative or employee or

21   attorney or counsel, nor a relative or employee of

22   such attorney or counsel for any of the parties

23   hereto, nor interested directly or indirectly in

24   the outcome of this action.



1          IN WITNESS WHEREOF, I do hereunto set my

2    hand of office at Chicago, Illinois, this 20th day

3    of February, 2024.

4

5

6

7                        _Nancy A. Guidolin_

8                        Notary Public,

9                        DuPage County, Illinois.

10

11

12   NANCY A. GUIDOLIN, CSR No. 84-2531

13

14

15

16

17

18

19

20

21

22

23

24

