IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALT PLATFORM, INC., *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | Civil Action No. 3:22-CV-02867-N | |
| § | | |
| BECKETT COLLECTIBLES, LLC, § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Beckett Collectibles, LLC's ("Beckett") motion for summary judgment [54]. For the reasons below, the Court denies the motion.

### I. ORIGINS OF THE DISPUTE

This case arises out of an alleged misrepresentation about whether a 2009 Stephen Curry trading card ("Curry Card") was physically altered at the time Beckett assigned it a grade of "9.5 Gem Mint." Def.'s Br. 1 [55]. Beckett is in the business of grading and authenticating sports memorabilia. *Id.* In 2016, Beckett examined the Curry Card at the request of a third-party customer, assigned it a grade of 9.5 Gem Mint, and encapsulated the card in a tamper-proof "slab." *Id.* at 2.

Plaintiffs Alt Sports Card Fund GP, LLC and Alt Platform, Inc. (collectively, "Alt") are involved in the business of buying and selling sports trading cards. *Id.* In 2020, a predecessor Alt entity, Alt Fund I, LP, purchased the Curry Card from a different third

party for $168,000. *Id.*; Pls.' Resp. 8 [63]¹. In doing so, Alt was aware that the card had previously been graded at a 9.5 Gem Mint by Beckett. Pls.' Resp. 8.

Alt then decided to remove the Curry Card from its slab, hoping that it could submit the card to PSA, another grading company, and receive a higher grade. *Id.* at 9. Alt submitted the card to PSA, but PSA returned the card to Alt and stated that the card appeared to be "trimmed." *Id.* at 9–10. "Trimming" involves cutting the edge of a trading card to make it appear to be in better condition than it is. *Id.* at 1. Alt claims that the card was trimmed before Beckett assigned it a 9.5 Gem Mint grade, and that Beckett negligently misrepresented the status of the card by assigning it such a grade. Am. Compl. ¶¶ 68–76 [14]. Beckett now moves for summary judgment on Alt's sole claim of negligent misrepresentation. Beckett argues that the statute of limitations has passed, the discovery rule does not apply, Alt does not have standing, and that a sports card grade is an opinion and therefore not actionable as negligent misrepresentation.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable

---

¹ Beckett argues in its reply that the Court should only consider the first 25 pages of Alt's response, asserting that Alt violated Local Rule 7.2(c) by submitting a brief over 25 pages long without seeking leave to do so. Def.'s Reply 1 n.2 [77]. However, Beckett fails to note that Local Rule 56.5(b) increases the page limit to 50 pages for summary judgment briefs.

MEMORANDUM OPINION AND ORDER – PAGE 2

inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d

521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT DENIES SUMMARY JUDGMENT ON ALT'S NEGLIGENT MISREPRESENTATION CLAIM

To prevail on a motion for summary judgment, Beckett, as the movant, must show that no genuine issue of material fact exists, and that the undisputed facts entitle it to judgment as a matter of law. The Court finds that the discovery rule applies to toll the statute of limitations on Alt's negligent misrepresentation claim. Additionally, the Court finds that both plaintiffs have standing to pursue their claim. Finally, the Court finds that Beckett's grading of the card was an actionable statement of fact that the card was not altered. Accordingly, Beckett is not entitled to summary judgment on Alt's negligent misrepresentation claim.

#### A.  *The Discovery Rule Applies to Toll the Statute of Limitations*

Beckett argues that the statute of limitations has passed on Alt's claim and that the discovery rule does not apply to toll the limitations period. Def.'s Br. 6–7. To prevail at summary judgment on this issue, Beckett bears the burden of conclusively negating the discovery rule. *McGowan v. S. Methodist Univ.*, 2024 WL 455340, at *3 (N.D. Tex. 2024) (citing *Draughon v. Johnson*, 631 S.W.3d 81, 90 (Tex. 2021)). Because the Court finds that the discovery rule applies, the Court denies summary judgment on this issue.

The limitations period for a negligent misrepresentation claim in Texas is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Tex. Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302–03 (Tex. App. – Ft. Worth 1991, writ denied) (applying the two-year

MEMORANDUM OPINION AND ORDER – PAGE 4

statute of limitations to a negligent misrepresentation claim because it sounded in negligence rather than fraud). However, when "the discovery rule applies, the statute of limitations does not begin to run 'until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury.'" *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 462 (Tex. 2023) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). The discovery rule applies where the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). Whether the discovery rule applies is a question of law. *Velocity Databank, Inc. v. Shell Offshore, Inc.* 456 S.W.3d 605, 609 (Tex. App. – Houston [1st Dist.] 2014, pet. denied).

