IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALT PLATFORM, INC., *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:22-CV-02867-N |
| BECKETT COLLECTIBLES, LLC, | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Beckett Collectibles LLC's ("Beckett") motions to strike and exclude the testimony of Plaintiffs Alt Platforms Inc. and Alt Sports Card Fund GP LLC's (collectively "Alt") experts Matthew Levine [48] and Kaushik Mohan [51]. Because the Court finds that both experts meet the requirements of Rule 702, the Court denies the motions.

**I. ORIGINS OF THE MOTION**

This case arises out of an alleged misrepresentation about whether a 2009 Steph Curry trading card (the "Curry Card") was physically altered at the time Beckett examined and graded the card. Alt claims that Beckett negligently misrepresented the status of the card by assigning it a grade that did not reflect the alteration. The Court has discussed Alt's factual allegations previously, *see, e.g., Alt Platform, Inc., v. Beckett Collectibles, LLC*, 2024 WL 4376156 (N.D. Tex. 2024), and the Court will not recount them in greater

MEMORANDUM OPINION & ORDER – PAGE 1

depth here. Defendant now moves to strike and exclude two of Alt's expert witnesses, Matthew Levine and Kaushik Mohan.

## II. LEGAL STANDARD FOR EXPERT TESTIMONY

Under Federal Rule of Evidence 702, a witness must be qualified as an expert by "knowledge, skill, experience, training, or education." FED. R. EVID. 702. A qualified expert may testify if the expert's specialized knowledge will help the trier of fact and (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *Id.* District courts must determine that expert testimony "is not only relevant, but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid" and "can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592–93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999) (holding *Daubert* principles apply to all types of experts). The focus, however, "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

District courts have broad discretion to determine the admissibility of expert testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). But the rejection of expert testimony is the exception, not the rule. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 9560113, at *3 (N.D. Tex. 2016). The *Daubert* inquiry may not replace the adversarial system. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). "[V]igorous cross-examination, presentation of contrary

MEMORANDUM OPINION & ORDER – PAGE 2

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 250 (quoting *Daubert*, 509 U.S. at 596). Indeed, "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.*

### III. THE COURT DENIES THE MOTIONS TO EXCLUDE LEVINE AND MOHAN'S TESTIMONY

Alt retained Matthew Levine and Kaushik Mohan to testify "regarding the sports trading card industry, including with respect to the grading and the market value of sports trading cards and the Steph Curry Card at issue in this case." Levine Report, Def.'s Levine Appx. 37 [50]; Mohan Report, Def.'s Mohan Appx. 37 [52]. Specifically, their opinions seek to assist the jury in understanding (1) what sports trading card grading is and what services a grading company provides, (2) what "trimming" means and why it impairs the price of collectibles, and (3) their opinions, based on their experience and the materials in the case, that the Curry Card was in the same condition when graded by Beckett in 2016 and when the alteration was discovered in 2022. Pls.' Resp. Levine 3 [65].

Beckett argues that the experts are not qualified to offer expert opinions on the grading industry or the value of the Curry Card, that they improperly offer legal conclusions, that their opinions are not relevant, and that their opinions are not reliable. The Court addresses each argument in turn.[1]

---

[1] Due to the similarity of both expert reports and the motions to exclude, the Court addresses all the objections together. Beckett argues that the Plaintiff's Response to the Motion to Exclude Mohan [67] was improper because it incorporates the arguments from Plaintiffs' Response to the Motion to Exclude Levine rather than tailoring specific arguments to Mohan. Def.'s Reply Mohan 2–3 [76]. The Court disagrees. Beckett argues

MEMORANDUM OPINION & ORDER – PAGE 3

### A. Levine and Mohan are Qualified

First, Beckett argues that neither Levine nor Mohan is qualified to opine on the actions of a grading company because they have never been employed as a grader or by a grading company. Def.'s Mot. Levine 7; Def.'s Mot. Mohan 7.

An expert can be qualified on a subject by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. The Fifth Circuit recognizes work experience as a basis for expert qualification. *See United States v. Brown*, 871 F.3d 352, 357 (5th Cir. 2017) (collecting cases). Here, Levine has been involved in the sports trading card industry since 2010, has priced over 25,000 unique assets, and works as a senior pricing analyst in the industry. Levine Report, Def.'s Levine Appx. 37. Mohan runs the pricing team at Alt, has been a collector in the industry for fifteen years, and has personally graded hundreds of cards. Mohan Report, Def.'s Mohan Appx. 37.

Both experts' testimony goes to the industry practices and expectations of trading card grading. As a senior pricing analyst who appraises trading cards, sends cards to companies like Beckett to be graded, and relies upon the grading of such companies, Levine is qualified to opine about what grading is and what expectations industry professionals have for grading companies. Similarly, Mohan relies on knowledge about and experience with grading in his job as an operations manager who runs the pricing team at Alt, and he has experience as a former card expert. Additionally, there is no standard

---

that Plaintiffs do not address Mohan's experience — the only truly individualized aspect of the motions — *id.* at 3, but the Response does individually address Mohan's experience. Pls.' Resp. Mohan 2. Furthermore, the Court finds that the same arguments apply to both experts, so Plaintiffs have sufficiently addressed Beckett's arguments and met their burden.

MEMORANDUM OPINION & ORDER – PAGE 4

education, training, or certification required for card grading, so experience is the standard industry qualification. Pl.'s Resp. 4. Therefore, the Court finds that both experts' demonstrated experience in the industry establishes the requisite expertise for them to be able to opine on grading and what expectations the industry places on grading.