Alt alleges that it purchased the Curry Card on or around October 31, 2020. Am. Compl. ¶ 54. Beckett argues that Alt tendered payment for the Curry Card on November 5, 2020, and that therefore any legal injury that Alt suffered took place on that date. Def.'s Br. 6–7. Alt does not specifically contest this argument, *see* Def.'s Reply 2 [77], so the Court assumes, without deciding, that the relevant starting point for a limitations analysis is November 5, 2020. Then, given the two-year statute of limitations for negligent misrepresentation claims in Texas, the limitations period expired on November 5, 2022. Alt filed this lawsuit on December 20, 2022. Thus, without the discovery rule, Alt's claim is time barred. But, because the Court finds that Alt's alleged injury was inherently undiscoverable and objectively verifiable, the Court denies summary judgment to Beckett on this issue.

MEMORANDUM OPINION AND ORDER – PAGE 5

***1. Injuries Stemming from Negligent Sports Card Grading Are Inherently Undiscoverable.*** – "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022) (quoting *S.V.*, 933 S.W.2d at 7). The inherently undiscoverable analysis "is categorical, not fact-specific." *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 489 (5th Cir. 2023). In other words, courts ask "whether the injury is 'the type of injury that could be discovered through the exercise of reasonable diligence.'" *Triex*, 659 S.W.3d at 461 (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)). "The touchstone of whether an injury is a relevant injury that will toll the statute of limitations is whether the injury would put the plaintiff on notice that he had been injured." *Van Pelt v. Guild Mortg. Co.*, 2022 WL 2053181, at *4 (N.D. Tex. 2022). Whether an alleged injury is one that is inherently undiscoverable is a question of law, decided on this categorical basis. *Mustafa v. Americo Energy Res., LLC*, 650 S.W.3d 760, 764–65 (Tex. App. – Houston [14th Dist.] 2022, pet. denied) (citing *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006)).

Here, Alt asserts that it was injured by Beckett's negligent misrepresentation that the Curry Card was not altered. Am. Compl. ¶¶ 70–76. Alt argues that Beckett acted as an expert when grading cards and that a nonexpert lacks the knowledge necessary to inquire into that expert's grading or to be aware that an inquiry is needed. Pls.' Resp. 12–13. Given the circumstances and nature of Alt's alleged injury, the Court holds that it is inherently undiscoverable for purposes of the discovery rule.

Beckett is in the business of grading sports cards. Def.'s Appx. Ex. 1 ¶ 3 [56]. Once a card has been graded, Beckett places the card into a sealed, tamper-proof "slab." *Id.* ¶ 4. Beckett then allows the public to look up the serial number of each card it has graded on its website and find the card's grade. Pls.' Appx. Ex. 2, at 45–46 [64][2]. Beckett markets itself as being a consistent and reliable card grading service. Pls.' Appx. Ex. 4, at 88. Further, once a card has been slabbed, it is difficult to fully observe the condition of the card. Specifically, Beckett's CEO stated that "it is not possible . . . to complete a full assessment of [a] card without the grader's ability to touch, smell, et cetera, utilize high-intensity lighting that is not as effective through acrylic." Pls.' Appx. Ex. 2, at 41.

Beckett graded the Curry Card as a 9.5 Gem Mint condition in October 2016. Def.'s Appx. Ex. 3A, at 28. Alt purchased the Curry Card four years later in October 2020. Def.'s Appx. 4, at 111. At that time, the Curry Card was sealed in a tamper-proof slab that Beckett placed on the card at the time it was graded. Def.'s Br. 2–3.

Someone who purchases a slabbed and graded card is unlikely to be able to know whether that grading determination is accurate. This industry practice of placing a graded sports card into a tamper-proof case in which it is difficult to assess the quality of the card creates a situation where the card owner is not in a position to discover that this grading was incorrect. Further, card owners likely rely on grading companies like Beckett, which markets itself as a reliable grading service, to correctly identify altered cards. A negligent

---

[2] Beckett objected to a number of exhibits in Alt's summary judgment response appendix. *See* Def.'s Objs. [78]. Because the Court does not rely on any of the objected-to exhibits in deciding this motion, the Court declines to rule on these objections.

MEMORANDUM OPINION AND ORDER – PAGE 7

failure to identify an altered card, as alleged by Alt, should not be protected when the card buyer is hindered in discovering such an injury through this choice to place the card in a tamper-proof slab. Additionally, the card grading business relies on this idea that grading companies act as the experts in determining the condition of a card. This is why Beckett intentionally markets itself as a reliable grading service. A non-expert card purchaser is less equipped to know whether such a grading is accurate than the expert grader. Accordingly, Alt's alleged injury falls within a category of inherently undiscoverable injuries.