Second, Beckett argues that Levine and Mohan are not qualified to opine on the value of the Curry Card because their pricing experience is through Alt Program's automated pricing tool. Def.'s Mot. Levine 7–8; Def.'s Mot. Mohan 8. However, Levine has asserted that he was personally involved in building the pricing tool, has manually appraised thousands of assets, and that his pricing accuracy was evaluated on a regular basis. Pls.' Resp. Levine 6; Levine Dep., Pls.' Appx. 47–48 [68]. Likewise, Mohan, as head of the pricing team, is responsible for supervising and evaluating pricing for accuracy. Pls.' Resp. Mohan 2; Mohan Dep., Pls.' Appx. 44–45. The Court finds that both experts have sufficient pricing experience to opine on the value of the Curry Card.

Because both Levine and Mohan have demonstrated industry and pricing experience, the Court determines that they are qualified to opine about the grading card industry and practices and the value of the Curry Card.

### B. Levine and Mohan May Opine on Industry Practices But May Not Make Improper Legal Conclusions

Next, Beckett seeks to have Levine and Mohan's testimony excluded on the basis that it consists of impermissible legal conclusions. Def.'s Mot. Levine 8; Def.'s Mot. Mohan 8. The Court finds that testimony on industry practices is permissible but cautions

the parties to avoid direct statements of what law applies, whether a party has violated the law, or otherwise making a legal conclusion as to an element of the claim.

Expert witnesses may not render legal conclusions under the guise of expert opinion. *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996). But experts may testify as to legal matters that involve questions of fact. *Waco Int'l, Inc. v. KHK Scaffolding Hous. Inc.*, 278 F.3d 523, 533 (5th Cir. 2002).

On this point, Beckett points to three opinions of Levine and Mohan's that it believes will be stated as improper legal conclusions at trial: (1) that Beckett's failure to identify the Curry Card as trimmed in 2016 was negligent; (2) that Alt reasonably relied on Beckett's grading of the card; and (3) that a determination and representation that a sports trading card is authentic and unaltered is a representation of objective fact. Def.'s Mot. Levine 8–10; Def.'s Mot. Mohan 8–10.

In their expert reports, Levine and Mohan go beyond merely parroting the elements of the claim by discussing the reasons they believe a grader should have discovered the alteration prior to grading, the industry expectations of the reliability of a grade given by a grading company generally and by Beckett in particular, and how a determination of whether a card was trimmed is based on quantifiable data and measurements. Levine Report, Def.'s Levine Appx. 46–48; Mohan Report, Def.'s Mohan Appx. 45–47. While both experts do use the terms "negligent," "reasonably relied," and "objective fact," Levine Report, Def.'s Levine Appx. 41, 44, 46–47; Mohan Report, Def.'s Mohan Appx. 40, 43, 45–46, "the presence of impermissible legal conclusions in an expert's report is not a sufficient basis to strike the entirety of his testimony, particularly where . . . his report

'provides additional, potentially admissible opinion[s].'" *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022) (quoting *Novedea Sys., Inc. v. Colaberry, Inc.*, 2021 WL 6618488, at *2 (E.D. Tex. 2021)) (alteration in original) (collecting cases). Although the Court will not permit any testimony at trial that constitutes an improper legal conclusion of any kind or invades the province of the jury, Levine and Mohan's testimony does not consist only of legal conclusions.

They may explain industry customs, practices, and expectations. But they may not definitively state what law applies or whether Beckett did or did not comply with that law. Because the Court finds that Levine and Mohan's opinions are generally within this permissible zone, the Court denies the motion to exclude their testimony. If either party attempts to introduce legal conclusions at trial, it may be addressed by appropriate objection.

### C. Defendant's Objections to the Relevance and Reliability of the Testimony Go to the Weight of Evidence

Finally, Beckett makes arguments about the relevance and reliability of the experts' testimony.

First, Beckett argues that both experts' opinions lack sufficient independent analysis or support to be reliable. Beckett bases this argument primarily on the fact that Levine and Mohan relied on documents provided by Plaintiffs' counsel and "did not speak to anyone working for Plaintiffs, [Defendants,] PSA, or any other grading company in formulating [their] opinions." Def.'s Mot. Levine 14; Def.'s Mot. Mohan 14. However, Levine and Mohan's reports indicate the list of materials considered in forming their expert opinions.

MEMORANDUM OPINION & ORDER – PAGE 7

Levine Rep., Def.'s Levine Appx. 15; Mohan Rep., Def.'s Mohan Appx. 15. The Court does not therefore find a legal lack of independent analysis or support.

Next, Beckett argues that Levine's testimony contains personal opinions that are not proper expert testimony. Def.'s Levine Mot. 16–17. However, Alt responds that all the purported personal opinions are related to the experts' "professional expertise and experience in the sports trading card industry," Pls.' Levine Resp. 13, and the Court agrees. While Beckett argues that these are improper personal opinions because they "lack evidentiary support," Def.'s Levine Mot. 17, the challenged opinions all appear to be supported by his knowledge of and experience in the industry.

Finally, Beckett argues that both experts' testimony is inconsistent with or contrary to evidence on the record. To the extent that Beckett has contrary evidence or inconsistent statements, it may raise them during cross-examination.

The Court finds that Beckett's arguments on these three points go to the weight of the evidence rather than the admissibility of the evidence. *See Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). This is not a case where "the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Id.* Rather, the objections Becket raises are areas properly left for objection or cross-examination at trial rather than wholesale exclusion.

## CONCLUSION

The Court finds that the proffered expert opinions of Levine and Mohan satisfy the requirements of Rule 702. Accordingly, the Court denies the motions to exclude their testimony.

Signed March 11, 2025.

David C. Godbey
Chief United States District Judge