    **2.** ***Alt's Injury was Objectively Verifiable.*** – In addition to being inherently undiscoverable, an injury must also be objectively verifiable for the discovery rule to apply. *Archer*, 566 S.W.3d at 290. "These two elements attempt to strike a balance between the policy underlying statutes of limitations (barring stale claims) and the objective of avoiding an unjust result (barring claims that could not be brought within the limitations period)." *Id.* For an injury to be objectively verifiable, there must be some sort of "physical or other evidence, such as an objective eyewitness account, to corroborate the existence of the claim." *In re Coastal Plains, Inc.*, 179 F.3d 197, 215 (5th Cir. 1999) (citing *S.V.*, 933 S.W.2d at 15). In discussing this requirement, the Supreme Court of Texas has stated that the kinds of evidence that would suffice to make an injury objectively verifiable include things like medical records, confession by the wrongdoer, photographs or recordings, and eyewitness testimony. *S.V.*, 933 S.W.2d at 15.

    Here, the Curry Card itself acts as direct, physical evidence of the injury. Alt asserts — and Beckett concedes — that the Curry Card is currently trimmed. Pls.' Resp. 10; Def.'s

MEMORANDUM OPINION AND ORDER – PAGE 8

Br. 4.  Beckett further concedes that if the card was trimmed when Beckett graded it in 2016, it should have identified the card as trimmed.  Pls.' Appx. Ex. 2, at 42.  The primary dispute between the parties is whether the card was in such condition at the time Beckett graded it.  To this point, Alt has brought testimony from the individual who cracked open the slabbed card — Alexander Liriano.  He stated that he did not damage the card when it was removed from the slab and that nobody else at Alt trimmed the card.  Pls.' Appx. Ex. 13, at 195–96.

This physical evidence of the card's trimmed condition combined with eyewitness testimony from the person handling the card on behalf of Alt is enough evidence to conclude that the injury is objectively verifiable.  The balance between preventing stale claims and furthering individual justice is maintained here, where Alt can produce direct physical evidence of a trimmed card combined with eyewitness testimony of the individual who removed the card from its slab.  This is not a case of "a swearing match between parties." *See S.V.*, 933 S.W.2d at 15.  Instead, there is direct physical evidence in the form of the trimmed card itself that is sufficient to apply the discovery rule.  Thus, at this summary judgment stage, Beckett has failed to conclusively show that Alt's alleged injury was not objectively verifiable.

Therefore, because the Court concludes that Alt's alleged injury was inherently undiscoverable and objectively verifiable, the Court denies summary judgment on the statute of limitations issue.

### B. *The Court Finds that Alt Platform, Inc. Has Constitutional Standing and Both Plaintiffs Are Within the Class of Allowable Plaintiffs*

Beckett argues that Alt Platform, Inc. does not have constitutional standing to pursue its claim in this case because it is not the entity that purchased the Curry Card. Def.'s Br. 11.  It also argues that neither Alt Platform, Inc. nor Alt Sports Card Fund GP, LLC are within the class of potential plaintiffs that can bring a negligent misrepresentation claim under Texas law.  *Id.* at 12.  Because the Court finds that Alt Platform, Inc. has standing to pursue the claim in this case and both plaintiffs are within the class of potential plaintiffs that can bring a negligent misrepresentation claim in Texas, the Court denies summary judgment on this issue.

*1*. ***The Court Finds that Alt Platform, Inc. Has Constitutional Standing.*** – Beckett argues that Alt Platform, Inc. does not have constitutional standing to assert the negligent misrepresentation claim in this case.  Def.'s Br. 11–12.  It specifically argues that Alt Platform, Inc. did not purchase the Curry Card and therefore did not suffer an injury in fact. *Id.*  Alt counters that while the loss here was originally suffered by one of its other entities, both plaintiffs have standing to sue based on their organizational relationships with that entity.  Pls.' Resp. 27.  Considering the relationships between the Alt entities, the Court concludes that Alt Platform, Inc. has constitutional standing to pursue recovery.

Constitutional standing requires that the plaintiff (1) suffer an injury in fact, (2) that was caused by the defendant's conduct, and (3) that is redressable by a favorable court decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The injury in fact must be both concrete and particularized as well as actual or imminent.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at 340.  "If a defendant has caused physical or monetary injury to the plaintiff,

MEMORANDUM OPINION AND ORDER – PAGE 10

the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Here, Alt Fund I, LP was the entity that purchased the Curry Card in 2020. Def.'s Appx. Ex. 3-H, at 61; *id.* Ex. 3-B, at 35–36. In 2022, Alt Fund I, LP merged with other entities and formed Alt Sports Card Fund, L.P. Am. Compl. ¶ 5. The general partner of this limited partnership is Alt Sports Card Fund GP, LLC, one of the two plaintiffs in this case. *Id.* ¶ 6. The other plaintiff, Alt Platform, Inc., is the sole member of Alt Sports Card Fund GP, LLC. *Id.* ¶ 1. This ownership relationship between Alt Platform, Inc., Alt Sports Card Fund GP, LLC, and Alt Sports Card Fund, L.P. means that the alleged monetary injury to Alt Sports Card Fund, L.P. (by way of its predecessor Alt Fund I, LP) is a concrete and particularized injury that affects both plaintiffs here. The financial impact of the alleged misrepresentation affects the bottom line of both plaintiffs, as there is a direct ownership chain between them. The injury is alleged to be the direct result of Beckett's conduct and would be redressable via money damages. As such, both Alt Sports Card Fund GP, LLC and its sole member, Alt Platform, Inc., have constitutional standing to bring this claim.

***2. The Court Concludes that Both Plaintiffs Are Within the Class of Potential Plaintiffs for Negligent Misrepresentation*** –Beckett argues that neither plaintiff here is within the narrow class of potential plaintiffs that can bring a negligent misrepresentation claim under Texas law. Def.'s Br. 12–14. Alt counters that some subsequent purchasers, like itself, are within this narrow class. Pls.' Resp. 23. Because the Court agrees that Alt

is within the class of potential plaintiffs in this case, the Court denies summary judgment on this point.

Negligent misrepresentation under Texas law requires the plaintiff to show: (1) a representation by the defendant made in the course of its business or in a transaction in which it had a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018). Recovery for negligent misrepresentation is confined to only those potential plaintiffs that the defendant intended to benefit or that the defendant knew would receive the information. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010); RESTATEMENT (SECOND) OF TORTS § 552(2).

Here, the record shows that Beckett intends for subsequent purchasers to rely on the grades it assigns to trading cards. Beckett is in the business of grading and authenticating sports memorabilia. Def.'s Appx. Ex. 1 ¶ 3. It markets itself as a consistent and accurate grader of sports trading cards. Pls.' Appx. Ex. 4, at 89. Beckett's former president and COO stated that Beckett knows that grades will follow the card through subsequent transactions. *Id.* at 93. He agrees that it is "assumed within the industry" that subsequent card purchasers rely on Beckett's grades and that Beckett intends for future purchasers to do just that. *Id.* To this end, Beckett places every card it grades into a tamper-proof slab that keeps the card in the same condition as when it was graded. Pls.' Appx. Ex. 2, at 48.

Additionally, it maintains an online registry where one can look up cards to find their grade. *Id.* at 45–46. These facts demonstrate that Beckett intends for its gradings to be utilized by subsequent purchasers like Alt.

The Restatement's formulation of negligent misrepresentation anticipates recovery by some subsequent purchasers. The Restatement allows for liability if "the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group." RESTATEMENT (SECOND) OF TORTS § 552(2) cmt. h. If the Court were to adopt Beckett's position, liability for negligent grading of sports cards would be limited to the original customer who submitted the card for grading. Under that regime, Beckett could avoid all liability for negligently misrepresenting the authenticity of a card so long as the original customer happened to sell the card before noticing the error. This would dramatically reduce the utility of sports card certifications.

Beckett further argues that it cannot be liable to Alt because Alt did not legally exist at the time Beckett graded the Curry Card. Def.'s Br. 13–14. However, the Court does not find this argument persuasive. First, Beckett does not cite any precedents establishing such a per se rule. Second, the Restatement's formulation allows for liability even if the maker of a representation lacked knowledge of the plaintiff's identity at the time. RESTATEMENT (SECOND) OF TORTS § 552(2) cmt. h ("It is sufficient . . . that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given.").

MEMORANDUM OPINION AND ORDER – PAGE 13

Based on the record, Alt has sufficiently established that it is within the class of potential plaintiffs that can bring a negligent misrepresentation claim.[3] Accordingly, the Court denies summary judgment for Beckett on this issue.

### C. Beckett's Grading of the Curry Card Was an Actionable Statement of Fact

Next, Beckett argues that its grading of the Curry Card as a 9.5 Gem Mint condition card cannot form the basis of a negligent misrepresentation claim because it is an opinion and not a statement of fact. Def.'s Br. 18. Because the Court finds that the grade assigned to the Curry Card by Beckett was a statement of fact under the circumstances of this case, the Court denies summary judgment on the negligent misrepresentation claim.

Negligent misrepresentation under Texas law requires the plaintiff to show: (1) a representation by the defendant made in the course of its business or in a transaction in which it had a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *JPMorgan*, 546 S.W.3d at 653–54. On the question of whether something is an actionable representation, Texas courts apply the same standard to negligent misrepresentation and fraud claims. *See, e.g.*, *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337–38 (Tex. 2011)

---

[3] Beckett also makes arguments that Alt's "direct communication" allegations are insufficient. Def.'s Br. 14–18. These arguments are contained within the section of Beckett's brief addressing standing. *Id.* at 11, 14. To the extent that these arguments bear on standing, the Court need not rule on them because the Court finds standing without considering whether Alt in fact relied on Beckett's website.

MEMORANDUM OPINION AND ORDER – PAGE 14

(defining "representations of material fact" for both negligent misrepresentation and fraud claims); *Paull v. Cap. Res. Mgmt., Inc.*, 987 S.W.2d 214, 221 (Tex. App. – Austin 1999, writ denied) ("A factual misrepresentation is an essential element to appellants' common law fraud and negligent misrepresentation causes of action.").

Under this standard, "pure expressions of opinion" are not "representations" and are therefore not actionable. *Italian Cowboy Partners*, 341 S.W.3d at 337–38. However, the analysis of whether something is a statement of fact or opinion depends on the circumstances surrounding the statement. *Id.* at 338 (citing *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995)). "Special or one-sided knowledge may help lead to the conclusion that a statement is one of fact, not opinion." *Id.* Additionally, an opinion may still be actionable when that the opinion is based on past or present fact and the party giving the opinion has superior knowledge. *Id.*

Here, the dispute centers around whether one edge of the Curry Card was trimmed. Beckett initially gave the Curry Card a 9.5 Gem Mint grade. Def.'s Appx. Ex. 3-A, at 28. Grades such as this likely do contain elements of opinion. However, by simply giving the card a grade, Beckett is inherently stating that the card is not altered. Beckett's CEO, Kevin Isaacson, affirmatively stated in deposition that Beckett will not slab and grade a card that is altered. Pls.' Appx. Ex. 2, at 31, 37. And an assertion that the card is not altered is more like a statement of fact than a "pure expression of opinion." *See Italian Cowboy Partners*, 341 S.W.3d at 337–38.

While it is true that multiple factors can affect whether a card is determined to be trimmed, the alteration of an edge of a card is at least somewhat objectively measurable.

MEMORANDUM OPINION AND ORDER – PAGE 15

Indeed, while Beckett gives a tolerance of one "notch" on the ruler for graders when evaluating whether a card is trimmed, Pls.' Appx. Ex. 2, at 37–38, if a card exceeds this tolerance, Beckett will not grade and slab it. *Id.* at 38–39. This analysis is done by, among other things, comparing the card's measurement to the expected dimensions of the card. *See* Pls.' Appx. Ex. 2, at 36.

The circumstances surrounding card grading also point to a finding that a grade, at least to the degree that it is a representation that the card is not altered, is a statement of fact. People submit cards to Beckett specifically because they want to utilize Beckett's expertise to determine a card's grade. People likely rely on Beckett based on the fact that it markets itself as a consistent and accurate grader of sports trading cards. *See* Pls.' Appx. Ex. 4, at 89. Beckett presents itself as having superior knowledge and expertise in determining whether a card is altered. Thus, because of this superior expertise, and because trimming is at least somewhat objectively measurable, Beckett's assignment of a 9.5 Gem Mint grade to the Curry Card was an actionable statement of fact. By grading the card, Beckett asserted that it was not altered. Accordingly, Alt's negligent misrepresentation claim does not fail as a matter of law on this point and the Court therefore denies summary judgment.

## CONCLUSION

The Court finds that the discovery rule applies to Alt's claim. Additionally, the Court finds that Alt Platform, Inc. has constitutional standing to pursue the negligent misrepresentation claim. Further, the Court finds that both plaintiffs are within the class of potential plaintiffs that can bring such a claim under Texas law. Finally, the Court finds

MEMORANDUM OPINION AND ORDER – PAGE 16

that the grading of a sports card, insofar as it includes a finding that the card is not altered, is a statement of fact that can be the basis of a negligent misrepresentation claim. Accordingly, the Court denies Beckett's motion for summary judgment.

Signed October 1, 2024.

                                                                 David C. Godbey
                                            Chief United States District Judge